# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

## Case No. 15-1429

---

**ROBERT DRAPER;  ARIEL WEISBERG;  DONNA MAJOR;  ERIC NOTKIN;
ROBERT BOUDRIE;  BRENT CARLTON;  CONCORD ARMORY, LLC;  PRECISION
POINT FIREARMS, LLC;  SECOND AMENDMENT FOUNDATION, INC.**

*Plaintiffs – Appellants*

**COMMONWEALTH SECOND AMENDMENT, INC.**

*Plaintiff*

v.

**MAURA HEALEY, in her capacity as
The Attorney General of the Commonwealth of Massachusetts**

*Defendant – Appellee*

---

ON APPEAL FROM A JUDGMENT OF
THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
Civil Action No. 1:14-CV-12471-NMG

## BRIEF OF PLAINTIFFS-APPELLANTS

**Alexander Aron Flig**
Law Office of Alexander A. Flig
1st Circuit No. 1169830
BBO No. 669132
490 Chapman Street, Suite 201
Canton, Massachusetts 02021
(781) 352-7260

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellants provide the following statement identifying any parent corporation and any publicly traded company owning 10 percent or more of their stock:

## Second Amendment Foundation, Inc.

The Second Amendment Foundation, Inc. is a non-profit charitable corporation with its principle place of business located at 12500 NE 10th Place, Bellevue, Washington 98005.  It is a tax exempt entity pursuant to Section 501(c)(3) of the Internal Revenue Code and is therefore not traded on any stock exchange. The Second Amendment Foundation, Inc. has no parent company and no publicly traded company owns 10 percent or more of its stock.

## Precision Point Firearms, LLC

Precision Point Firearms, LLC has no parent company and no publicly traded company owns 10 percent or more of its stock.

## Concord Armory, LLC

Concord Armory, LLC has no parent company and no publicly traded company owns 10 percent or more of its stock.

**/s/ Alexander A. Flig**
_____
Attorney for Plaintiffs – Appellants

# TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT** ............................................................. 1

**REASONS WHY ORAL ARGUMENT SHOULD BE HEARD** ........................... 1

**JURISDICTIONAL STATEMENT** ...................................................................... 2

**ISSUES PRESENTED** ............................................................................................ 3

**STATEMENT OF THE CASE** ............................................................................. 4

    I.   RELEVANT FACTS ................................................................................. 4

        A.  The Massachusetts Statutory and Regulatory Scheme for Retail Sales and Transfers of Handguns ................................................. 4

        B.  Glock Handguns.............................................................................. 5

            1.  Glock Handguns are Firearms in Common Use ........................ 5

            2.  The "Load Indicators" of Gen3/4 Glock Pistols are *Virtually Identical* to Those of Other Massachusetts Approved Handguns ........................ 6

        C.  The CONSUMERS Could Not Acquire Gen3/4 Glock Pistols from the DEALERS Because of Vagueness in the REGULATION ................................... 6

        D.  The Plaintiffs' Requests for Clarification From the AG Regarding Gen3/4 Glock Pistols' Compliance With the REGULATION and the AG's Dismissive Responses Thereto ........................ 8

    II.  PROCEDURAL HISTORY ................................................................... 11

    III. RULINGS BY THE DISTRICT COURT ............................................ 12

**SUMMARY OF ARGUMENT** ......................................................................... 14

**ARGUMENT** ....................................................................................................... 21

   I.  STANDARD OF REVIEW .......................................................................... 21

      A.  De Novo Standard of Review for a Rule 12(b)(6) Motion to Dismiss ..................... 21

      B.  Abuse of Discretion Standard of Review .......................................................... 22

   II.  ORGANIZATIONAL STANDING .......................................................... 23

      A.  The District Court Relied on Inapplicable Authorities to Deny SAF Organizational Standing Through the Standing of its Members ............... 23

      B.  Facts Alleged in the Complaint and in SAF's Affidavit Establish SAF's Organizational Standing ........................................................................ 24

   III.  FACIAL VOID-FOR-VAGUENESS CHALLENGE ........................................ 27

      A.  The District Court Analyzed the DEALERS' Facial Vagueness Challenge Through a Flawed Analytical Framework ........................................ 27

      B.  The District Court Misapplied the Salerno "No Set of Circumstances" Analytical Framework for Facial Challenges .................................... 29

      C.  The District Court Converted the Defendant AG's Rule 12(b)(6) Motion to Dismiss into a Rule 56 Motion for Summary Judgment, But Without Affording Plaintiffs A Reasonable Opportunity to Present All Pertinent Material ...................................................................................... 31

      D.  The District Court Misapplied the Doctrine of Stare Decisis to the Improperly Admitted and Irrelevant Fact Evidence ........................................ 33

      E.  The Standard for Facial Vagueness Challenges and the REGULATION's Complete Failure to Meet that Standard ............................................. 35

   IV.  AS-APPLIED VOID-FOR-VAGUENESS CHALLENGE ................................. 40

      A.  The District Court's Finding of the DEALERS' Notice and Knowledge of Gen3/4 Glock Pistols' REGULATION Noncompliance is Based on an Incomplete Analysis, Assumption of a Nonexistent Fact, Non-Application of Applicable Authority and on the Application of Inapplicable Legal Authority ........................................ 41

B. The District Court Did Not Test the *Correctness* of the AG's *Application* of the Disputed Definition of "Load Indicator" to Gen3/4 Glock Pistols ............................................................................................ 45

C. The District Court Concluded That the Words Defining "Load Indicator" are Constitutionally Valid Without Referring to Any Standard of Compliance, Any Evidence or Any Legal Authorities ............................. 47

V. VIOLATION OF THE SECOND AMENDMENT ........................................................ 53

A. The District Court Issued Rulings on a Moot Cause of Action .................................... 54

B. The District Court Violated the Canon of Constitutional Avoidance ....................... 55

C. The District Court Violated the Article III Canon Prohibiting Advisory Opinions ............................................................................................................ 56

1. The District Court's First Advisory Ruling ....................................................... 57

2. The District Court's Second Advisory Ruling .................................................... 58

a. Wrong and Nonexistent Facts ....................................................................... 58

b. Flawed Analysis ............................................................................................... 59

3. The District Court's Third Advisory Ruling ...................................................... 64

CONCLUSION ............................................................................................................................ 66

# TABLE OF AUTHORITIES

## Cases

ACLUM v. Conf. of Catholic Bishops,
    705 F. 3d 44, 52 (1st Cir. 2013).................................................................61, 73

Animal Welfare Inst. v. Martin,
    623 F.3d 19, 25 (1st Cir. 2010)........................................................................ 25

Auer v. Robbins,
    519 U.S. 452, 462 (1997)...............................................................................57, 58

Ayotte v. Planned Parenthood of Northern New Eng.,
    546 US 320, 329 (2006)..................................................................................... 44

Bell Atl. Corp. v. Twombly,
    550 U.S. 544, 566 (2007).................................................................................. 15

Camreta v. Greene,
    564 U.S. ___, 131 S. Ct. 2020, 2045 (2011) ................................................... 73

Chafin v. Chafin,
    568 U.S. ___, 133 S. Ct. 1017, 2023 (2013) ................................... 19, 61, 62

Charlesbank Equity Fund II v. Blinds to Go,
    370 F. 3d 151, 158 (1st Cir. 2004) ................................................................. 24

Chicago v. Morales,
    527 U.S. 41, 55 (1999)................................................................................passim

Christopher v. SmithKline Beecham Corp.,
    132 S. Ct. 2156, 2166 (2012)........................................................................... 52

City of Los Angeles v. Patel,
    No. 13-1175, (22 June 2015).......................................................................16, 34

Coates v. Cincinnati,
    402 U.S. 611, 614 (1971).............................................................................43, 44

Cook v. Gates,
  528 F. 3d 42, 56 (1st Cir. 2008) .................................................................. 46

Crooker v. Magaw,
  41 F. Supp. 2d 87, 92 (D. Mass. 1999) ...................................................... 32

Culhane v. Aurora Loan Servs. of Neb.,
  708 F.3d 282, 289 (1st Cir. 2013) ............................................................. 25

Debnam v. FedEx Home Delivery,
  766 F.3d 93, 96 (1st Cir. 2014) ............................................... 15, 23, 30, 50

Decotiis v. Whittemore,
  635 F. 3d 22, 33 (1st Cir. 2011) ................................................................ 60

DISTRICT OF COLUMBIA V. HELLER,
  554 U.S. 570, 630 (2008) ................................................................... passim

FCC v. Fox Television Stations, Inc.,
  567 U.S. ___, 132 S. Ct. 2307, 2317 (2012) ......................................... 72, 76

FW/PBS, Inc. v. Dallas,
  493 U.S. 215 (1990) .................................................................................. 26

García-Catalán v. United States,
  734 F.3d 100, 103 (1st Cir. 2013) ............................................................. 23

Gately v. Massachusetts,
  2 F.3d 1221, 1227 (1st Cir.1993) ............................................................... 38

Grayned v. City of Rockford,
  408 U.S. 104, 108 fn. (1972) ..................................................................... 75

Hoffman Estates v. Flipside, Hoffman Estates, Inc.,
  455 U.S. 489, 497 (1982) ............................................................. 34, 40, 56

Johansen v. U.S.,
  506 F.3d 65 (1st Cir. 2007) .................................................................. 63, 64

Johnson v. US,
  No. 13-7120 (26 June 2015) ................................................................. 35, 44

Kampfer v. Cuomo,
    993 F. Supp. 2d 188, 196 (N.D.N.Y. 2014) ................................................. 68

Kerin v. Titeflex Corp.,
    770 F. 3d 978, 981 (1st Cir. 2014) ............................................................. 27

Lewis v. Continental Bank Corp.,
    494 U.S. 472, 477, (1990) ......................................................................... 63

Love v. Butler,
    952 F.2d 10, 13 (1st Cir. 1991) .............................................................. 33, 34

Lujan v. Defenders of Wildlife,
    504 U.S. 555, 560-61 (1992) ...................................................................... 23

Mangual v. Rotger-Sabat,
    317 F.3d 45, 60 (1st Cir.2003) .................................................................... 61

Overseas Military Sales Corp. v. Giralt-Armada,
    503 F.3d 12, 17 (1st Cir. 2007) ................................................................... 62

Pitonyak v. State,
    253 S.W.3d 834, 845 (Tex. App. 2008) ............................................36, 38, 39, 40

Powell v. Tompkins,
    Docket No. 13-1310 (1st Cir. 2015) at footnote 9..................................... 69, 71

Reno v. American Civil Liberties Union,
    521 U.S. 844, 884 – 885 (1997)................................................................... 44

Rosario-Urdaz v. Rivera-Hernandez,
    350 F.3d 219, 221 (1st Cir. 2003) ............................................................ 23, 24

Rosaura Bldg. Corp. v. Municipality of Mayaguez,
    778 F.3d 55 (1st Cir. 2015) ........................................................................ 22

Schware v. Board of Bar Examiners,
    353 U.S. 232, 238-239 (1957)..................................................................... 47

Smilow v. Southwestern Bell Mobile Sys., Inc.,
    323 F.3d 32, 37 (1st Cir.2003)................................................................. 24, 28

Smith *ex rel.* Smith v. Bryco Arms,
    33 P.3d 638 (N.M. App. 2001)..................................................................36, 38, 39, 40

Summers v. Earth Island Inst.,
    555 U.S. 488, 498-99 (2009) ...............................................................................26, 27

United States v. Cardales-Luna,
    632 F. 3d 731, 734 (1st Cir. 2011) .......................................................................... 38

United States v. Diaz-Bastardo,
    929 F.2d 798, 799 (1st Cir.1991)............................................................................ 37

United States v. Salerno,
    481 U.S. 739, 745 (1987)...............................................................................passim

United States v. Williams,
    553 U.S. 285, 306 (2008)...............................................................................passim

United States v. Zhen Zhou Wu,
    711 F.3d 1, 15 (1st Cir. 2013) cert. denied sub nom. Yufeng Wei v. United States,
    134 S. Ct. 365 (2013) .............................................................................................48, 49

Washington State Grange v. Washington State Republican Party,
    552 U.S. 442, 450 (2008)..........................................................................................30, 32

Waste Mgmt. Holdings, Inc. v. Mowbray,
    208 F.3d 288, 295 (1st Cir. 2000) ....................................................................... 27

Wilson v. HSBC Mortg. Services, Inc.,
    744 F. 3d 1, 7 (2015)..........................................................................................22, 28

## **Statutes**

28 U.S.C. § 1291...................................................................................................2

28 U.S.C. § 1331...................................................................................................2

28 U.S.C. § 1343(a)(3) .......................................................................................2

42 U.S.C. § 1983 ............................................................................................ 2

Internal Revenue Code § 501(c)(3) ............................................................. 1

M.G.L. C.140 §123 ........................................................................................ 4

M.G.L. c.93A ................................................................................................. 5

M.G.L. c.93A §9(3A) .................................................................................... 5

## **Rules**

F.R.C.P. Rule 12(b)(6) ..........................................................................passim

F.R.C.P. Rule 12(d) ...............................................................................18, 36

F.R.C.P. Rule 56 ...............................................................................26, 27, 37

Federal Rule of Appellate Procedure 26.1 .............................................. 1

Local Rule 34.0 .............................................................................................. 1

## **Regulations**

940 C.M.R. 16.00 .......................................................................................... 4

940 C.M.R. 16.01 .......................................................................................... 4

940 C.M.R. 16.05(1) .................................................................................... 42

940 C.M.R. 16.05(3) ..........................................................................5, 31, 32

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

Pursuant to Local Rule 34.0, plaintiffs-appellants respectfully request oral argument on the issues and facts contained in this brief and its accompanying addendum.  In light of the importance of the Constitutional issues in the case, the complex weave of the Massachusetts Attorney General's theories and factual nuances, oral argument will assist the Court's review.

///

///

///

///

///

# JURISDICTIONAL STATEMENT

The Federal District Court for the District of Massachusetts had subject matter jurisdiction over this matter pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343(a)(3) because this matter involves constitutional issues under the Second and Fourteenth Amendments to the U.S. Constitution.

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1291 because the District Court's 5 March 2015 grant of the Defendant's Motion to Dismiss (Joint Appendix ["JA"] 352) disposed of all of the Plaintiffs' claims, constituting a final judgment. Plaintiffs timely filed their Notice of Appeal on 3 April 2015 (entered on 14 April 2015). (JA353).

///

///

///

///

# ISSUES PRESENTED

1. Must an organization asserting standing through the standing of its members identify such members at the initial pleadings stage, even if the organization provides substantially detailed information regarding its members, can identify with particularly those members affected by the challenged regulation and promises to do so during discovery?

2. Is a regulatory design requirement facially void-for-vagueness

   a. –if it is comprised of words so subjective that an enforcement agency can negate *any* attempt at compliance, or

   b. –non-compliance is impossible because *anything* will meet the wholly subjective standard of the design requirement?

3. Does an agency's summary proclamation that one of several virtually identical implementations of a standardless regulatory design requirement is not compliant provide constitutionally adequate notice of what *does* comply with the regulation?

4. May a federal district court make rulings on issues that are not before the court, or issues about which there is no case or controversy between the parties?

///

///

# STATEMENT OF THE CASE

## I.    RELEVANT FACTS

### A. The Massachusetts Statutory and Regulatory Scheme for Retail Sales and Transfers of Handguns

Massachusetts firearms dealers may sell or transfer to eligible Massachusetts residents only those handguns that comply with *both* of two independent standards: (1) M.G.L. c.140 §123 (the "STATUTE"), and (2) the Massachusetts Attorney General's ("AG") Handgun Sales Regulation codified at 940 C.M.R. 16.00, *et seq.* (the "REGULATION"). (JA27).

The STATUTE prohibits sales of handguns which do not comply with enumerated design or performance criteria, and requires the Executive Office of Public Safety and Security ("EOPSS") to publish a list of complying handguns in the quarterly Approved Firearms Roster. (JA27). The REGULATION has its own handgun design requirements, among which is that pistols contain a "magazine safety disconnect" or a "load indicator". (JA361). The REGULATION at §16.01 defines a "load indicator" as "a device which plainly indicates that a cartridge is in the firing chamber within the handgun." Id. (JA358). This definition of "load indicator" is the crux of this lawsuit.

The enabling statute for the Handgun Sales Regulation is Chapter 93A of the Massachusetts General Laws, commonly known as the "Consumer Protection Act". (JA357). The REGULATION at §16.05(3) provides (with very limited exception) that

it is *per se* a violation of Chapter 93A for a firearms dealer to "transfer or offer to transfer to any customer located within the Commonwealth any handgun which does not contain a load indicator or magazine safety disconnect." Violation of Chapter 93A exposes the violator to double or treble damages and reimbursement of attorney fees. M.G.L. c.93A §9(3A). (JA29).

## B. Glock Handguns

### 1. Glock Handguns are Firearms in Common Use

Pistols manufactured by Glock, Inc. of Smyrna, Georgia are some of the most common—if not *the* most common—handguns in use throughout the United States. They are enormously popular due to their widely reputed quality, reliability and ability to function under adverse conditions, enjoying an amazing 65% market share of handguns used by U.S. law enforcement agencies. Glock pistols are prized for their reliability and accuracy by competitive shooters, almost invariably dominating the list of production handguns used in most national and international sport shooting competitions. Glock pistols are extremely popular self-defense firearms because of their simplicity and reliability, contributing to the fulfillment of the core purpose of the Second Amendment right. District of Columbia v. Heller, 554 U.S. 570, 630 (2008). (JA30).

Like many other popular handgun manufacturers, Glock offers a variety of handguns models. Unlike other manufacturers, however, Glock handguns are

distinguished primarily by their size and caliber of ammunition they use; otherwise (with few exceptions) *all* Glock pistol models are nearly identical in design—they are scaled up or scaled down versions of the same pistol. (JA30-JA31).

Third Generation ("Gen3") and Fourth Generation ("Gen4") Glock pistols were introduced in 1998 and 2010, respectively. (JA31). *Virtually **ALL** production Gen3/4 Glock handguns* (that are not designed and sold strictly to law enforcement, military and/or government agencies) *comply with the STATUTE and are therefore included on the EOPSS Approved Firearms Roster*. (JA31-JA32).

### 2. The "Load Indicators" of Gen3/4 Glock Pistols are *Virtually Identical* to Those of Other Massachusetts Approved Handguns

The AG has tacitly approved many "load indicator" implementations on handguns legally sold in Massachusetts. (JA41-JA42). In particular, she has not objected to extractor-based "load indicators" of several handgun makes and models that are *virtually identical* to that employed by Gen3/4 Glock pistols, including Kahr Arms pistols (all models), Heckler & Koch USP and P-series of pistols and Beretta 92-series of pistols. (JA42).

### C. The CONSUMERS Could Not Acquire Gen3/4 Glock Pistols from the DEALERS Because of Vagueness in the REGULATION

Appellants Robert Draper, Ariel Weisberg, Donna Major, Eric Notkin, Robert Boudrie and Brent Carlton (collectively the "CONSUMERS") are all Massachusetts residents duly licensed to acquire and possess firearms in Massachusetts. (JA22).

The CONSUMERS are a diverse group of individuals but each has extensive knowledge of and experience with firearms. (JA32-JA34).

Business entity appellants, Precision Point Firearms, LLC and Concord Armory, LLC (collectively the "DEALERS"), both hold federal and state firearms dealer licenses.[1] (JA21-JA22). Both DEALERS also hold federal Type 07 licenses ("Title 1 manufacturer of firearms and ammunition…") and both are licensed Massachusetts gunsmiths.[2] (JA 108, 110).

Each of the CONSUMERS sought to acquire a Gen3/4 Glock pistol from one or both of the DEALERS.[3] (JA32-JA34). The DEALERS rejected every one of the CONSUMERS' solicitations (JA34-JA35), citing in each instance their confusion over Gen3/4 Glock pistols' compliance with the REGULATION and consequent fear of an enforcement action by the AG should she disagree with their reasoned opinion that Gen3/4 Glock pistols comply with the REGULATION. (JA35).

*///*

---

[1]    The federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE") issues several types of federal firearms licenses. FFLs doing business in Massachusetts must also be licensed as firearms dealers by EOPSS.

[2]    The DEALERS' federal Type 07 licenses and Massachusetts gunsmith licenses permit the DEALERS to manufacture, alter and/or customize firearms.

[3]    The CONSUMERS did not seek to purchase pistols directly from Glock, Inc. because Glock, Inc. does not have firearms dealer licenses in Massachusetts. Thus, pursuant to both federal and Massachusetts law Glock, Inc. cannot transfer firearms to Massachusetts residents.

**D. The Plaintiffs' Requests for Clarification From the AG Regarding Gen3/4 Glock Pistols' Compliance With the REGULATION and the AG's Dismissive Responses Thereto**

Each of the plaintiffs wrote to the AG asking whether Gen3/4 Glock pistols comply with the REGULATION and if not, *why* not.  (JA36).  The AG responded by letter to each of the CONSUMERS and DEALERS (JA37), declaring:

> "The handguns presently manufactured by Glock, Inc. ("Glock") are not in compliance with the Massachusetts Handgun Sales Regulations, *because they lack an effective load indicator* or magazine safety disconnect." [Emphasis in italics.]

The AG's letters contained *no information at all regarding **what** about Gen3/4 Glock pistols' "load indicators" the AG concluded renders them not "effective", i.e. shape, size, color, location, texture, etc.*;  according to the AG, they are simply not effective.

Nevertheless, the AG insisted there is ample information about *why* she proclaimed Gen3/4 Glock pistols REGULATION noncompliant.   She wrote to CONSUMER Brent Carlton (JA38):

> "Handgun dealers in Massachusetts have *clear information* on this point *from Glock, EOPSS, and this Office* ... when they inform prospective purchasers that Glock firearms cannot legally be sold to civilians in Massachusetts." [Emphasis in italics.]

The AG's responses to the DEALERS' inquiries (JA37) included:

> "If you are unsure whether a handgun on the EOPS (sic) roster meets the additional safety requirements of our Office's regulations, you should contact the *manufacturer*, who should be able to provide you with that information." [Emphasis in italics.]

To DEALER Precision Point Firearms, LLC the AG added that her Office "has been clear and consistent in our communications to dealers and consumers about the reason that Glock firearms do not comply with the Regulations".  (JA43).

Prior to her responses to the plaintiffs' requests for clarification regarding Gen3/4 Glock pistols' compliance with the REGULATION, *none* of the plaintiffs had ever received *any* communications from the AG, including "the reason that Glock firearms do not comply with the Regulations".  The sources to which the AG redirected the plaintiffs' inquiries do not so much as hint that information.  For example, EOPSS, to whom the AG directed the plaintiffs' inquiries regarding *why* she proclaimed Gen3/4 Glock pistols' "load indicators" noncompliant *explicitly disclaims any responsibility for **any** handgun's compliance with the REGULATION* and expressly directs users back to the AG's website for that guidance (JA43):

> "Massachusetts licensed firearms dealers should note that … [f]irearms on this Approved Firearms Roster do not necessarily comply with the requirements of the Attorney General's Handgun Sales Regulations. Information about those regulations, as well as the Enforcement Notice may be obtained from the Office of the Attorney General and may be accessed on the website of the Attorney General (www.ago.state.ma.us)." Approved Firearms Roster, (JA27-JA28).

The AG's website yields exactly **one (1)** result for the search term "Glock", *completely unrelated to any issue in this lawsuit*.  (JA39).  There is no Enforcement Notice on the AG's website or anywhere on any Massachusetts government website. The AG redirection of the plaintiffs' inquiries to "Glock, Inc.", the "manufacturer, who should be able to provide you with that information" is meaningless because Glock,

Inc. is a private entity not subject to the REGULATION and who has no legal duty to inform the DEALERS or CONSUMERS whether any of their products comply with any Massachusetts law or regulation.

///

///

///

///

///

///

///

///

///

## II. <u>PROCEDURAL HISTORY</u>

Plaintiffs filed their complaint on 11 June 2014.  The defendant AG filed her motion to dismiss the complaint on 22 August 2014.  Plaintiffs filed their opposition to the AG's motion to dismiss on 12 September 2014.  The AG obtained leave of court and filed a response to the plaintiffs' opposition on 2 October 2014 and the plaintiffs, too, obtained leave of court and filed a reply thereto on 24 October 2014.

*Amicus curiae* Brady Center to Prevent Gun Violence ("BRADY") obtained leave of court and filed a brief in support of the AG's motion to dismiss on 6 October 2014.  Plaintiffs filed their opposition to BRADY's amicus brief on 31 October 2014.

A hearing on the AG's motion to dismiss was held on 19 February 2015.  BRADY did not participate in the hearing.   The District Court issued its memorandum and order ("Dismissal Memorandum") (AD1-AD19), and order of Dismissal (AD20-AD21), on 5 March 2015.  The plaintiffs timely filed their notice of appeal.

///

///

///

///

## III. **RULINGS BY THE DISTRICT COURT**

Massachusetts Federal District Court made the following eight (8) rulings in dismissing the complaint on the AG's F.R.C.P. Rule 12(b)(6) motion to dismiss:

1.      Organizational plaintiff Second Amendment Foundation, Inc. ("SAF") lacks standing through the standing of its members because SAF "has not identified [ ] any specific members" who have been negatively affected by the REGULATION." Dismissal Memorandum, 5-6 (JA185-JA186).

2.      The DEALERS' facial void-for-vagueness challenge to the REGULATION's definition of "load indicator" fails the <u>Salerno</u> "no set of circumstances" standard because the "defendant offered several examples of firearms where it is clear that they would fail to meet the regulation's standards."  Dismissal Memorandum, 10 (JA190).

3.      The Court "conclude[d] that the plaintiffs' knowledge and receipt of actual notice that the Gen3/4 Glock pistols are [REGULATION] noncompliant defeat their as-applied challenge to the regulation."  Dismissal Memorandum, 12 (JA192).

4.      "The plaintiffs' argument that the AG never explained why the Glock load indicators fail the regulatory standard is irrelevant to the constitutional vagueness challenge [because the focus of the analysis is] not [ ] why or how the AG reached her conclusion."  Dismissal Memorandum, 13 (JA193).

5.      "The regulatory language at issue here, 'a device which plainly indicates,' is ... straightforward ... in context because [it] describe that the purpose of a load

indicator… The Court concludes that the language of the regulation provides clear guidance for and fair notice to firearms dealers of ordinary intelligence." Dismissal Memorandum, 13-14 (JA193-JA194).

6.    "The [REGULATION] fits comfortably among the categories of regulation that Heller suggested would be 'presumptively lawful' because it 'impos[es] conditions and qualifications on the commercial sale of arms.'" Dismissal Memorandum, 16 (JA196).

7.    "The regulation does not substantially burden the right to bear arms in self-defense in one's home because the ban on two kinds of Glock pistols in no way prevents citizens from obtaining a wide array of firearms." Dismissal Memorandum, 16-17 (JA196-JA197).

8.    "Even if the regulation did impinge on Second Amendment rights, the Court finds that it passes constitutional muster under any standard of scrutiny [because] [t]he defendant has demonstrated a strong showing of a 'substantial relationship' between the restrictions imposed by the regulation and the important government objective of protecting the safety of its citizens." Dismissal Memorandum, 17 (JA197).

///

///

# SUMMARY OF ARGUMENT

## Preamble

The core issue in this lawsuit is whether the words "device which plainly indicates" in the REGULATION's definition of "load indicator" meet the Fourteenth Amendment due process standard of fair notice regarding compliance with that alternative design requirement for pistols sold in Massachusetts. The burden on the CONSUMERS' Second Amendment right—their inability to acquire Gen3/4 Glock pistols—is directly derivative of the chilling effect the unconstitutionally vague definition of "load indicator" has on the DEALERS' firearm sales.

## Organizational Standing

The Second Amendment Foundation, Inc. ("SAF) sought to participate in this lawsuit through the standing of its Massachusetts dealer and consumer members. The District Court denied standing to SAF because it did not, at the initial pleadings stage, identify its members affected by the REGULATION.

The District Court erred by relying on an authority requiring an organization seeking standing through injury to its members to identify those members *by the Rule 56 motion for summary judgment* stage, after discovery has developed the facts.

The District Court also ignored the axiomatic rule that initial pleadings "simply [need] enough fact to raise a *reasonable expectation that discovery will reveal evidence* of the [allegation]." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 566

(2007) (emphasis in italics). SAF's affidavit provided detailed numbers and specific injuries alleged by its Massachusetts members and the plaintiffs explicitly promised to identify individual injured members during discovery. Based on the information in the complaint and in SAF's affidavit, it was clear that discovery would readily have provided the necessary information. The District Court's rejection of SAF's standing was an abuse of discretion because it did not "draw[] all reasonable inferences in the plaintiff's favor" as required when considering a motion to dismiss. Debnam v. FedEx Home Delivery, 766 F.3d 93, 96 (1st Cir. 2014).

### Dealers' *Facial* Void for Vagueness Challenge

The DEALERS alleged that the words "device which plainly indicates" in the definition of the REGULATION's "load indicator" alternative design requirement are so vague that no one can determine with any reasonable certainty whether *any* implementation of "load indicator" complies. The AG's proclamation that, without explanation (and refusal to explain) how, Gen3/4 Glock pistols' "load indicator" are noncompliant—while tacitly approving virtually identical "load indicators" on other pistols sold in Massachusetts—is the product of this unconstitutional vagueness, further plunging compliance into irredeemable confusion.

The District Court dismissed the facial void-for-vagueness claim relying on an outdated authority limiting facial void-for-vagueness claims primarily to the First Amendment. The Supreme Court, however, declared in Chicago v. Morales, 527 U.S.

41, 55 (1999), that "[w]hen vagueness permeates the text of [ ] a law, it is subject to facial attack." It went further in <u>City of Los Angeles v. Patel</u>, No. 13-1175, (22 June 2015) by declaring that "[it] has allowed [facial] challenges to proceed under a diverse array of constitutional provisions," including the Second Amendment (referring to <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008)).

The District Court also misapplied the infamous "no set of circumstances" standard of <u>United States v. Salerno</u>, 481 U.S. 739, 745 (1987) to dismiss the DEALERS' facial void-for-vagueness claim. "To the extent we have consistently articulated a clear standard for facial challenges, it is not the <u>Salerno</u> formulation, which has never been the decisive factor in any decision of this Court, including <u>Salerno</u> itself..." <u>City of Chicago v. Morales</u>, 527 U.S. 41, 54, fn. 22 (1999). Even if "there will be straightforward cases" in which the proper application of a vague law is clear, the <u>Salerno</u> "requirement of vagueness in all applications" is a "tautology: If we hold a statute to be vague, it is vague in all its applications (and never mind the reality)." <u>Johnson v. US</u>, No. 13-7120 (26 June 2015).

Besides using the incorrect analytical framework, the District Court abused its discretion by converting the AG's motion to dismiss into a motion for summary judgment by admitting *dicta* from two out-of-circuit state appellate cases as *fact evidence* of "applications under which the REGULATION would not be vague." The District Court did not afford plaintiffs an opportunity to refute the admitted *fact evidence* as F.R.C.P. Rule 12(d) requires.

Even with the improperly admitted *fact evidence*, neither of the two cases relied on by the District Court—one a products liability case and the other a prosecution for murder—have any *factual* or *legal* issues in common with one another or with any issue in *this* case.

In short, the cases relied on by the District Court as examples of "applications under which the REGULATION would not be vague" under the <u>Salerno</u> "no set of circumstances" standard are completely different and have no stare decisis effect whatsoever in this case.

## Dealers' *As-Applied* Void for Vagueness Challenge

The District Court fundamentally erred in dismissing the DEALERS' as-applied void for vagueness claim by *deferring to the AG's summary proclamation* of noncompliance—implicitly making a *factual finding* that Gen3/4 Glock pistols' "load indicators" are indeed REGULATION noncompliant—*without itself* confronting how the challenged words "device which plainly indicates" *actually* apply to Gen3/4 Glock pistols' "load indicators".  The District Court did so without reference to any facts, any legal authorities, any industry standards or *anything* else.

Similarly, relying on "civil regulations [] govern[ing] commercial conduct are held to a lower standard than criminal statutes in the vagueness analysis" the District Court concluded that the challenged words "device which plainly indicates" are "straightforward ... in context because they describe [ ] the purpose of a load

indicator…"  Again, the District Court's ruling is silent as to how the *purpose* of the REGULATION's "load indicator" alternative design requirement establishes a *standard* of compliance *as applied to Gen3/4 Glock pistols*.

## CONSUMERS' Second Amendment Claim

The CONSUMERS' Second Amendment claim is entirely derivative of, and dependent on, the DEALERS' Fourteenth Amendment claim.  The CONSUMERS could not acquire Gen3/4 Glock pistols (firearms in common use) because the DEALERS feared enforcement actions by the AG should she disagree with their opinion that Gen3/4 Glock pistols comply with the REGULATION.

The District Court's Dismissal of the DEALERS' Fourteenth Amendment due process claim mooted the CONSUMERS' Second Amendment claim.  Accordingly, *all* of the District Court's Second Amendment-related rulings were improper "advisory opinions" prohibited by Article III of the Constitution as no "live" Second Amendment controversy remained for the District Court to resolve.  Chafin v. Chafin, 568 U.S. ___, 133 S. Ct. 1017, 2023 (2013).

The District Court's Second Amendment-related rulings and findings also violated the canon of constitutional avoidance because a finding of mootness of the CONSUMERS' Second Amendment claim upon the Dismissal of the DEALERS' Fourteenth Amendment claim would have avoided deciding substantive constitutional issues.

## The Analytical Lens Through Which to Review the District
## Court's Rulings:  Their Real World *Practical* Result

The  District  Court  concluded  that  the  words  "device  which  plainly indicates…"  as  they  are  used  in  the  definition  of  "load  indicator"  are "straightforward … in context …"  While finding clarity in these words "in common usage  with  common  meaning",  the  District  Court  completely  ignored  *how, in practice,* these words transmute into a real-world constitutionally sound standard of compliance.  The District Court's Dismissal of the DEALERS' facial and as-applied void-for-vagueness challenges (especially so at the pleading stage *before* discovery) while  allowing  the  AG's  summary  rejection  of  one  of  several  virtually  identical implementations of "load indicator" is thus best viewed through its practical results:

Both  DEALERS  are  Type  07  FFLs  (licensed  firearm  manufacturers)  and gunsmiths (JA108, JA110).  Both are licensed and capable of bringing Gen3/4 Glock pistols into compliance with the REGULATION.  What should they *do*?

- Should they paint some unspecified component(s) of the pistols some color or other, or some combination or pattern of colors?

- Should they drill a hole in the base of the firing chamber or someplace else on the pistol?

- Should they thicken, extend, serrate or smooth the tab on the extractor that protrudes from the slide when the extractor engages the rim of a cartridge?

- Should they provide a depth gauge to be inserted into the barrel to check for the presence of a cartridge?

*What* are they to do?

What guidance do the DEALERS—*anyone* including the AG—have to render Gen 3/4 Glock pistols REGULATION compliant after the District Court ruled that the words a "device which plainly indicates…" is all the constitutionally adequate guidance they need?

> "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved;  but rather the indeterminacy of precisely *what* that fact is."  U.S. v. Williams, 553 U.S. 285, 306 (2008), italicized emphasis.

///

///

///

///

///

///

# ARGUMENT

## I.  <u>STANDARD OF REVIEW</u>

### A.  De Novo Standard of Review for a Rule 12(b)(6) Motion to Dismiss

"We review the district court's grant of a Rule 12(b)(6) motion de novo."

<u>Wilson v. HSBC Mortg. Services, Inc.</u>, 744 F. 3d 1, 7 (2015) (citations omitted).  "The

de novo standard of review does not limit [the Court of Appeal] to the district

court's rationale…"  <u>Rosaura Bldg. Corp. v. Municipality of Mayaguez</u>, 778 F.3d 55

(1st Cir. 2015) (citations omitted).

"In deciding whether the district court properly dismissed a claim, we ask

whether the complaint 'state[s] a claim to relief that is plausible on its face,'

accepting the plaintiff's factual allegations and drawing all reasonable inferences in

the plaintiff's favor."   <u>Debnam v. FedEx Home Delivery</u>, 766 F.3d 93, 96 (1st Cir.

2014) (citations omitted).   "In determining whether a complaint crosses the

plausibility threshold, 'the reviewing court [must] draw on its judicial experience

and common sense.'"  <u>García-Catalán v. United States</u>, 734 F.3d 100, 103 (1st Cir.

2013) (citations omitted).  "This context-specific inquiry does not demand 'a high

degree of factual specificity.'"  <u>Id.</u>

> "At the pleading stage, general factual allegations of injury resulting
> from the defendant's conduct may suffice, for on a motion to dismiss
> we presum[e] that general allegations embrace those specific facts that
> are necessary to support the claim."  <u>Lujan v. Defenders of Wildlife</u>, 504
> U.S. 555, 560-61 (1992) (quotation marks omitted).

### B.  Abuse of Discretion Standard of Review

An abuse of discretion exists when the district court makes an error of law (Rosario-Urdaz v. Rivera-Hernandez, 350 F.3d 219, 221 (1st Cir. 2003), or "relies significantly on an improper factor, omits a significant factor, or makes a clear error of judgment in weighing the relevant factors." Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 37 (1st Cir.2003) ."  Though this is a deferential standard "... appellate courts must be careful to ensure that deference does not mutate into blind allegiance." Charlesbank Equity Fund II v. Blinds to Go, 370 F. 3d 151, 158 (1st Cir. 2004).  "An error of law is, of course, always an abuse of discretion." Rosario-Urdaz, 221.

///

///

///

///

///

///

## II.    <u>ORGANIZATIONAL STANDING</u>

"Because the question of whether certain facts establish standing is a question of law, we review the district court's resolution of the issue de novo." <u>Culhane v. Aurora Loan Servs. of Neb.</u>, 708 F.3d 282, 289 (1st Cir. 2013).

An organization asserting standing through the standing of its members must show that

> "(1) at least one of its members would have standing to sue as an individual, (2) 'the interests at stake are germane to the organization's purpose,' and (3) individual members' participation is not necessary to either the claim asserted or the relief requested."

<u>Animal Welfare Inst. v. Martin</u>, 623 F.3d 19, 25 (1st Cir. 2010) (citations omitted).

Here, the District Court ruled *at the motion to dismiss stage* that organizational plaintiff SAF did not establish standing through the standing of its members because "[SAF] has not identified any specific members" who were allegedly injured by the REGULATION.  Dismissal Memorandum, 5 (AD6).

### A.  The District Court Relied on Inapplicable Authorities to Deny SAF Organizational Standing Through the Standing of its Members

The District Court relied on <u>Summers v. Earth Island Inst.</u>, 555 U.S. 488, 498-99 (2009) to deny SAF standing, quoting "… 'the affidavit provided by the [organization] to establish standing would be insufficient because it did not name the individuals who were harmed by the challenged [regulation]'".  Dismissal Memorandum, 5 (AD6).  That language in <u>Summers</u> originates from <u>FW/PBS, Inc. v.</u>

Dallas, 493 U.S. 215 (1990), where at p. 235 the Supreme Court gave context for its ruling: "Following expedited discovery, petitioners' constitutional claims were resolved through cross-motions for summary judgment."

In this case *no discovery had been accomplished when the District Court denied SAF standing*. More importantly, the District Court's ruling was on the AG's Rule 12(b)(6) *motion to dismiss*—not at the never-reached *fact-developed* Rule 56 *motion for summary judgment* stage. The District Court ignored this legal point from the plaintiffs' Response (JA276): "Nowhere in Summers did the Court require 'naming the affected member' at the initial pleading stage, nor is 'motion to dismiss' mentioned anywhere in the decision." (JA275-JA276).

"An abuse of discretion [ ] occurs if the court adopts an incorrect legal rule." Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 295 (1st Cir. 2000). The District Court's adoption of the legal rule applicable to Rule 56 motions for summary judgment to deny SAF standing at the Rule 12(b)(6) motion to dismiss stage was an abuse its discretion.

### B. Facts Alleged in the Complaint and in SAF's Affidavit Establish SAF's Organizational Standing

"When reviewing a pre-discovery grant of a motion to dismiss for lack of standing, 'we accept as true all well-pleaded fact[s] ... and indulge all reasonable inferences' in the plaintiff's favor." Kerin v. Titeflex Corp., 770 F. 3d 978, 981 (1st Cir. 2014) (citations omitted). "[W]here ... standing is at issue we may consider further

particularized allegations of fact deemed supportive of [plaintiffs'] standing, such as those contained within an affidavit." Wilson v. HSBC Mortg. Services, Inc., 744 F.3d 1, 7 (1st Cir. 2014) (citations omitted).

SAF's affidavit listed detailed numbers of its Massachusetts members, and of those, the number who "contacted SAF … specifically regarding the Massachusetts Handgun Sales Regulation." The District Court even quoted those figures in its Dismissal Memorandum, 5 (AD6). Inexplicably, however, the District Court ignored the affidavit's very next paragraph (¶8): "Approximately 40 to 70 SAF members have contacted SAF within the past year specifically regarding the Massachusetts Handgun Sales Regulation that is at issue in this lawsuit." The District Court ignored the even more "particularized allegations of fact" in ¶9 of SAF's affidavit:

> "Many of SAF's [firearms dealer] members … cannot determine whether they may sell or transfer Gen3/4 Glock pistols to Massachusetts residents, or as [SAF's] Massachusetts resident[ ] [members] want to but cannot purchase Gen3/4 Glock pistols because of … the Massachusetts Handgun Sales Regulation."

The District Court also disregarded SAF's explicit promise to "comply with [discovery] requests asking for the identification of [SAF's] members and/or supporters described in [its] declaration…" (JA276).

An abuse of discretion exists when the district court "… makes a clear error of judgment in weighing the relevant factors." Smilow v. Southwestern Bell Mobile Sys, *supra*, at 37. With so many detailed facts alleged in the complaint and in SAF's affidavit regarding its aggrieved members—sans only their names but with the

express promise to provide that information in discovery—there was more than a reasonable expectation that "*discovery will reveal* [the identify of specific SAF members]" whose standing would provide standing to SAF." The District Court made a clear error of judgment.

///

///

///

///

///

///

///

### III.FACIAL VOID-FOR-VAGUENESS CHALLENGE

#### A. The District Court Analyzed the DEALERS' Facial Vagueness Challenge Through a Flawed Analytical Framework

Rather than analyzing the DEALERS' facial challenge by "accepting the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor" [Debnam v. FedEx Home Delivery, *supra*, 96] the District Court cited Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 450 (2008) for its analysis from the opposite, *negative perspective*:[4]

> "As a preliminary matter, facial challenges are typically disfavored because they 'often rest on speculation,' which lead to the risk of premature interpretation of statutes and regulations."   Dismissal Memorandum, 9 (AD10).

The District Court's reliance on Washington State Grange for its analytical framework was wrong because there is no "speculation" in this case.   The AG unequivocally insists the REGULATION is abundantly clear *as is*.   She wrote "Handgun dealers in Massachusetts have *clear information* on [why Gen3/4 Glock "load indicators" are allegedly noncompliant] …" (JA135) and that she "has been *clear and consistent* … about the *reason* that Glock firearms do not comply with the Regulations". (JA127).  Indeed, the AG insisted

> "… the [DEALERS] have not just an available process but an actual answer from a government official that is unquestionably clear as to the particular conduct in which they allegedly wish to engage." (JA189).

---

[4]     Additionally, the appeal in Washington State Grange followed rulings on the parties' *Rule 56 motions for summary judgment*, not on motions to dismiss.  Id., 448.

She asserted her "letters were perfectly clear—the dealers may not sell the Glocks at issue because they fail to meet the requirements of 16.05(3)." (JA195).

Despite the AG's pronouncement of clarity in her REGULATION, the complaint the exhibits thereto (JA38-JA39) thoroughly documents the "clear information on this point": there is **none—_whatsoever_**.    But the AG also deflected all further inquiries to another executive branch agency, EOPSS, *which explicitly redirects that inquiry back to the defendant AG* (JA43) and to Glock, Inc. (JA43), a private party who is not subject to the REGULATION, does not have any known legal duty or authority to render such judgments, and has no known public enforcement authority.[5]  The *finality* of the AG's declaration of the REGULATION's clarity and her determined *avoidance* to answer how Gen3/4 Glock pistols' load indicators "fail to meet the requirements of 16.05(3)" eliminates all risk of "speculation".

Nor is there any risk of "premature interpretation".  Citing <u>Crooker v. Magaw</u>, 41 F. Supp. 2d 87, 92 (D. Mass. 1999), the AG argued "administrative agencies do not have an enforceable obligation to perform this sort of advisory mission…" (JA194). But the <u>Crooker</u> court plainly stated that "declaratory judgment actions cannot be used to obtain answers to hypothetical questions" such as the one that was before it. <u>Id.</u>, 92.  In contrast, the DEALERS in this case did not make hypothetical inquiries of

---

[5]    The deflection of questions regarding regulatory compliance to a private party is in its own right an unlawful abdication of the defendant AG's *governmental* authority and inherent *state* police power vested solely in the defendant AG's *public* office. (JA144).

the AG;  they asked why—what *criteria* the AG used—to proclaim Gen3/4 Glock

pistols *presently* noncompliant.

Finally, the District Court read into <u>Washington State Grange</u> that which is not

there, e.g. that it concerned facial challenges to "statutes and regulations".

<u>Washington State Grange</u> dealt only with *statutes*—not *regulations*.   "[F]acial

challenges threaten to short circuit the *democratic process* by preventing *laws*

embodying the *will of the people* from being implemented in a manner consistent

with the Constitution.'"  <u>Id.,</u> 451 (italicized emphasis, citations omitted.)  The risk of

"short circuit[ing] the democratic process" does not exist regarding *regulations*—

*executive agency* pronouncements—as opposed to *statutes*, which are the result of

the legislative "*democratic process*".   The District Court approached its analysis of

the DEALERS' facial challenge from the wrong perspective.

### B. The District Court Misapplied the Salerno "No Set of Circumstances" Analytical Framework for Facial Challenges

Focusing on the *standard* applicable to the DEALERS' facial void-for-

vagueness challenge (apart from the *perspective* from which their challenge *should*

*have been* analyzed), the District Court pronounced that "so long as there is some

application under which the [REGULATION] would *not* be vague, a facial vagueness

claim cannot stand."  Dismissal Memorandum, 10 (AD11).  This originates from the

infamous dicta in <u>United States v. Salerno</u>, 481 U.S. 739, 745 (1987) that facial

invalidation of a statute requires "that no set of circumstances exists under which

the Act would be valid".  Further limiting the *scope* of the DEALERS' facial vagueness

challenge, the District Court adopted the AG's motion to dismiss authority <u>Love v.</u>

<u>Butler</u>, 952 F.2d 10, 13 (1st Cir. 1991) that "vagueness challenges to statutes not

threatening First Amendment interests are examined in light of the facts of the case

at hand;  the statute is judged on an as-applied basis."

Aside from the fact that <u>Salerno</u> and <u>Love</u> concerned statutes whereas this

case concerns a *regulation*, "a law … *may* [ ] be challenged *on its face* as unduly

vague, in violation of due process." <u>Hoffman Estates v. Flipside, Hoffman Estates,</u>

<u>Inc.</u>, 455 U.S. 489, 497 (1982) (italicized emphasis).  That is the DEALERS' facial

claim in this case.  More recently the Supreme Court elucidated the *current* state of

the law regarding the *breadth* of facial challenges in <u>City of Los Angeles v. Patel</u>, No.

13-1175 (22 June 2015):

> "[T]he [Supreme] Court has allowed [facial] challenges to proceed
> under a diverse array of constitutional provisions.  *See*, e.g., … <u>District</u>
> <u>of Columbia v. Heller</u>, 554 U.S. 570 (2008) (Second Amendment)…"

Thus, *current* law does *not* confine the DEALERS' to an as-applied challenge because

the *REGULATION* does not threaten First Amendment interests.

The applicability of the <u>Salerno</u> standard to facial challenges was squarely

addressed in <u>Chicago v. Morales</u>, 527 U.S. 41, 54, fn. 22 (1999):  "To the extent we

have consistently articulated a clear standard for facial challenges, it is *not* the

<u>Salerno</u> formulation, *which has never been the decisive factor in any decision of this*

*Court, including <u>Salerno</u> itself*…. (emphasis in italics)."  To be sure, in <u>Johnson v. US,</u>

No. 13-7120 (26 June 2015), the Supreme Court struck down the residual clause of the Armed Career Criminal Act as *facially* void-for-vagueness while recognizing "there will be straightforward cases" [Slip Op. 10 (AD13)] were application of the clause is clear.

> "[A]lthough statements in some of our opinions could be read to suggest otherwise, our *holdings* squarely contradict the theory that a vague provision is constitutional merely because there is **some** conduct that clearly falls within the provision's grasp." <u>Id.</u>, 11 (AD14) (original italicized emphasis, local emphasis in bolded text).

Capping its holding in <u>Johnson</u>, the Supreme Court flatly rejected a "requirement of vagueness in all applications", calling it a "tautology:  If we hold a statute to be vague, it is vague in all its applications (and never mind the reality)." <u>Id.</u>, 12.

A regulation is void-for-vagueness if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." <u>Id.</u>, 3 (AD6).  If anything, that standard is more exacting in this case because of the burden on the CONSUMERS' Second Amendment right.

### C. The District Court Converted the Defendant AG's Rule 12(b)(6) Motion to Dismiss into a Rule 56 Motion for Summary Judgment, But Without Affording Plaintiffs A Reasonable Opportunity to Present All Pertinent Material

The "defendant [ ] offered" and the District Court admitted as ***fact evidence*** "several examples of firearms where it is clear that they would fail to meet the regulation's standards".  Dismissal Memorandum, 10 (JAD11).  From <u>Smith *ex rel.* Smith v. Bryco Arms</u>, 33 P.3d 638 (N.M. App. 2001), cited by the AG in her motion to

dismiss (JA187), the District Court admitted as *fact evidence* the dicta "[T]he J-22 handgun does not incorporate a … a 'chamber load indicator,'…"  From <u>Pitonyak v. State</u>, 253 S.W.3d 834, 845 (Tex. App. 2008) cited by the AG in her motion to dismiss (JA187) the District Court as *fact evidence* the dicta "The pistol in question did not have … a loading indicator to show that a bullet is in the firing chamber."  This *fact evidence* of "applications under which the REGULATION would not be vague" was the District Court's basis for dismissing the DEALERS' facial vagueness challenge.

F.R.C.P. Rule 12(d) requires a district court to advise the parties if, in ruling on a Rule 12(b)(6) motion to dismiss, it is taking into consideration materials outside the pleadings.  If so, "the motion must be treated as one for summary judgment under Rule 56."  Upon the conversion of the Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

But the District Court did not inform the parties of its intention to convert the defendant AG's Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment by treating *dicta* from cases cited by the defendant AG as *fact evidence* in *this* case.  The Plaintiffs were not afforded an opportunity to "controvert[ ] [the] accuracy" of that fact evidence of "several examples of firearms … that [ ] would fail to meet the regulation's standards" that the "defendant has offered."  Dismissal Memorandum, 10 (AD11).

### D. The District Court Misapplied the Doctrine of Stare Decisis to the Improperly Admitted and Irrelevant Fact Evidence

In general, "accepted principles of stare decisis militate strongly in favor of resolving identical points in the same way for identically situated defendants." United States v. Diaz-Bastardo, 929 F.2d 798, 799 (1st Cir.1991). "Even the narrowest conception of stare decisis demands that two panels faced with the same *legal* question and identical facts reach the same outcome." U.S. v. Cardales-Luna, 632 F. 3d 731, 734 (1st Cir. 2011) (original emphasis, internal citations omitted). "[A] decision dependent upon its underlying facts is not necessarily controlling precedent as to a subsequent analysis of the same question on different facts and a different record." Gately v. Massachusetts, 2 F.3d 1221, 1227 (1st Cir.1993). "[T]he *exact same* evidence" admitted for a particular purpose in an earlier case may be stare decisis in a subsequent case, but only for the *same legal issue.* Cardales-Luna, at 735 (emphasis in italics).

The District Court in the instant matter did not parallelize the "*legal* question" in this case (constitutionality of the REGULATION's *definition* of "load indicator") with the *legal* questions in in Smith and Pitonyak. Nor could it.

Smith was a products liability case. The text quoted and relied on by the District Court is, *in context* (with **omitted** text in bolded italics):

> ***"Plaintiff raises strict products liability and negligence theories of recovery*** … predicated upon the fact that [t]he J-22 handgun does not incorporate … a 'chamber load indicator' … alerting users that the J-22 can fire even though the magazine has been removed." Smith., p. 641.

Smith is otherwise silent about its *definition* of "chamber load indicator". The purpose of the "chamber load indicator" in this products liability case was different than that of the REGULATION in this case. For what it's worth, New Mexico does not have a "chamber load indicator" requirement for firearms.

Pitonyak was a murder case in which the appellant argued that he could not have had the intent to murder when he pulled the trigger of his handgun (identified only as a ".380 semiautomatic pistol") because he did not check and therefore did not know whether it was loaded. The text quoted and relied upon by the District Court is, *in context* (with ***omitted*** text in bolded italics):

> "***[Pitonyak] also cites the testimony of defense firearms expert Edward Hueske, who testified that*** the pistol in question did not have a safety or a loading indicator to show that a bullet is in the firing chamber." Pitonyak, p. 845.

There is *nothing* more in Pitonyak regarding *what*, according to "firearms expert Edward Hueske", constitutes a "loading indicator", how it is defined by Texas law and/or regulation (it is not) or anything else about this contraption *mentioned only twice in passing*. Nothing indicates that anyone even asserted that the *unidentified* handgun *had* a "loading indicator".

*Neither* the law nor the facts in Smith or Pitonyak are remotely related to anything in the instant matter. The District Court made a fundamental error of law in admitting the dicta of these cases as *fact evidence* and relying on them for some form of stare decisis.

### E.  The Standard for Facial Vagueness Challenges and the REGULATION's Complete Failure to Meet that Standard

"A law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process."  Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497 (1982).  "In reviewing a business regulation for facial vagueness … the principal inquiry is whether the law affords fair warning of what is proscribed."  Id., 503.  "To the extent we have consistently articulated a clear standard for facial challenges, it is *not* the Salerno formulation, *which has never been the decisive factor in any decision of this Court, including Salerno itself*…."  Chicago v. Morales, 527 U.S. 41, 54, fn. 22 (1999) (emphasis in italics).  "[W]e have struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'–wholly *subjective* judgments *without statutory definitions, narrowing context, or settled legal meanings*."  Williams, *supra*, 304 (internal citations omitted, emphasis in italics).

There is nothing that provides the DEALERS or anyone else notice of what is permitted and what is proscribed by the words "device which plainly indicates" as used to define "load indicator".  Nowhere in the Massachusetts General Laws nor in the Code of Massachusetts Regulation is there *any* limiting construction for the words "device," "plainly," and "indicate" used alone or in any combination in the "narrowing context" of firearms.  (JA222-JA223).

- **Mr. Flig (Hearing Transcript 18:19 – 24)** (JA315)**:**

  Your Honor, I think, to make the issue clearer, we can go back to the old [] real estate adage, location, location, location.  The words by themselves are straightforward, there's no argument with that.  The context in which they are used makes them inherently vague.

"Device" is an amorphous term that can mean anything, including just "thing". The AG has not objected to a "load indicator" consisting of nothing more than a small hole in a firing chamber for its visual inspection.  Nor has she objected to a protruding on top of the slide.  She has not objected to an extractor-based "load indicator" that protrudes from the slide when a cartridge is in the firing chamber (as employed by Gen3/4 Glock pistols).  Searching the REGULATION and its enabling statute for "precisely *what* that fact is" that transforms an ordinary thing into a REGULATION-compliant "device which plainly indicates" [Williams, *supra*, at 306] reveals that nothing requires that it be *built into to the pistol itself*.  A simple rod can "plainly indicate" the presence or absence of a cartridge depending on how far down the barrel it can be inserted.

The vagueness of the word "device" as it defines "load indicator" is glaring when compared to the unobjectionable use of the same word in the REGULATION's definition of "magazine safety disconnect" in the same subsection.  Section 16.05(1) defines a "magazine safety disconnect" as "a *device* that prevents the firing of the handgun when the magazine is detached from the handgun". [Emphasis in italics.] The purpose of this "device" is also its *binary* compliance standard:  *either* this "device" prevents the firing of the handgun when the magazine is detached *or* it

does not.  There is no grey area.  A handgun cannot be fired "a little" or fired "a lot".  In this narrowing context, how the magazine safety disconnect "device" works, where and what it is, etc. are not germane to *whether* it accomplishes its unambiguous *mission* measured by its equally unambiguous *standard*.

Contrast the vague words "plainly indicates" as used in the definition of "load indicator".  There is no need to venture to extremes to conceive of a multitude of very reasonable interpretations.  "Indicate" can be visual and "plainly" can be any range of distances, angles and lighting conditions.  "Indicate" can be audible and "plainly" can be any range of decibels and frequencies.  "Indicate" can be tactile and "plainly" can be feeling a slight projection with a bare fingertip to a sensation in the palm through a thick glove.

In reality, the REGULATION's definition of "load indicator" is less than standardless;  it is *meaningless*.  That is why the Salerno "no set of circumstances" standard is inapplicable.  Indeed, the *opposite* is applicable:  under "no set of circumstances" can any semi-automatic pistol (including Gen3/4 Glock pistols) ***not*** comply with the "load indicator" alternative design requirement because (1) the definition of "load indicator" is so vulnerable to "wholly *subjective* judgments *without statutory definitions, narrowing context, or settled legal meanings*" (Williams,

*supra*, 304) such that *anything* complies, or (2) more practically, *all semi-automatic pistols* have "load indicators" *inherent in their design*—the slide.[6]

The REGULATION is incurably vague, not in the sense that it requires conformance "to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all, [and] [a]s a result, 'men of common intelligence must necessarily guess at its meaning.'" Coates v. Cincinnati, 402 U.S. 611, 614 (1971) (string cite omitted). "[T]he vice of the [REGULATION] lies not alone in its violation of the due process standard of vagueness[;]  [it] also violates the constitutional right" of the CONSUMERS by preventing them from acquiring Gen3/4 Glock pistols, firearms in common use. Id., 615.

The Court should strike the "load indicator" portion of the REGULATION as facially void-for-vagueness since it is "vague in all its applications (and never mind the reality)." Johnson, *supra*, Slip Op. 12.  No particular interpretation of "load indicator" is permissible because the REGULATION's use of the words "device which plainly indicates" *in the context in which they are used* is so standardless that any interpretation is actually the ***rewriting*** of the REGULATION.

> "In considering a facial challenge, this Court may impose a limiting construction on a statute only if it is 'readily susceptible' to such a construction…  This Court 'will not rewrite a … law to conform it to

---

[6]    The slide is the top part of a semi-automatic pistol that moves to the rear during the operating cycle and returns to its starting position through spring tension.  Pulling the slide back always exposes the firing chamber for both visual and tactile inspection.  This is invariably the surest method that nearly all, if not ***all*** would strenuously argue the *only* method to confirm the presence or absence of a cartridge in the firing chamber.

constitutional requirements.'"  <u>Reno v. American Civil Liberties Union</u>, 521 U.S. 844, 884 – 885 (1997) (internal and string cite omitted).

Thus, *any* interpretation fails because it implicitly excludes a multitude of equally valid interpretations.  "[O]ur constitutional mandate and institutional competence are limited [so] we restrain ourselves from 'rewrit[ing] state law to conform it to constitutional requirements' even as we strive to salvage it."  <u>Ayotte v. Planned Parenthood of Northern New Eng.</u>, 546 US 320, 329 (2006) (internal citation omitted).

/// 

/// 

/// 

/// 

/// 

///

## IV. <u>AS-APPLIED VOID-FOR-VAGUENESS CHALLENGE</u>

"A plaintiff asserts an as-applied challenge by claiming that a statute is unconstitutional as-applied to his or her particular conduct, even though the statute may be valid as to other parties." <u>Cook v. Gates</u>, 528 F. 3d 42, 56 (1st Cir. 2008). In this case, the as-applied vagueness challenge is directed at the words "device which plainly indicates" as applied to the *object* of the DEALERS' conduct (Gen3/4 Glock pistols), the analogue for the DEALERS' *conduct* (firearm sales). Stated slightly differently, the vague REGULATION as-applied to *Gen3/4 Glock pistols* directly affects the DEALERS' conduct regarding these pistols, and correspondingly, the availability to the CONSUMERS of these firearms "in common use".

The District Court concluded that the DEALERS's as-applied vagueness challenge failed because: (1) "the plaintiffs' knowledge and receipt of actual notice that the Gen3/4 Glock pistols are noncompliant defeat their as-applied challenge to the regulation", and (2) "the language of the regulation provides clear guidance for and fair notice to firearms dealers of ordinary intelligence." Dismissal Memorandum, 12 (AD13). Both conclusions are wrong.

///

///

///

**A. The District Court's Finding of the DEALERS' Notice and Knowledge of Gen3/4 Glock Pistols' REGULATION Noncompliance is Based on an Incomplete Analysis, Assumption of a Nonexistent Fact, Non-Application of Applicable Authority and on the Application of Inapplicable Legal Authority**

The DEALERS' as-applied vagueness challenge is not about whether the REGULATION applies to *them* (that much is self-evident) but *how* it applies to *Gen3/4 Glock pistols*, which then affects the DEALERS' conduct.  The DEALERS contend that it is impossible to determine Gen3/4 Glock pistols' compliance with the REGULATION by applying the words "device which plainly indicates" to their particular implementation of "load indicator".  That impinges on the DEALERS' Fourteenth Amendment right to engage in a legitimate employment or business. Schware v. Board of Bar Examiners, 353 U.S. 232, 238-239 (1957).

The District Court approached the DEALERS' as-applied vagueness challenge by stating that it "need only determine whether the regulation is vague as applied to the *particular facts at issue*".  [Dismissal Memorandum, 13 (JA193)]  But then it then focused **solely** on "'whether the plaintiffs, as people of ordinary intelligence, can determine if the Gen3/4 Glock pistols comply with the regulation" [Dismissal Memorandum, 13 (JA193)] *while making no inquiry at all into whether or how the words "device which plainly indicates" provided DEALERS with fair notice of some compliance standard when **actually** applied to Gen3/4 Glock pistols' implementation of "load indicator".*

The District Court based its Dismissal of the DEALERS' as-applied vagueness claim on <u>United States v. Zhen Zhou Wu</u>, 711 F.3d 1, 15 (1st Cir. 2013) cert. denied sub nom. <u>Yufeng Wei v. United States</u>, 134 S. Ct. 365 (2013), which held that "challengers of [a] regulation cannot claim they lacked fair notice [from an allegedly vague law] because they 'knew they were violating U.S. export regulations.'" Dismissal Memorandum, 12 (JA192).   The District Court concluded that "the plaintiffs' knowledge and receipt of actual notice that the Gen3/4 Glock pistols are noncompliant defeat their as-applied challenge to the regulation." <u>Id. (JA192).</u>

First, the District Court's reliance on <u>U.S. v. Zhen Zhou Wu</u> is misplaced.  In <u>Zhen Zhou Wu</u> the defendants

> "... *repeatedly attempted to disguise* the fact that they were exporting [ ] and that *they lacked the necessary licenses* to do so—further evidence that the defendants *knew* they were violating U.S. export regulations when they shipped the phase shifters [ ] without government permission." 711 F.3d at 16, italicized emphasis.

In contrast, the DEALERS here (1) did *not* sell any Gen3/4 Glock pistols to the CONSUMERS, (2) were *actually* confused (3) by an *actually* vague regulation (4) made all-the-more-so confusing by the AG's baffling summary proclamation that Gen3/4 Glock pistols' "load indicators" are not REGULATION compliant while tacitly approving other virtually identical "load indicators".  The facts of <u>Zhen Zhou Wu</u> are completely different from the facts in this case.

From the District Court's application of the inapplicable <u>Zhen Zhou Wu</u> to the facts of this case it is immediately obvious that it *assumed*—without reference to

*any facts or legal authorities*—that "Gen3/4 Glock pistols *are* noncompliant" because, well, the AG said so.  The District Court adopted, without inquiry or reason, the AG's *petitio principia* syllogism of **presuming the answer to question this lawsuit seeks to resolve**:  "There is no vagueness here and no injury that may be attendant to it" because "the Attorney General's Office *informed* the dealers … that *these Glock pistols in fact violated the regulation*".  (JA185).  The plaintiffs forcefully argued against this fallacious logic:

> "The sham logic leading to this false conclusion would require this Court to adopt the un-established premise that '*Glock pistols in fact violated the regulation*' as true because, just as the [AG] applied this reasoning to the DEALERS, *she said so*."  (JA216) (original emphasis).

The District Court made no mention of this refutation in its Dismissal Memorandum nor did it *itself* confront how the challenged words "device which plainly indicates" *actually apply* to Gen3/4 Glock pistols' load indicators.  Practically, this amounts to the District Court making an *implicit factual finding* that Gen3/4 Glock pistols' "load indicators" are noncompliant, again, because the AG said so.  This baseless assumption is the basis for all of the District Court's erroneous rulings on the DEALERS' as-applied challenge.

Further, rather than "accepting the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor" [Debnam v. FedEx Home Delivery, *supra*, 96] the District Court rejected the DEALERS' stated lack of "knowledge … that [] Gen3/4 Glock pistols are [regulation] noncompliant" *before* they wrote to the AG (assuming noncompliance was established at that time—or ever).  That is exactly

*why* the DEALERS wrote to the AG *seeking clarification* regarding compliance. (JA108, JA110).   They wrote that from their "discussions with []dealers and distributors" they formed an "*anecdotal* understanding that [Gen3/4 Glock pistols] are not compliant" but were unable to "explain what features make them noncompliant".

The District Court also did not "draw[] all reasonable inferences" from the plaintiffs' alleged facts by falsely concluding that the DEALERS "admit[ted] that they were aware that the regulation foreclosed the transfer or sale of the Glock pistols at issue."  Dismissal Memorandum, 12 (AD13-AD14).  But the DEALERS pleaded "that they were aware that [the AG capriciously summarily ***proclaimed*** Glock pistols non-compliant, which] foreclosed the transfer or sale of the Glock pistols at issue."

Nor did the District Court "draw[] all reasonable inferences in the plaintiff's favor" when it concluded that the DEALERS gained actual knowledge from the "receipt of actual notice [AG's response letters] that the Gen3/4 Glock pistols are noncompliant."   What the DEALERS received was "actual notice that [the AG capriciously summarily ***proclaimed*** that] that the Gen3/4 Glock pistols are noncompliant"—not that they are *actually* noncompliant.

This entire line of reasoning is plainly flawed from the start in every respect.

*///*

### B. The District Court Did Not Test the *Correctness* of the AG's *Application* of the Disputed Definition of "Load Indicator" to Gen3/4 Glock Pistols

One of the most troubling concerns about the District Court's ruling is that it did not *itself* confront Gen3/4 Glock pistols' *actual* compliance with the "device which plainly indicates" standard because it dismissed the DEALERS' as-applied challenge on the false premise that they had "knowledge and [ ] actual notice that the Gen3/4 Glock pistols are noncompliant". The District Court did not *itself* review the **facts** forming the basis of the AG's *summary proclamation* that Gen3/4 Glock pistols' "load indicators" are REGULATION noncompliant, nor could it even if it tried—***because there are none***. The District Court simply assumed her proclamation is correct. The *practical* result is no elucidation regarding *what* about Gen3/4 Glock pistols' "load indicators" renders them noncompliant (in the AG's opinion), but now with the District Court's imprimatur—without reference to *any* facts or evidence—that the AG was *correct* in that determination.

The District Court correctly observed that "[i]n the field of regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is allowed" [Dismissal Memorandum, 13 (AD14)], but

> "deference [to an agency] is [ ] unwarranted when there is reason to suspect that the agency's interpretation 'does not reflect the agency's fair and considered judgment on the matter in question... This might occur when ... it appears that the interpretation is nothing more than a 'convenient litigating position' ... or a 'post hoc rationalizatio[n]' advanced by an agency seeking to defend past agency action against attack.'"

<u>Christopher v. SmithKline Beecham Corp.</u>, 132 S. Ct. 2156, 2166 (2012) (internal citations and quotations omitted).  But in this case not only has the AG withheld any *interpretation* of the words "device which plainly indicates"—and *refuses* to do so (now with the District Court's sanction)—she also refuses to disclose (now with the District Court's sanction) "what" specifically about Gen3/4 Glock pistols' "load indicators" she determined renders them noncompliant.

///

///

///

///

///

///

///

///

### C. The District Court Concluded That the Words Defining "Load Indicator" are Constitutionally Valid Without Referring to Any Standard of Compliance, Any Evidence or Any Legal Authorities

The complaint explicitly pleaded (JA42) and all of the plaintiffs' subsequent submissions to the District Court (including oral argument at the hearing on the AG's motion to dismiss) stressed, that the AG's summary proclamation that Gen3/4 Glock pistols' "load indicators" are REGULATION noncompliant—while tacitly approving other pistols' virtually identical "load indicators"—only deepened the existing confusion over *what* is required to comply with the hopelessly vague "load indicator" alternative design requirement.  Simple logic dictates that identical implementations of "load indicator" are either all compliant or none are compliant.

"What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely *what* that fact is."  <u>Williams</u>, *supra*, at 306, emphasis in italics.  Though it really belongs in the facial vagueness analysis, the District Court ruled regarding the *as-applied* vagueness challenge:

> "The words ['a device which plainly indicates'] are straightforward both individually and in context because they describe that the purpose of a load indicator in a handgun is to inform a user unequivocally that the gun is loaded."  Dismissal Memorandum, 13-14 (AD14-AD15).

But conspicuously missing from the District Court's ruling is "precisely *what* that fact is" that accomplishes the "purpose of ... inform[ing] a user unequivocally that the gun is loaded" *as applied to* Gen3/4 Glock pistols *from the words "device which*

*plainly indicates"*.  A clear *purpose* without any compliance standard informs no one, including the AG, *what* is required to comply with the REGULATION.  <u>Williams</u>, *supra*.  This is starkly manifested by the *real world result* of the District Court's ruling:

Both DEALERS are Type 07 FFLs ("Title 1 manufacturer of firearms and ammunition, who may also act as dealer") and are Massachusetts licensed gunsmiths.  (JA108, JA110).  Each is licensed and capable of modifying firearms, including Gen3/4 Glock pistols, to make them compliant with the REGULATION's "load indicator" alternative design requirement.  Based on the District Court's ruling that the words "device which plainly indicates" are "straightforward both individually and in context" *as applied to Gen3/4 Glock pistols* (*all* pistols, really), **what should the DEALERS do to bring Gen3/4 Glock pistols into compliance?**

Should they make Gen3/4 Glock "load indicators"

—longer or shorter?

—thicker or thinner?

—brighter or duller?

—rougher or smoother?

—painted yellow, green, blue, fire engine red or some combination of colors?

*Where* should that **what** "device which plainly indicates" be located on the pistol?

—on the right, left, top or bottom?

—on the frontstrap or the backstrap?

—on the slide, on the frame or on the trigger?

—at the muzzle or at the breach?

Should that **what** "device which plainly indicates" be visual, tactile, audible or

some combination of these?  *How* will compliance be *measured*?  With a—

—ruler?

—protractor?

—depth gauge?

—photometer?

—weight scale?

—sound meter?

### What should the DEALERS do?

> "[I]f arbitrary and discriminatory enforcement is to be prevented, laws
> must provide explicit standards for those who apply them.  A vague law
> impermissibly delegates basic policy matters to policemen, judges, and
> juries for resolution on an ad hoc and subjective basis, with the
> attendant dangers of arbitrary and discriminatory applications."

Hoffman Estates, *supra*, at 498 (1982) (citations omitted).  Echoing Hoffman, Justice

Stephen Breyer stated in his concurring opinion in Morales, *supra*, 527 U.S. at p. 71

(original italics)

> "The ordinance is unconstitutional, not because a policeman applied
> this discretion wisely or poorly in a particular case, but rather because
> the policeman enjoys too much discretion in *every* case.  And if every
> application of the ordinance represents an exercise of unlimited
> discretion, then the ordinance is invalid in all its applications."

Without any explanation by the AG or analysis by the District Court regarding how or why the wholly subjective words "device which plainly indicates" *as applied to Gen3/4 Glock pistols* renders them noncompliant gives the AG "unlimited discretion" in "*every* case". This is not an abstraction: "Opining that the Attorney General 'has not objected' to certain pistols is not the same as alleging that the Attorney General has either approved them or given any indication that they meet the load indicator standards." (JA193-JA194). "[T]he Commonwealth never said that the non-Glocks were okay..." Id., 13. "The fact that the Commonwealth didn't say anything about some load indicators ... doesn't actually tell you anything in terms of discriminatory enforcement." (JA308-JA309).

But it does. The AG provided no facts regarding how she applied her "fair and considered judgment on the matter in question" (Auer v. Robbins, 519 U.S. 452, 462 (1997)) to the **what** about Gen3/4 Glock pistols' "load indicators" that renders them noncompliant *with the words "device which plainly indicates"*. She did, however, reveal the *extent* of her "fair and considered judgment on the matter" by pointing out what she *believes* are *differences* in the "[p]ictures of the Glock load indicator device shown in Complaint exhibits 42 and 43", "manual excerpts", and "appear[ance] from the exhibits...." (JA192, JA194). The AG explained in her Opposition at p. 14 (JA94)

> "*These manual excerpts* show guns with colored indicators that provide a shading contrast to demonstrate (1) the location of the load indicator and (2) that cartridges are in the firing chamber... On the other hand,

the Glock device [ ] is not colored and does not provide such a contrast. The extent of protrusion, the shape, the size, and the exact placement of the load indicator device also *appear from the exhibits* to differ between Glocks and those purportedly 'virtually identical' firearms."

At the oral hearing on the AG's motion to dismiss, the AG repeated how she determined that Gen3/4 Glock pistols' noncompliance with the "device which plainly indicates" standard:  they "sort of" appear different in the exhibits to the complaint:

- **Mr. Kaplan (Hearing Transcript** (JA309-JA310 ) (emphasis in italics)**:**

   Now, *looking at these exhibits*, one can see right away that—from the information that's there, that the non-Glock indicators, you know, they have color, they have shading, from the way they're described and shown, they sort of stick right out and announce, Hey, this gun is loaded.

   If one looks at what's listed for the Glock, there's no color, there's nothing that really jumps out that, if you looked at it in one position versus another, you would necessarily know that there's something to be worried about.

Gleaned from this "post hoc rationalization advanced by an agency seeking to defend past agency action against attack" [Auer, *supra*, p. 462] is that the REGULATION's compliance standard includes one or more unspecified aspects of shape, size, protrusion, color, shading, shading contrast, "sticking right out", "announcing 'Hey, this gun is loaded'", and "exact placement".  Returning to the question prompted by the District Court's ruling, ***what should the DEALERS do, based on the foregoing "standard", to bring Gen3/4 Glock pistols into compliance with the REGULATION?***

The District Court's faulty reasoning and context-less *non-application* of the words "device which plainly indicates" to Gen3/4 Glock pistols plunges this entire issue into a compliance morass.  Worse, it licenses the AG with "unlimited discretion" to proclaim *any* "load indicator" implementation noncompliant.

///

///

///

///

///

///

///

///

///

## V. <u>VIOLATION OF THE SECOND AMENDMENT</u>

The CONSUMERS' Second Amendment claim is entirely derivative of the chilling effect on firearms transactions between the DEALERS and the CONSUMERS due to the unconstitutional vagueness in the REGULATION.

> "The unconstitutionally vague and ambiguous 'load indicator' [alternative] design requirement of the Handgun Sales Regulation and the Attorney General's capricious conclusion that 3rd and 4th generation Glock pistols lack an 'effective load indicator' device have prevented the DEALERS and CONSUMERS from engaging in purchase and sale transactions of firearms in common use (i.e. Glock pistols) thereby directly infringing on the CONSUMERS' core fundamental rights protected by the Second Amendment." (JA21).

To the extent the *absence* in the complaint of *any* additional bases for the CONSUMERS' Second Amendment claim did not convey that unconstitutional vagueness was the *only* basis for their claim—"[o]ur review on a motion to dismiss is confined to the face of the complaint" <u>Decotiis v. Whittemore</u>, 635 F. 3d 22, 33 (1st Cir. 2011)—their explicit declaration should have foreclosed that question: "[T]he Complaint does not challenge … the REGULATION's "load indicator" requirement (*independent of its unconstitutionally vague definition*) is unconstitutional *per se*." (JA217) (original emphasis).

The District Court understood that the CONSUMERS' Second Amendment claim was wholly derivative of, and contingent on, the DEALERS' Fourteenth Amendment due process claim. It was clear in all of the plaintiffs' submissions to

the Court and explicitly acknowledged in oral argument at hearing on the AG's motion to dismiss:

- **Court (Hearing Transcript 16:8 – 10) (JA313):**

  "[P]lease clarify your position with respect to your Second Amendment claim.  Is it wholly derivative of your vagueness challenge or not?"

- **Mr. Flig (Hearing Transcript 17:19 – 21) (JA314):**

  "[The CONSUMERS'] Second Amendment claim is in fact derivative of the Fourteenth Amendment due process claim by the dealer Plaintiffs."

### A.  The District Court Issued Rulings on a Moot Cause of Action

"There is [ ] no case or controversy, and a suit becomes moot, when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  Chafin v. Chafin, *supra*, at 2023 (internal citations and quotation marks omitted).  "The doctrine of mootness enforces the mandate 'that an actual controversy must be extant at *all stages of the review, not merely at the time the complaint is filed*.'"  Mangual v. Rotger-Sabat, 317 F.3d 45, 60 (1st Cir.2003) (emphasis in italics).  Moreover, "[m]ootness is a ground which should ordinarily be decided *in advance of any determination on the merits*."  ACLUM v. Conf. of Catholic Bishops, 705 F. 3d 44, 52 (1st Cir. 2013) (emphasis in italics).

The District Court ignored these jurisdictional precepts and issued rulings on the CONSUMERS' moot Second Amendment claim.  The District Court's Dismissal of the DEALERS' Fourteenth Amendment due process cause of action mooted the CONSUMERS' Second Amendment cause of action upon which it was *wholly*

predicated.  Nevertheless, the District Court issued three separate erroneous rulings on the mooted Second Amendment claim.

### B.  The District Court Violated the Canon of Constitutional Avoidance

Under the doctrine of constitutional avoidance federal courts are not to reach constitutional issues where alternative grounds for resolution are available.  <u>ACLUM v. Conf. of Catholic Bishops</u>, 705 F. 3d 44, 52 (1st Cir. 2013).

> "The desire to resolve more constitutional questions ought not lead to altering our jurisdictional rules.  That is the precise object that our legal tradition tells us we should resist.  Haste to resolve constitutional issues has never been thought advisable.  We instead have encouraged the Courts of Appeals to follow 'that older, wiser judicial counsel not to pass on questions of constitutionality … unless such adjudication is unavoidable.'"

<u>Camreta v. Greene</u>, 564 U.S. ___, 131 S. Ct. 2020, 2045 (2011) (internal citations and quotation marks omitted.)

Having mooted the CONSUMERS' Second Amendment claim by dismissing the DEALERS' due process claims, the District Court should have ended its analysis of what were purely constitutional Second Amendment issues.  It did not, and instead directly addressed the CONSUMERS' Second Amendment constitutional claims.  This violated of the canon of constitutional avoidance and was an abuse of discretion.

///

### C. The District Court Violated the Article III Canon Prohibiting Advisory Opinions

"Article III of the Constitution restricts the power of federal courts to 'Cases' and 'Controversies.'"  <u>Chafin v. Chafin</u>, *supra*, 2023.  In so limiting the jurisdiction of the federal courts, Article III "ensures that courts do not render advisory opinions." <u>Overseas Military Sales Corp. v. Giralt-Armada</u>, 503 F.3d 12, 17 (1st Cir. 2007) (citing U.S. Const. art. III, § 2, cl. 1).  Federal courts may not "decide questions that cannot affect the rights of litigants in the case before them" or give "opinion[s] advising what the law would be upon a hypothetical state of facts."  <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 477, (1990).  The distinction between a "conclusive decree" and an "advisory opinion" was reiterated in <u>Johansen v. U.S.</u>, 506 F.3d 65 (1st Cir. 2007) (string citations omitted, original emphasis):

> "The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*."

None of the District Court's three Second-Amendment-related rulings are related to the *sole* Second Amendment-related issue in this lawsuit:  the *impact* of the unconstitutionally vague REGULATION's on the CONSUMERS' Second Amendment right.  In fact, the District Court ruled on issues specifically *disclaimed* by the plaintiffs.

*///*

### 1. The District Court's First Advisory Ruling

The District Court's first improper Second Amendment-related ruling was that the REGULATION meets constitutional muster because it is "among the categories of regulation that <u>Heller</u> suggested would be 'presumptively lawful' because it 'impos[es] conditions and qualifications on the commercial sale of arms.'" Dismissal Memorandum, 16 (AD17).  Alas, the plaintiffs did not challenge the presumptive lawfulness of the REGULATION to regulate commercial sales of firearms.  On the contrary, the plaintiffs explicitly demurred that the they do "not challenge ... that the REGULATION's "load indicator" requirement (*independent of its unconstitutionally vague definition*) is unconstitutional *per se*."  (JA217) (original emphasis).

Moreover, the plaintiffs disentangled the AG's motion to dismiss conflation of the "presumptive validity of regulations over the 'commercial sale of arms' [from] the presumptive validity of the *implementation* and *impact* of such regulations."  <u>Id.</u> (JA217) "The *effect* of the REGULATION's unconstitutional vagueness on the DEALERS' commercial activity (sales of firearms) renders it impossible for the CONSUMERS to acquire [Gen3/4 Glock pistols]."  (JA218).  Whether the REGULATION is "'presumptively lawful' because it 'impos[es] conditions and qualifications on the commercial sale of arms'" [Dismissal Memorandum, 16 (AD17)] is not the subject of this lawsuit;  this ruling by the District Court does not settle any "dispute *which affects the behavior of the defendant towards the plaintiff.*"

---

## 2.  The District Court's Second Advisory Ruling

The District Court's second improper Second Amendment-related ruling was that "[t]he regulation does not substantially burden the [Second Amendment] because the ban on two kinds of Glock pistols in no way prevents citizens from obtaining a wide array of firearms."  Dismissal Memorandum, 16-17 (AD17-AD18).  The District Court erred both factually and in its legal analysis in this ruling.

### a.  Wrong and Nonexistent Facts

The District Court misapprehended the *plaintiffs'* alleged facts by adopting the *AG's misrepresentation* of the plaintiffs' alleged facts at p. 18 (JA198) of her motion to dismiss, in which she wrote "plaintiffs themselves explain that [] the regulation makes two models of handguns unmerchantable in Massachusetts…"  Nowhere in any court submissions or at oral argument did the plaintiffs allege that "two kinds of Glock pistols" are at issue.  On the contrary, plaintiffs clearly alleged that ***all*** Gen3/4 models of Glock pistols listed on the EOPSS Approved Firearms Roster—***53 (fifty-three)*** models—are the subject of the Complaint.  (JA31, JA55-JA70).  Even if the District Court misunderstood the allegation, it is one of a quantum order of magnitude regarding the *impact* of the REGULATION's unconstitutional vagueness.

Far more importantly, the District Court's conclusion that the "regulation does not substantially burden the [Second Amendment]…" presupposes that the plaintiffs allege that it *does* burden the Second Amendment "*independent of its unconstitutionally vague definition [of 'load indicator']*."  (JA217).  Yet again, nowhere

in any court submissions or at oral argument did the plaintiffs claim that the REGULATION is unconstitutional *independent of its unconstitutional vague definition of "load indicator".*

The District Court declared that the REGULATION's burden on the Second Amendment is not "substantial[ ]", because (based on the incorrect assumption that the "ban [is] on *two* kinds of Glock pistols" [Dismissal Memorandum, 16 (AD17)]]) it leaves a "wide array of firearms" available to the CONSUMERS that the AG did not ban—*yet* (*see* discussion below). That assumption about the availability of a "wide array of firearms" is unfounded because no evidence has been admitted regarding what pistols are *not* available because of the unconstitutionally vague REGULATION. Nor did the District Court articulate what ***is*** included in the "wide array of firearms" that it *assumed* remains available. The foregoing is the result of the District Court's Dismissal of this lawsuit *prior* to developing the facts through discovery. This entire aspect of the District Court's ruling based on false assumptions and on never-presented evidence is just wrong.

### b. Flawed Analysis

Instead of focusing on the *vagueness* in the REGULATION and the challenged *conduct* it sanctions (arbitrary and capricious enforcement), the District Court's Second Amendment burden analysis—conspicuously lacking any citation to legal authorities for its approach—focuses on the *non-categorical* impact on the Second Amendment (purportedly leaving a "wide array of firearms" available) *despite* the

REGULATION. By the District Court's logic, the REGULATION is cured of its unconstitutionality and/or the AG's ban of Gen3/4 Glock pistols is cured of its arbitrariness and capriciousness so long as alternative pistols remain available to the CONSUMERS: "The regulation does not substantially burden the right to bear arms ... *because [it] in no way prevents citizens from obtaining a wide array of firearms*." Dismissal Memorandum, 16-17 (AD17-AD18). At what quantitative and/or qualitative point would the District Court rule that the reduction in the availability of firearms burdens Second Amendment rights?

This is the exact *opposite* of the Second Amendment burden analysis prescribed by the Supreme Court in the now famous <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008) case. There, the Supreme Court sharply criticized Justice Breyer's proposed

> "... judge-empowering 'interest-balancing inquiry' that 'asks whether the statute burdens a protected interest in a way or to an extent that is *out of proportion* to the statute's salutary effects upon other important governmental interests.'" <u>Id.</u>, 634 (emphasis in italics).

Whether it is a "salutary effect" or a non-categorical arbitrary and capricious ban on certain brands or models of firearms, the discrete variable <u>Heller</u> unambiguously excluded from the burden on constitutional rights analysis in general—and the Second Amendment in particular—is "*proportion[ality]*" between the offending law or regulation (and/or its enforcement) and its *result* or *impact*.[7]

---

[7]    The Supreme Court expressly rejected this District Court's very reasoning that "[t]he regulation does not substantially burden the right to bear arms ... *because*

"We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest-balancing' approach.  The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon.  A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all.  Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." Id., 634 – 635 (emphasis in the original).

The District Court also based its holding that the REGULATION "does not violate the Second Amendment… [because it] does not substantially burden the right to bear arms…" [Dismissal Memorandum, 16 (AD17)] on an inapplicable holding in a sister District Court.  The District Court cited Kampfer v. Cuomo, 993 F. Supp. 2d 188, 196 (N.D.N.Y. 2014) which:

"… dismiss[ed] a constitutional challenge to a state statute 'because the provisions at issue attempt only to decrease in number *certain firearms deemed particularly dangerous by the legislature for the sake of public safety*, which interests are clearly advanced by the legislation, they do not infringe the Second Amendment right to keep and bear arms." Dismissal Memorandum, 17 (AD18) (emphasis in italics).

But the plaintiffs did not challenge the *purpose* of the REGULATION, whatever it is (or the AG purports it to be), or whether the REGULATION *advances* whatever the AG purports it to advance.  The plaintiffs specifically disclaimed such allegations:

"[W]hether a regulatory 'load indicator' requirement is or is not closely or substantially related to an important or compelling government purpose … is not

---

*[it] in no way prevents citizens from obtaining a wide array of firearms*."  Dismissal Memorandum, 16-17 (AD17-AD18):  "It is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed."  Heller, *supra*, 629.

---

the subject of the Complaint..."  (JA217).  The District Court thus conflated a non-issue in this lawsuit—whether the REGULATION (assuming it meets constitutional *clarity* standards) fulfills its purported purpose—with its incorrect ruling that the DEALERS' Fourteenth Amendment due process cause of action fails because "[t]he words ['device which plainly indicates'] are straightforward both individually and in context."

This Court explained in <u>Powell v. Tompkins</u>, Docket No. 13-1310 (1st Cir. 2015) at footnote 9 that "[s]everal circuits have adopted a two-part framework for evaluating a claim of Second Amendment infringement in the post-<u>Heller</u> era" and "thus far [we] have ... hewed closely and cautiously to Heller's circumscribed analysis and holding."

> "Broadly speaking, some courts first consider whether the challenged law imposes a burden on conduct that falls within the scope of the Second Amendment's guarantee as historically understood, and if so, courts next determine the appropriate form of judicial scrutiny to apply (typically, some form of either intermediate scrutiny or strict scrutiny).  [Multiple citations omitted.]" <u>Id.</u>

Applying the first prong of this framework to the facts of this case immediately exposes the incorrectness of the District Court's holding that the REGULATION "does not violate the Second Amendment... [because it] does not substantially burden the right to bear arms..." [Dismissal Memorandum, 16 (AD17)]:

> ***Does "the challenged [REGULATION] imposes a burden on conduct that falls within the scope of the Second Amendment's guarantee as historically understood?"***

The Second Amendment extends to firearms "in common use". <u>Heller</u>, at 627. Handguns are a "class of 'arms' that Americans overwhelmingly choose for the lawful purpose of self-defense." <u>Heller</u>, at 571. Gen3/4 Glock pistols are handguns "in common use." (JA30). The Second Amendment extends to Gen3/4 Glock pistols.

At the "core [of the Second Amendment is the] lawful purpose of self-defense…" <u>Heller</u>, at 630. Each of the CONSUMERS, duly licensed to acquire and possess firearms in Massachusetts, sought to acquire a Gen3/4 Glock pistol for "competitive shooting and self-defense purposes." (JA32-JA34). In seeking to purchase Gen3/4 Glock pistols (firearms "in common use") from the DEALERS, the CONSUMERS were exercising a right protected by the Second Amendment.

The REGULATION's unconstitutionally vague "load indicator" alternative design requirement and the Attorney General's capricious ban of Gen3/4 Glock pistols have prevented the DEALERS and CONSUMERS from engaging in purchase and sale transactions of firearms in common use. (JA21). The CONSUMERS have been prevented from exercising a right protected by the Second Amendment. The REGULATION burdens conduct that falls within the scope of the Second Amendment's guarantee.

Once burden on the Second Amendment has been established, "some form of either intermediate scrutiny or strict scrutiny" is applied to the challenged law or regulation. <u>Powell v. Tompkins</u>, *supra*.

The District Court erred that "[c]ivil regulations that govern commercial conduct are held to a lower standard than criminal statutes in the vagueness analysis." Dismissal Memorandum, 13 (AD14). The "civil regulation governing commercial conduct" at issue in this lawsuit directly affects and has actually burdened a *constitutional right*. Where a constitutional right is burdened some form of heightened scrutiny analysis is triggered, which necessitates a correspondingly higher level of "precision and guidance [in the challenged regulation] so that those enforcing the law do not act in an arbitrary or discriminatory way." FCC v. Fox Television Stations, Inc., 567 U.S. __, 132 S. Ct. 2307, 2317 (2012) (string citation omitted). Heller foreclosed the application of any reduced level of scrutiny to analyze burdens on the fundamental right to keep and bear arms.[8]

### 3. The District Court's Third Advisory Ruling

The District Court's third and final improper Second Amendment-related ruling was "[e]ven if the regulation did impinge on Second Amendment rights" it survives "under any standard of scrutiny" because

> "[t]he defendant has demonstrated a strong showing of a 'substantial relationship' between the restrictions imposed by the regulation and the important government objective of protecting the safety of its citizens." Dismissal Memorandum, 17 (AD18).

---

[8]    The Supreme Court made clear that reduced levels of scrutiny, such as the rational basis test, may ***not*** be used to evaluate burdens on constitutionally enumerated rights. Heller, *supra*, 628 n.27.

The District Court did not make *any* findings or cite *any* facts which constitute the AG's "strong showing" of a 'substantial relationship' between "the restrictions imposed by the regulation and the important government objective of protecting the safety of its citizens".  Nor did the District Court cite any argument by either the plaintiffs or the AG for or against the subject of this ruling.  The District Court did not cite any authorities to support this ruling.  Worse yet, this ruling defies the Supreme Court's ruling in Heller in which it bluntly said "***Obviously*** ["rational basis" scrutiny] could ***not*** be used to evaluate the extent to which a legislature may regulate a specific, enumerated right … [including] the right to keep and bear arms." Id., 628 n.27.  Here, the regulation was not by a democratically elected legislature but by an executive branch agency.  This ruling by the District Court was made in a complete vacuum of facts and law.

///

///

///

///

# CONCLUSION

A danger of allowing vague laws to remain in effect is that "[u]ncertain meanings inevitably lead citizens to steer far wider of the unlawful zone ... than if the boundaries of the forbidden areas were clearly marked." Grayned v. City of Rockford, 408 U.S. 104, 108 fn. (1972) and quotation marks omitted.

That is precisely the situation here. The CONSUMERS were unable to obtain Gen3/4 Glock pistols, firearms "in common use", because the unconstitutional vagueness in the REGULATION caused the DEALERS to avoid selling these pistols. The DEALERS feared an enforcement action should the AG disagree with their reasoned opinion that *based on the text* of the REGULATION that Gen3/4 Glock pistols are in compliance. The AG's vacuous responses to the plaintiffs' letters seeking clarification only plunged the issue of compliance further down into the vagueness abyss, as she proclaimed—without explanation—Gen3/4 Glock pistols' "load indicators" noncompliant while tacitly approving the virtually identical "load indicator" implementations of several other pistol makes and models. Vagueness in the REGULATION makes such capricious enforcement possible.

> "Even when speech is not at issue, the void for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that *regulated parties should know what is required of them so they may act accordingly*; second, precision and guidance are necessary *so that those enforcing the law do not act in an arbitrary or discriminatory way*." FCC v. Fox Television Stations, 567 U.S. __, 132 S.Ct. 2307, 2317 (2012) (emphasis in italics).

For the foregoing reasons, plaintiffs respectfully request that the judgment of the District Court be reversed and the case remanded with instructions to enter a judgment that the REGULATION's definition of "load indicator" is facially void for vagueness and as applied to Gen3/4 Glock pistols, and that all of the District Court's Second Amendment related rulings be reversed. Alternatively, all of the District Court's rulings should be reversed and the case remanded for further proceedings consistent with the findings of this Court.

///

///

///

///

///

///

///

Respectfully submitted,

Dated:  29 October 2015.

**ROBERT DRAPER;  ARIEL WEISBERG;
DONNA MAJOR;  ERIC NOTKIN;
ROBERT BOUDRIE;  BRENT CARLTON;
CONCORD ARMORY, LLC;  PRECISION
POINT FIREARMS, LLC, and SECOND
AMENDMENT FOUNDATION, INC.**

By and through their attorney of record

**/s/ Alexander A. Flig**

Alexander A. Flig, Esq
1st Circuit No. 1169830
BBO No. 669132
490 Chapman Street, Suite 201
Canton, Massachusetts 02021-2039
Telephone:    (781) 352-7260
Facsimile:    (781) 583-5080
E-Mail:      alex@fliglaw.com

# <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

## Type-Volume Limitation, Typeface Requirements
## and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

| | |
|---|---|
| **X** | This brief contains 13,820 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). |
| | This brief uses a monospaced typeface and contains lines 800 of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). |

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

| | |
|---|---|
| **X** | This brief has been prepared in a proportionally spaced typeface using Cambria font, size 13 (the equivalent of Times New Roman, size 14, but with better screen readability). |
| | This brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style]. |

Dated:  29 October 2015

**/s/ Alexander A. Flig**
_____
Attorney for Plaintiffs – Appellants

# CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing **ASSENTED-TO MOTION BY APPELLANTS TO EXTEND TIME FOR FILING BRIEF; SUPPORTING AFFIRMATION** with the Clerk of the Court using the CM/ECF system which will send notification of this filing to the following registered participants in this matter:

| Appellee's Counsel | Amicus' Counsel |
|---|---|
| **William Porter, Esq.** <br> **Attorney General of Massachusetts** <br> 1 Ashburton Place <br> Boston, Massachusetts 02108 <br> bill.porter@state.ma.us | **L. Scott Harshbarger, Esq.** <br> **Proskauer Rose, LLP** <br> 1 International Place, 22nd Floor <br> Boston, Massachusetts 02110-0000 <br> sharshbarger@proskauer.com |
| **Julia Eleanor Kobick** <br> **Attorney General of Massachusetts** <br> 1 International Place, 22nd Floor <br> Boston, Massachusetts 02110-0000 <br> julia.kobick@state.ma.us | **John E. Roberts, Esq.** <br> **Proskauer Rose, LLP** <br> 1 International Place, 22nd Floor <br> Boston, Massachusetts 02110-0000 <br> jroberts@proskauer.com |

Dated:  29 October 2015

**Counsel for Plaintiffs - Appellants**

**/s/ Alexander A. Flig**

Alexander A. Flig, Esq
1st Circuit No. 1169830
BBO No. 669132
490 Chapman Street, Suite 201
Canton, Massachusetts 02021-2039
Telephone:    (781) 352-7260
Facsimile:      (781) 583-5080
E-Mail:        alex@fliglaw.com

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

## Case No. 15-1429

Robert Draper, Ariel Weisberg, Donna Major, Eric Notkin, Robert Boudrie and Brent Carlton (collectively the "CONSUMERS"); Concord Armory, LLC and Precision Point Armory, LLC (collectively the "DEALERS"), and Second Amendment Foundation, Inc.

*Plaintiffs – Appellants*

v.

MAURA HEALEY, in her capacity as
The Attorney General of the Commonwealth of Massachusetts

*Defendant – Appellee*

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
Civil Action No. 1:14-CV-12471-NMG

## ADDENDUM TO BRIEF OF PLAINTIFFS-APPELLANTS

**Alexander Aron Flig**
Law Office of Alexander A. Flig
1st Circuit No. 1169830
MA BBO No. 669132
490 Chapman Street, Suite 201
Canton, Massachusetts 02021
(781) 352-7260

# TABLE OF CONTENTS

| Tab | Description | Page(s) |
|-----|-------------|---------|
| 1 | **Memorandum & Order (of the United States District Court)** <br> [Dist. Ct. Doc. #45] | **1 – 19** |
| 2 | **Order of Dismissal (of the United States District Court)** <br> [Dist. Ct. Doc. #46] | **20 – 21** |

# Tab 1

## Memorandum & Order

(of the United States District Court)

[Dist. Ct. Doc. #45]

**United States District Court**
**District of Massachusetts**

|  |  |  |
|---|---|---|
| ROBERT DRAPER, ARIEL WEISBERG, | ) | |
| DONNA MAJOR, ERIC NOTKIN, | ) | |
| ROBERT BOUDRIE, BRENT CARLTON, | ) | |
| CONCORD ARMORY, LLC, | ) | |
| PRECISION POINT FIREARMS, LLC, | ) | |
| COMMONWEALTH SECOND AMENDMENT, | ) | |
| INC. and SECOND AMENDMENT | ) | |
| FOUNDATION, INC., | ) | Civil Action No. |
| | ) | 14-12471-NMG |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MAURA T. HEALEY, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM & ORDER**</u>

GORTON, J.

Plaintiffs bring this action challenging the enforceability
of 940 C.M.R § 16.05(3) ("the regulation"), a state regulation
promulgated by defendant Attorney General of the Commonwealth of
Massachusetts ("the AG") that requires load indicators or
magazine disconnects on handguns sold by handgun dealers.[1]

There are three categories of plaintiffs: 1) individuals:
Robert Draper, Ariel Weisberg, Donna Major, Eric Notkin, Robert
Boudrie and Brent Carlton (collectively "consumer plaintiffs"),
2) business entities: Concord Armory, LLC and Precision Point

---

[1] This case was initially brought against former Attorney General
of Massachusetts, Martha Coakley. In January, 2015, she was
succeeded in office by Maura Healey.

Firearms, LLC (collectively "dealer plaintiffs") and 3) non-profit organizations: Commonwealth Second Amendment, Inc. and Second Amendment Foundation, Inc. (collectively "organization plaintiffs").

## I.   Background

### A.   Challenged regulation

In 1997, the Attorney General of Massachusetts promulgated 940 CMR 16.00 et seq, a series of regulations relating to the sale of handguns within the Commonwealth.  Plaintiffs bring constitutional challenges to subsection (3) of 940 C.M.R § 16.05: Sale of Handguns Without Childproofing or Safety Devices which states that

> [i]t shall be an unfair or deceptive practice for a handgun-purveyor to transfer or offer to transfer to any customer located within the Commonwealth any handgun which does not contain a load indicator or magazine safety disconnect.

940 CMR 16.05(3).  The complaint specifically challenges the portion of the regulation that offers a load indicator as one alternative way to meet the safety standard.  A load indicator is defined within the regulation as

> a device which plainly indicates that a cartridge is in the firing chamber within the handgun.

940 CMR 16.01.

AD3

**B.   Procedural history**

Between December, 2013 and May, 2014, various dealer and consumer plaintiffs sent letters to the AG inquiring whether the Generations 3 and 4 Glock pistols ("Gen3/4 Glock pistols") violate the regulation.  In April and May, 2014, the Deputy Chief of the Attorney General's Consumer Protection Division responded to those letters explaining that the handguns presently manufactured by Glock are noncompliant "because they lack an effective load indicator or magazine safety disconnect."

In June, 2014, plaintiffs filed a complaint seeking declaratory judgments that the regulation 940 CMR 16.05(3) 1) violates the rights to due process under the Fourteenth Amendment of the dealer and organization plaintiffs because it is void for vagueness and void as applied and 2) violates the Second Amendment rights of the consumer plaintiffs.  Defendant, in response, moved to dismiss the case and extensive briefing ensued.  The Brady Center to Prevent Gun Violence also submitted an amicus brief in support of the defendant.

Oral argument on defendant's motion to dismiss was held in February, 2015.  For the reasons that follow, defendant's motion will be allowed.

**II.   <u>Standing</u>**

Defendant contends that the case should be dismissed because all plaintiffs lack standing.

AD4

## A.   Legal standard

Standing is a prerequisite for Article III jurisdiction and must be determined before addressing the merits of the case. <u>See Sutliffe</u> v. <u>Epping Sch. Dist.</u>, 584 F.3d 314, 325 (1st Cir. 2009).  In order to establish standing, a plaintiff must show 1) an injury in fact, 2) a causal connection between the injury and the conduct complained of and 3) a likelihood that the injury will be redressed by a favorable decision. <u>Lujan</u> v. <u>Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).  An injury in fact is one that is "concrete and particularized [and] actual or imminent, not conjectural or hypothetical". <u>Id.</u> at 560 (internal citations and quotations omitted).

## B.   Application

### 1.   Organization plaintiffs

An organization may bring suit on behalf of itself or its members

> when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

<u>Friends of the Earth, Inc.</u> v. <u>Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 181 (2000).

Defendant contends that the two organization plaintiffs lack standing because they do not allege harm to themselves or

-4-

AD5

to their members.  The AG further notes that none of the claims
in the complaint is brought by the organizations.

Organization plaintiffs respond that they have standing to
sue in their own right despite never having attempted to
purchase a Gen3/4 Glock pistol in Massachusetts because they
have spent time and resources analyzing the regulation and that
they have incurred financial loss in sponsoring the lawsuit.
These investments do not, however, serve as a concrete injury to
the organizations.  Plaintiff Second Amendment Foundation also
alleges injury based on the fact that it raffles firearms to its
members every year, including at least one Glock pistol, and if
the winner of that pistol were in Massachusetts, then it could
not transfer the prize to the winner due to the regulation.  The
Court concludes that this injury is too speculative to qualify
as an "injury in fact".  The organization plaintiffs therefore
lack standing to sue on their own behalf.

With respect to its standing to sue on behalf of its
members, Second Amendment Foundation claims to have 8,066
"members and supporters" in Massachusetts, of which 1,847 are
current paid members.  It has not identified, however, any
specific members who have attempted to purchase Glocks in the
Commonwealth or who were dissuaded from selling Glocks because
of the regulation. See Summers v. Earth Island Inst., 555 U.S.
488, 498-99 (2009) (noting that "the affidavit provided by the

-5-

city to establish standing would be insufficient because it did not name the individuals who were harmed by the challenged [regulation]"); <u>Fletcher</u> v. <u>Haas</u>, 851 F. Supp. 2d 287, 291 (D. Mass. 2012) ("Plaintiff organizations fall short of demonstrating Article III standing. Neither SAF nor CSA has identified a *single* member who sought to obtain a license to carry a firearm in Massachusetts, let alone was denied.") (emphasis in the original).

Commonwealth Second Amendment likewise has failed to identity affected members.  In fact, it not does appear to have members.  The organization only claims to have 835 donors, many of whom reside in Massachusetts.  The organization cannot, therefore, sue on behalf of members who do not exist.

Accordingly, the organization plaintiffs will be dismissed for lack of standing.

### 2.    Dealer plaintiffs

Defendant asserts that the dealer plaintiffs do not have standing because they fail to make a sufficient allegation of injury related to their challenge of the regulation.  The AG contends that her office made clear that the handguns at issue violated the regulation and therefore the plaintiffs' injury could not be their uncertainty as to the pistols' compliance.

Plaintiffs respond that although they were informed that the Gen3/4 Glock pistols were noncompliant with the regulation,

AD7

they have standing because there is ongoing uncertainty as to which firearms contain an acceptable load indicator.

The Court agrees that the dealer plaintiffs have sufficiently alleged an injury caused by the regulation and redressable by injunctive relief.

### 3.   Consumer plaintiffs

Finally, defendant contends that consumer plaintiffs lack standing because the regulation does not implicate the Second Amendment and therefore they have failed to allege a cognizable injury.

Plaintiffs respond that defendant conflates standing to sue with stating a cognizable injury under the Second Amendment. Instead, they argue that the injury results from the regulation's vague definition of load indicator which makes it more difficult or impossible for consumers to purchase Gen3/4 Glock pistols.

The Court concludes that the consumer plaintiffs have standing because they have submitted evidence indicating that various consumer plaintiffs attempted to purchase a Gen3/4 Glock pistol but were unable or dissuaded to do so because of the regulation.

-7-

AD8

## III. Defendant's motion to dismiss for failure to state a claim

### A. Legal standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  The Court, however, need not accept legal conclusions as true. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Threadbare recitals of the legal elements, supported by mere conclusory statements, do not suffice to state a cause of action. Id.  Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. Id. at 1950.

### B. Application

#### 1. Due Process under the Fourteenth Amendment (Count I)

##### a. Facial challenge

For a regulation to be facially void, plaintiffs must prove that "no set of circumstances exists under which the [regulation] would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987).  This standard amounts to a "dauntingly high

-8-

AD9

hurdle." <u>Donovan</u> v. <u>City of Haverhill</u>, 311 F.3d 74, 77 (1st Cir. 2002).

The dealer plaintiffs contend that the regulation's definition of "load indicator" is facially vague in violation of the Fourteenth Amendment's Due Process Clause.  They aver that the regulation does not provide any guidance about what the load indicator "device" must be and how it is to "plainly indicate" that a cartridge is in the firing chamber.  They claim that the vagueness in the definition creates the potential for absurd results and arbitrary enforcement because no one can determine with any reasonable degree of certainty whether a handgun complies with the regulation.

As a preliminary matter, facial challenges are typically disfavored because they "often rest on speculation," which lead to the risk of premature interpretation of statutes and regulations. <u>Washington State Grange</u> v. <u>Washington State Republican Party</u>, 552 U.S. 442, 450 (2008).  Accordingly, facial challenges outside of the First Amendment context have been rare in this circuit.  As the First Circuit Court of Appeals has stated,

> [i]t is well-established that vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis.

-9-

AD10

Love v. Butler, 952 F.2d 10, 13 (1st Cir. 1991) (citing Maynard
v. Cartwright, 486 U.S. 356, 361 (1988)).

In any event, so long as there is some application under
which the regulation would not be vague, a facial vagueness
claim cannot stand. See Richmond Boro Gun Club, Inc. v. City of
New York, 97 F.3d 681, 684 (2d Cir. 1996) (a restriction on
firearms where the pistol grip "protrudes conspicuously" is not
facially vague under the "no circumstances" test when "it is
obvious in this case that there exist numerous conceivably valid
applications").

Here, defendant has offered several examples of firearms
where it is clear that they would fail to meet the regulation's
standards. See, e.g., Smith ex rel. Smith v. Bryco Arms, 33 P.3d
638, 641 (N.M. App. 2001) ("the J-22 handgun does not
incorporate a 'magazine-out safety,' a 'chamber load indicator,'
or a written warning on the gun itself alerting users that the
J-22 can fire even though the magazine has been removed");
Pitonyak v. State, 253 S.W.3d 834, 845 (Tex. App. 2008) ("the
pistol in question did not have a safety or a loading indicator
to show that a bullet is in the firing chamber").

Accordingly, plaintiffs' facial challenge to the regulation
will be dismissed.

-10-

### b.    Vague as-applied

A regulation is unconstitutionally vague as applied to plaintiffs if it fails to provide

> a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.

<u>Holder</u> v. <u>Humanitarian Law Project</u>, 561 U.S. 1, 18 (2010) (quoting <u>United States</u> v. <u>Williams</u>, 553 U.S. 285, 304 (2008)). Outside of the First Amendment context, the Court need only determine whether the regulation is vague as applied to the particular facts at issue, i.e. "whether [plaintiffs] in fact had fair notice that the [regulation] proscribed their [proposed] conduct." <u>United States</u> v. <u>Zhen Zhou Wu</u>, 711 F.3d 1, 15 (1st Cir.) <u>cert. denied sub nom.</u> <u>Yufeng Wei</u> v. <u>United States</u>, 134 S. Ct. 365 (2013).

The dealer plaintiffs contend that the regulation is vague as applied because they cannot determine with any reasonable certainty whether Gen3/4 Glock pistols are compliant.  Although they do not dispute that they received actual notice from the AG that the Gen3/4 Glocks fail to comport with the regulation, they claim lack of fair notice because the AG's response failed to explain why the Gen3/4 Glock pistols do not meet the regulatory standard or how she came to that conclusion.

-11-

Defendant responds that the plaintiffs have failed to allege a viable vague as-applied claim under either prong of the vague as-applied inquiry because 1) the plaintiffs had actual knowledge that the Gen3/4 Glock pistols violated the regulation, 2) the phrases in the definition of "load indicator" have meanings in common usage that meet the requirements of fair notice and 3) plaintiffs have failed to make any allegation of discriminatory enforcement.

The Court concludes that the plaintiffs' knowledge and receipt of actual notice that the Gen3/4 Glock pistols are noncompliant defeat their as-applied challenge to the regulation. See Zhen Zhou Wu, 711 F.3d at 16 (holding that the challengers of the regulation cannot claim they lacked fair notice because they "knew they were violating U.S. export regulations."); United States v. Saffo, 227 F.3d 1260, 1270 (10th Cir. 2000) (holding that a statute is not unconstitutionally vague as applied to defendant Saffo because "evidence produced at trial demonstrates that Saffo had knowledge of the illegality of her activities, and thus this is not a situation where she could not reasonably understand that her contemplated conduct is proscribed." (internal citation and quotation omitted)).

In this case, the dealer plaintiffs admit that they were aware that the regulation foreclosed the transfer or sale of the

-12-

AD13

Glock pistols at issue.  The plaintiffs' argument that the AG
never explained why the Glock load indicators fail the
regulatory standard is irrelevant to the constitutional
vagueness challenge.  The vagueness doctrine is concerned with
whether the plaintiffs, as people of ordinary intelligence, can
determine if the Gen3/4 Glock pistols comply with the regulation
and not with why or how the AG reached her conclusion.  See
Williams, 553 U.S. 285, 304 (2008).

        To the extent that the dealer plaintiffs contend that the
regulation is vague with respect to potential sales restrictions
of other handguns, their argument fails.  Civil regulations that
govern commercial conduct are held to a lower standard than
criminal statutes in the vagueness analysis.  See Papachristou v.
City of Jacksonville, 405 U.S. 156, 162 (1972) ("In the field of
regulatory statutes governing business activities, where the
acts limited are in a narrow category, greater leeway is
allowed"); Home Depot, Inc. v. Guste, 773 F.2d 616, 629 (5th
Cir. 1985) ("lax vagueness standard [is] applicable to statutes
regulating economic activity").  The regulatory language at
issue here, "a device which plainly indicates," is composed of
words in common usage and with common meaning.  The words are
straightforward both individually and in context because they
describe that the purpose of a load indicator in a handgun is to
inform a user unequivocally that the gun is loaded.  The Court

-13-

concludes that the language of the regulation provides clear guidance for and fair notice to firearms dealers of ordinary intelligence.

Plaintiffs' vague as-applied challenge to the regulation will therefore be dismissed.

### 2. Second Amendment (Count II)

The Second Amendment to the United States Constitution provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

The consumer plaintiffs contend that the regulation burdens their Second Amendment rights because the vague regulatory definition of "load indicator" prevents them from purchasing Gen3/4 Glock pistols. They acknowledge, however, that although the regulation renders two models of handguns unmerchantable in Massachusetts, it otherwise permits the purchase of a variety of handguns with appropriate safety devices.

Defendant responds that the load indicator regulation does not implicate the Second Amendment because it does not impinge on the right to bear arms in self-defense. She avers, moreover, that even if it does, the regulation withstands constitutional scrutiny. The Court agrees.

-14-

AD15

The United States Supreme Court has held that the "core" of the Second Amendment protects a citizen's right to keep and bear arms for self-defense in the home. <u>Dist. of Columbia</u> v. <u>Heller</u>, 554 U.S. 570, 630, 635 (2008); <u>United States</u> v. <u>Barton</u>, 633 F.3d 168, 170 (3d Cir. 2011) ("At the core of the Second Amendment is the right of law-abiding, responsible citizens to use arms in defense of hearth and home" (internal quotations and citation omitted)).  It does not guarantee "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." <u>Heller</u>, 554 U.S. at 626.  The <u>Heller</u> Court provided examples of "longstanding" restrictions that were "presumptively lawful" under the Second Amendment, such as 1) laws prohibiting the possession of firearms by felons and the mentally ill, 2) laws forbidding the carrying of firearms in sensitive places such as schools and 3) laws imposing conditions and qualifications on the commercial sale of arms. <u>Id.</u> at 626-27 & n. 26.

When analyzing challenges brought under the Second Amendment, a majority of the courts of appeals inquire as to whether the challenged law burdens conduct falling within the Second Amendment's protection and, if so, whether the law passes constitutional muster under an appropriate level of means-end scrutiny. <u>See</u> <u>Davis</u> v. <u>Grimes</u>, 2014 WL 1278082, at *10 (D. Mass. Mar. 26, 2014) (noting that the Third, Fourth, Fifth, Sixth,

-15-

Seventh, Ninth, Tenth, Eleventh and D.C. Circuit Courts of

Appeals have explicitly adopted the two-step inquiry).  Although

the First Circuit Court of Appeals has not expressly adopted the

two-step framework, its analysis of Second Amendment issues

> appear to fall under either the first or second step
> of the analysis performed by the other circuits.

Id.  In United States v. Rene E., for example, the court

conducted an analysis similar to that performed by other

circuits in the first step of the two-step inquiry and held that

a statute criminalizing firearm possession by juveniles did not

violate the Second Amendment because it was one of the

"longstanding prohibitions" that Heller found to be

"presumptively lawful". 583 F.3d 8, 12 (1st Cir. 2009).

The regulation at issue requiring a load indicator or

magazine safety disconnect in handguns sold or transferred in

the Commonwealth similarly does not violate the Second Amendment

for three reasons:

1.  The regulation fits comfortably among the categories of

regulation that Heller suggested would be "presumptively lawful"

because it "impos[es] conditions and qualifications on the

commercial sale of arms." Heller, 554 U.S. at 626-27;

2.  The regulation does not substantially burden the right

to bear arms in self-defense in one's home because the ban on

two kinds of Glock pistols in no way prevents citizens from

-16-

obtaining a wide array of firearms. See Kampfer v. Cuomo, 993 F. Supp. 2d 188, 196 (N.D.N.Y. 2014) (dismissing a constitutional challenge to a state statute "because the provisions at issue attempt only to decrease in number certain firearms deemed particularly dangerous by the legislature for the sake of public safety, which interests are clearly advanced by the legislation, they do not infringe the Second Amendment right to keep and bear arms"); and

3. Even if the regulation did impinge on Second Amendment rights, the Court finds that it passes constitutional muster under any standard of scrutiny. The defendant has demonstrated a strong showing of a "substantial relationship" between the restrictions imposed by the regulation and the important government objective of protecting the safety of its citizens. See United States v. Booker, 644 F.3d 12, 25 (1st Cir. 2011).

Accordingly, Count II of the plaintiffs' complaint will be dismissed.

## <u>ORDER</u>

For the foregoing reasons, the defendant's motion to dismiss (Docket No. 9) is **ALLOWED**.

**So ordered.**

                                      /s/ Nathaniel M. Gorton
                                      Nathaniel M. Gorton
                                      United States District Judge

Dated March 5, 2015

-18-

# Tab 2

## Order of Dismissal

(of the United States District Court)

[Dist. Ct. Doc. #46]

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

**Robert Draper, Ariel Weisberg,**
**Donna Major, Eric Notkin,**
**Robert Boudrie, Brent Carlton,**
**Concord Armory, LLC,**
**Precision Point Firearms, LLC,**
**Commonwealth Second Amendment,**
**Inc., and Second Amendment**
**Foundation, Inc.,**
      **Plaintiffs,**

  v.             **CIVIL ACTION 1:14-12471-NMG**

 **Maura T. Healey,**
      **Defendant.**


## ORDER OF DISMISSAL

  **Gorton  D.J.**


   **In accordance with the Court's Memorandum and Order (dkt. no. 45)  dated**

**3/5/2015, granting the defendant's Motion to Dismiss (dkt. no. 9),  it is hereby ORDERED**

**that the above-entitled action be and hereby is DISMISSED.**


  **3/5/2015**             **By the Court,**
    **Date**



                  **/s/Christopher Danieli**
                  **Deputy Clerk**