# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

## Case No. 15-1429

---

**ROBERT DRAPER;  ARIEL WEISBERG;  DONNA MAJOR;  ERIC NOTKIN;  ROBERT BOUDRIE;  BRENT CARLTON;  CONCORD ARMORY, LLC;  PRECISION POINT FIREARMS, LLC;  SECOND AMENDMENT FOUNDATION, INC.**

*Plaintiffs – Appellants*

**COMMONWEALTH SECOND AMENDMENT, INC.**

*Plaintiff*

v.

**MAURA HEALEY, in her capacity as
The Attorney General of the Commonwealth of Massachusetts**

*Defendant – Appellee*

---

ON APPEAL FROM A JUDGMENT OF
THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
Civil Action No. 1:14-CV-12471-NMG

## APPELLANTS' REPLY BRIEF
## TO BRIEFS OF APPELLEE AND AMICI

**Alexander Aron Flig**
Law Office of Alexander A. Flig
1st Circuit No. 1169830
BBO No. 669132
490 Chapman Street, Suite 201
Canton, Massachusetts 02021
(781) 352-7260

# TABLE OF CONTENTS

I. **INTRODUCTION AND SUMMARY OF ARGUMENT** .......................................................... 8

    A. Summary of the Appellants' Reply to AG's Opposition to Their As-Applied and Facial Vagueness Challenges ............................................. 8

    B. Summary of the Appellants' Reply to AG's Opposition to Their Second Amendment Claims ............................................................................ 10

II. **ARGUMENT** ............................................................................................................. 12

    A. The AG's is Wrong that this Lawsuit is Not Ripe Because APPELLANTS Have Not Alleged Discriminatory Enforcement ....................... 12

    B. The AG is Wrong that Facial Vagueness Challenges Cannot be Brought for Non-First Amendment Claims ................................................ 15

    C. The AG's Attempt to Distinguish Glock Pistols' Load Indicators from Others Highlights Her Discrimination Against Glock, the Capriciousness in Proclaiming Glock Pistols REGULATION Noncompliant and the Facial Vagueness of "Load Indicator" .............................................................................................. 18

    D. The AG Attributes to the DEALER-MANUFACTURERS Knowledge of "Facts" That Do Not Exist and Have Never Existed ............................................................................................................ 22

    E. The AG's Assertion that Persons of Ordinary Intelligence Would Understand that Glock Pistols Lack REGULATION Compliant Load Indicators is Specious .................................................... 26

    F. The AG is Wrong that the "Device Which Plainly Indicates" Compliance Standard Has a Plainly Legitimate Sweep ....................... 31

    G. The AG is Wrong that §16.05(3) is a "Purely Economic" Regulation That is Subject to a Less Strict Vagueness Test ............................ 35

H. Laws and Regulations Implicating Constitutionally Protected Conduct Trigger a Stricter Vagueness Test................................................ 36

I. The AG Threatens Prohibiting Pistols She Currently Considers REGULATION Complaint Should the Unconstitutionally Vague Load Indicator Requirement be Invalidated........................................................................................................ 39

J. The AG's Appellee Brief Improperly Introduces Fact Evidence That is NOT in the District Court Record ................................................. 42

K. The AG is in the Impossible Position of Defending the Unconstitutional Vagueness of the Regulation as Substantially Related to the Government's Important Interest in Public Safety.................................................................................................................... 44

III. CONCLUSION ................................................................................................... 46

# TABLE OF AUTHORITIES

## Cases

Abbot Laboratories v. Gardner
 387 U.S. 136 (1967) .................................................................................... 12

Auer v. Robbins
 519 U. S. 452, 462 (1997) .......................................................................... 21

Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.
 492 U.S. 257, 275 (1989) ............................................................................ 34

Castle Rock v. Gonzales
 545 U.S. 748, 761 (2005) ............................................................................ 37

City of Los Angeles v. Patel
 135 S. Ct. 2443, 2449 (2015) ..................................................................... 37

District of Columbia v. Heller
 554 U.S. 570, 627 (2008) ........................................................... 12, 35, 36, 43

Foley v. Wells Fargo Bank, NA
 772 F.3d 63, 73 (2014) ............................................................................... 32

Gun Owners' Action League, Inc. v. Swift
 284 F. 3d 198, 206 (2002) .......................................................................... 16

Hightower v. City of Boston
 693 F. 3d 61, 81 (1st Cir. 2012) ................................................................ 15

In re Colonial Mortgage Bankers Corp.
 324 F.3d 12 (1st Cir. 2003) ................................................................... 32, 41

Johnson v. U.S.
 No. 13-7120 (26 June 2015) ....................................................................... 37

Kansas v. Hendricks
 521 U.S. 346, 361 (1997) ............................................................................ 34

Kraft Power Corp. v. Merrill
   464 Mass. 145, 157 (2013) ............................................................................... 34

Pitonyak v. State
   253 S.W.3d 834 (Tex. App. 2008) ................................................................. 31, 32

Powell v. Tompkins
   783 F.3d 332 (1st Cir. 2015) ............................................................................ 44

Rice v. Hall
   564 F.3d 523, 526 (1st Cir. 2009) ................................................................... 40

Roman Cath. Bishop of Springfield v. Sprinfield
   724 F.3d 78, 89 (1st Cir. 2013) ....................................................................... 11

Sindicato Puertorriqueño v. Fortuno
   699 F.3d 1, 9 (1st Cir. 2012) ........................................................................... 11

Smith ex rel. Smith v. Bryco Arms
   33 P.3d 638 (N.M. App. 2001) ....................................................................... 31, 32

Smith v. Goguen
   415 U. S. 566, 578 (1974) ................................................................................. 24

State Farm Mut. Automobile Ins. Co. v. Campbell
   538 U.S. 408, 416 (2003) .................................................................................. 34

Sykes v. U.S.
   131 S. Ct. 2267, 2277 (2011) ........................................................................... 37

Tonry v. Sec. Experts, Inc.
   20 F.3d 967, 974 (9th Cir. 1994) ..................................................................... 41

U.S. v. Anderson
   745 F. 3d 593, 596 (1st Cir. 2014) ................................................................... 37

U.S. v. Williams
   553 U.S. 285, 306 (2008) ................................................................... 6, 20, 25, 27

URI Student Senate v. Town of Narragansett
   631 F. 3d 1 (1st Cir. 2011) ............................................................................... 36

Village of Hoffman Estates v. Flipside, Hoffman Estates
  455 U.S. 489, 494–495 (1982) .................................................................................passim

## Statutes

15 U.S.C. §272 ........................................................................................................... 26

15 U.S.C. §5001 ......................................................................................................... 26

Arkansas Code §20-27-2301 .................................................................................... 26

California Penal Code §§20150-20180 .................................................................... 26

Dallas City Code Ord. No. 26761 ............................................................................ 26

M.G.L. c. 93A ................................................................................................. 10, 33, 34

M.G.L. c. 93A, §2(c) ................................................................................................... 33

M.G.L. c.140 §123 ...................................................................................................... 16

New York City Administrative Code §10-131.g.1 ................................................. 26

New York City Administrative Code §10-301(a)(2) ................................... 27, 28, 29

## Regulations

940 C.M.R. §16.05(3) ...........................................................................................passim

940 C.M.R. §16.05(4) ................................................................................................ 27

15 C.F.R. 1150 ............................................................................................................ 26

Massachusetts Handgun Sales Regulations ............................................. 10, 20, 26

# Rules

F.R.C.P. Rule 8(d)(3)................................................................................................................ 15

F.R.C.P. Rule 10(a)................................................................................................................... 40

F.R.C.P. Rule 12(b)(6).............................................................................................................. 31

F.R.C.P. Rule 12(d)................................................................................................................... 32

F.R.C.P. Rule 56.......................................................................................................................... 8

F.R.E. Rule 201........................................................................................................................ 41

# Constitutional Provisions

First Amendment ................................................................................................... 14, 15, 16

Second Amendment............................................................................................... 15, 16, 41

# Other Authorities

1991 report by the U.S. General Accounting Office ("GAO").............................................. 41

1996 article in the Boston Globe newspaper..................................................................... 41

1997 article in the Boston Herald newspaper.................................................................... 41

1999 article in the Journal of Public Health Policy.......................................................... 41

# I.  INTRODUCTION AND SUMMARY OF ARGUMENT

## A. Summary of the Appellants' Reply to AG's Opposition to Their As-Applied and Facial Vagueness Challenges

Now having reviewed the AG's appellee brief, is this Court able to identify **what**[1]—e.g. shape, size, color, texture, location, etc.—about Gen3/4 Glock pistols' load indicators the AG proclaimed does not conform to the §16.05(3) "device which plainly indicates" compliance standard?  The AG declares that "the answer is self-evident" [Appellee Brief, p. 26] from "[e]ven a cursory review of the extractor device on [Gen3/4] Glock pistols…"  Id., 25.

But the AG proclaimed only Gen3/4 Glock pistols REGULATION noncompliant while tacitly approving the transaction of other common pistols employing the virtually identical load indicator design.  That discrimination having been exposed, rather than explain **what** about Gen3/4 Glock load indicators the AG opines renders them noncompliant, the AG defended her discrimination with the remarkable announcement "The Attorney General signals nothing about the compatibility of handguns with the regulations by 'not objecting' to them."   Id., 28.   The limitlessness of this implication is crystal clear:  *no pistol in Massachusetts is safe from a future decree that it* ***never met*** *the "load indicator" alternative design*

---

[1]  "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely ***what*** that fact is."  U.S. v. Williams, 553 U.S. 285, 306 (2008), emphasis in bolded italics.

*requirement,* ***irrespective of the design of its load indicator*** *and/or how long the AG has not objected to its sale or transfer.* Without any pretense, the AG reserves absolute power under §16.05(3) to pick and choose winners and losers, at any time, at her or any future AG's whim and fancy.

Assuming *arguendo* that *all* pistols that employ a load indicator design substantially similar to Glock are REGULATION noncompliant, **what** then, should the DEALER-MANUFACTURERS[2] do—e.g. lengthen or shorten, smoothen or roughen, brighten or dull, make thicker or thinner, change the location, shape or color of, etc.—to conform those load indicators to the §16.05(3) "device which plainly indicates" standard"? The AG assails this question as beside the point:

> "Insofar as the dealer plaintiffs propose making modifications to Glock pistols' extractor devices, [ ] the question whether different devices would satisfy Section 16.05(3) is irrelevant to this as-applied challenge." [Appellee Brief, p.26]

This is the focal point of the DEALER-MANUFACTURERS' *facial* vagueness challenge which argues that it is impossible to reasonably discern *any* objective compliance standard from the words "device which plainly indicates". But it is also impossible to *not* comply with the load indicator alternative design requirement because the slide (or its equivalent) is integral *to all pistols*. The slide is arguably the

---

[2] The APPELLANTS have referred to the two business entity appellants as "DEALERS" throughout their District Court pleading and in their Appellants' brief. Both DEALERS also hold federal Type 07 licenses ("Title 1 manufacturer of firearms and ammunition, who may also act as dealer") and both are licensed Massachusetts gunsmiths. To emphasize this point the business entity appellants are referred to throughout this Reply as the "DEALER-MANUFACTURERS".

*best* (and many would emphatically argue the *only* safe) load indicator it completely exposes the chamber to unobstructed visual and tactile inspection.

Taking into account all of the AG's briefing and oral argument, this Court remains unable to identify **what** a load indicator "device" can or should be on *any* pistol—i.e. a button, tab, notch, hole, projection, indentation, light, buzzer, vibrator, etc. Questions left unanswered by the REGULATION are: should this device "indicate" visually, tactilely, audibly, or some combination of these modalities? At what distance(s), angle(s), lighting condition(s)s, decibels, tactile sensation(s), etc. must that indication be "plain"? To *whom* must this device indicate, e.g. the user, a bystander or a law enforcement officer?

## B. Summary of the Appellants' Reply to AG's Opposition to Their Second Amendment Claims

The AG stays the course of distorting the APPELLANTS' arguments to try to veer this case from its kernel issue of whether the REGULATION's "device which plainly indicates" standard of compliance is constitutionally sufficient. She improperly introduces substantial *extrinsic evidence* found nowhere in the District Court record, effectively asking this Appellate Court to act as a follow-on trial court reviewing a Rule 56 motion for summary judgment over a never-challenged connection between the REGULATION, **divorced from its unconstitutional vagueness**, and its purported consumer safety purpose. In the Issues Presented

section of her Appellee brief the AG unambiguously declares this distortion:

> "Whether requiring a load indicator or magazine safety disconnect on certain handguns sold by Massachusetts firearms dealers violates the Second Amendment to the United States Constitution."

This Court will search in vain for any hint of such a challenge by the APPELLANTS in the District Court record or in any document submitted to this Court. That diversion by the AG is expressly **not** what this case is about—it is about the inability to *comply* with an unconstitutionally vague firearm design REGULATION and the corresponding burden on the CONSUMERS' Second Amendment rights of because of that unconstitutional *vagueness*—nothing more.

The AG contorts legal authority even in her Second Amendment arguments. She argues that §16.05(3) is presumptively lawful without addressing why that presumption is not overcome in this case which challenges its *unconstitutional vagueness*. She and both amici argue the impossibility that REGULATION's purported "*de minimis*" burden on the Second Amendment does *not* implicate the Second Amendment; an allegedly small *burden* is not a *burden* because it is small. Even then, the AG does not provide any authority or reasoning for the applicable scale against which her purported *de minimis* impact is measured in the context of Second Amendment infringement. Finally, the AG and both amici continue to unrelentingly deflect from issue of the REGULATION's burden on the CONSUMERS' Second Amendment rights *because of its unconstitutional vagueness* to the non-issue of some purported connection between the REGULATION and consumer safety.

## II.  ARGUMENT

### A. The AG's is Wrong that this Lawsuit is Not Ripe Because APPELLANTS Have Not Alleged Discriminatory Enforcement

The AG argues that the "the complaint failed to make any allegations whatsoever about chapter 93A enforcement actions brought by the Attorney General."  Appellee Brief, p. 28.  She urges "this Court [to] decline to consider whether Section 16.05(3) *might* be enforced in a discriminatory manner" [Id., 28, italicized emphasis] because the Complaint is "a pre-enforcement challenge premised on risk of discriminatory enforcement."  Id., 27.

This is wrong.  The AG's discriminatory enforcement began 12 years ago when she "notified Glock [that 'handguns presently manufactured by Glock [ ] are not in compliance with the Massachusetts Handgun Sales Regulations'] in 2004]..." and forbade their sale in Massachusetts.  JA127–JA139.  The AG supplants *handgun-purveyors* for *Gen3/4 Glock pistols* as the object of her discrimination to argue that she has not brought Chapter 93A enforcement actions against "*handgun purveyors*".  But if "handgun-purveyors" were to sell such pistols they would be subject *per se* to Chapter 93A liability and an enforcement action by the AG, equally discriminatory against *all* "handgun-purveyors".

Even accepting her incorrect characterization of this lawsuit as an unripe "pre-enforcement challenge" the AG is wrong.  Id., 27.  The "basic rationale" of the ripeness inquiry is "to prevent the courts, through avoidance of premature

adjudication, from entangling themselves in abstract disagreements." Roman Cath. Bishop of Springfield v. Sprinfield, 724 F.3d 78, 89 (1st Cir. 2013) (citations omitted). "Generally, a 'mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship.'" Sindicato Puertorriqueño v. Fortuno, 699 F.3d 1, 9 (1st Cir. 2012) (citations omitted). The AG proclaimed Gen3/4 Glock pistols REGULATION noncompliant in 2004. There is no "abstract disagreement" or the "mere possibility of future injury" here; there is an actual disagreement over Gen3/4 Glock pistols' compliance with §16.05(3) and whether the "device which plainly indicates" compliance standard is constitutionally sufficient to inform "handgun-purveyors" of ordinary intelligence whether *any* implementation of load indicator conforms to the REGULATION. The resultant injuries to the DEALER-MANUFACTURERS are present and very real:

- "... we and our customers are []confused and unable to proceed with purchases and/or transfers where we cannot confirm, or we receive conflicting information regarding the compliance of a given firearm." *Letter of Inquiry from DEALER-MANUFACTURER Concord Armory, LLC.* (JA108)

- "I have turned away substantial business because of our belief that later-generation Glocks cannot be sold or transferred into the Commonwealth ... [T]hese pistols are in demand and their salability would have a substantial impact on our business." *Letter of Inquiry from DEALER-MANUFACTURER Precision Point Firearms, LLC.* (JA110)

The AG's capricious proclamation that Gen3/4 Glock pistols may not be sold in Massachusetts is the manifestation of the REGULATION's unconstitutional vagueness, translating in turn to the CONSUMERS' inability acquire the most

popular prototypical modern American pistols.  <u>District of Columbia v. Heller</u>, 554 U.S. 570, 627 (2008).

In <u>Abbot Laboratories v. Gardner</u>, 387 U.S. 136 (1967), the government defendant argued that "mere financial expense" imposed by its regulation did not justify *pre-enforcement* judicial review.  The Supreme Court flatly disagreed:

> "… But there is no question in the present case that petitioners have sufficient standing as plaintiffs: the *regulation is directed at them in particular*;  it requires them to make significant *changes in their everyday business practices*;  if they fail to observe the Commissioner's rule they are quite clearly *exposed to the imposition of strong sanctions*."  <u>Id.</u>, 153-154 (internal cites omitted) (italicized emphasis).

Identically here, the REGULATION is "directed at [the DEALER-MANUFACTURERS] in particular".  It requires them to *speculate* whether *any* pistol model complies with the "load indicator" alternative design requirement, besides being perplexed ***what*** about Gen3/4 Glock pistols' load indicators the AG proclaimed noncompliant.  And "they are quite clearly exposed to the imposition of strong sanctions" *per se* if the AG disagrees with *their* reasoned conclusion that Gen3/4 Glock pistols (or *any* pistols) comply with §16.05(3).

The AG's argument that "the dealer plaintiffs failed to allege … discriminatory enforcement against Glock pistols" [Appellee Brief, p. 16] is initially strange considering the Complaint's unambiguous language:

> ¶69.3  "[T]he load indicator 'device' employed on all Glock handguns is ***virtually identical to other such devices*** on various handguns to which the defendant ATTORNEY GENERAL has ***not*** objected as

complying with the "load indicator" alternative design requirement." Complaint, first cause of action [JA40–JA42], original emphasis.

But the AG's argument is not strange considering her alarming announcement that

> "to the extent *any* handguns have load indicator devices that are *similar to the extractor indicator on Glock pistols*, those handguns **may** also be unmerchantable in Massachusetts." Appellee Brief, p. 29, italicized and bolded italicized emphasis.

Thus, the AG announces that her enforcement against Glock is not *discriminatory* because after nearly 18 years of not having done so she *may yet* enforce the REGULATION against pistols employing a similar load indicator design. Even that is too limiting, though. "The Attorney General signals nothing about the compatibility of [*any*] handguns with the regulations by 'not objecting' to them." Id., 28.

The APPELLANTS' Complaint and all subsequent court submissions abundantly articulate the *present* threat of an enforcement action against *all* "handgun-purveyors" by the AG's discriminatory treatment of Gen3/4 Glock pistols. That, in turn, deprives the CONSUMERS from acquiring the most popular prototypical modern American pistols.

## B. The AG is Wrong that Facial Vagueness Challenges Cannot be Brought for Non-First Amendment Claims

Like her inconsistent allegations whether Gen3/4 Glock pistols *completely* lack load indicators or lack *effective* load indicators (*infra*, Section C.), the AG's argument

of what she alleges *cannot* be the subject of a vagueness challenge is a game of Whac-a-Mole.  An entire subsection of the AG's Appellee brief is entitled

> "The Dealer Plaintiffs Cannot Challenge Section 16.05(3) as *Void for Vagueness* Because Such Claims May *Only* Be Asserted When a Regulation Threatens First Amendment Freedoms."  P. 30, italicized emphasis.

The AG mentions neither *facial* nor *as-applied* claims, implying that vagueness claims do not exist outside the First Amendment.  She again argues "because Section 16.05(3) does not threaten First Amendment freedoms, the dealer plaintiffs may not advance a claim that it is void for vagueness."  Id., 29.  The AG makes this argument at pp. 31–32 of her Appellee brief as well.  Quite clearly the AG asserts that vagueness challenges are strictly confined to First Amendment claims.

But the AG's arguments in the same sections and elsewhere are contradictory.  For example, she alleges that "[b]ecause the dealer plaintiffs' vagueness claim has no bearing on First Amendment freedoms, it may only be 'judged on an *as-applied basis*,' and therefore fails as a matter of law to the extent it launches a *facial attack* on Section 16.05(3).'"  Appellee brief, p. 32, italicized emphasis.  At p. 13 of her brief the AG alleges "When ... the challenged enactment does not burden First Amendment rights, plaintiffs can only challenge that enactment *as applied*;  they *cannot assert a facial claim premised on vagueness*."  She makes this argument at p. 31 of her brief as well.

It is unclear what the AG alleges:  is it that vagueness challenges are unavailable for non-First Amendment claims or that *facial* vagueness challenges are unavailable for non-First Amendment claims?  These inconsistencies in the AG's arguments are not F.R.C.P. Rule 8(d)(3) inconsistent alternative theories of recovery;  they are selectively culled inconsistent reports of *existing law*.

Whichever of these contradictory allegations the AG means, even if both, she is wrong.  Reestablishing context for the same authorities the AG *selectively quoted* puts to rest the issue of vagueness challenges outside the First Amendment:

> "In a *facial challenge to the overbreadth **and** vagueness of a law*, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.  If it does not, then the *overbreadth* challenge must fail."  Village of Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 494–495 (1982), italicized emphasis, internal footnote reference omitted.

This Court observed that "overbreadth doctrine is a *second* type of facial challenge, under which a law may be invalidated under the *First Amendment* as overbroad if a substantial number of its applications are unconstitutional…"  Hightower v. City of Boston, 693 F. 3d 61, 81 (1st Cir. 2012), italicized emphasis.  When overbreadth doctrine is inapplicable (as this Court stated in Hightower regarding Second Amendment claims),

> "[t]he court should then examine the *facial vagueness challenge* and, assuming the enactment implicates no *constitutionally protected conduct*, should uphold the challenge only if the enactment is impermissibly vague in all of its applications."  Hoffman Estates, 455 U.S. at 494–495, italicized emphasis, internal footnote reference omitted.

Clearly the AG conflates *vagueness* challenges available in claims regarding the Second Amendment, with *overbreadth* challenges which are confined to the First Amendment. APPELLANTS' *vagueness* claims are valid bases to challenge the constitutionality of the REGULATIONS' load indicator compliance "standard".

The AG's unsupported declaration—in a section heading in her Appellee brief no less—that the DEALER-MANUFACTURERS' void for vagueness claim is impossible "because such claims may *only* be asserted when a regulation threatens First Amendment freedoms" contradicts here own knowledge. In 2002 the AG defended a case challenging another section of her REGULATION[3] in which this Court held: "[T]hreats of enforcement of a *vague* statute *can* support a *facial* challenge to a statute when certain conditions are met." Gun Owners' Action League, Inc. v. Swift, 284 F. 3d 198, 206 (2002).

## C. The AG's Attempt to Distinguish Glock Pistols' Load Indicators from Others Highlights Her Discrimination Against Glock, the Capriciousness in Proclaiming Glock Pistols REGULATION Noncompliant and the Facial Vagueness of "Load Indicator"

The AG's allegations regarding ***what***, in her opinion, renders Gen3/4 Glock pistols REGULATION noncompliant is an ever-moving target. In some places she

---

[3]     The text of the REGULATION and M.G.L. c.140 §123 (the "STATUTE") are nearly verbatim identical, except for a few provisions in the REGULATION that are not contained in the STATUTE.  JA27–JA29.  The load indicator alternative design requirement of §16.05(3) is *not* contained in the STATUTE.

argues that "Glock pistols lack an *effective* load indicator" [Appellee brief, p. 9, 10, 13, 17, 18, 19, 21 and 46 (italicized emphasis)] while in other places she argues that "Glock pistols lack a load indicator."  Id., 13, 16, 17. 21.  It is unclear what the AG asserts--do Gen3/4 Glock pistols lack effective load indicators or do they lack load indicators entirely?

The emptiness of the AG's argument that §16.05(3) is not vague, facially *or* as-applied to Glock pistols, is only accentuated by her attempt *in and of itself* to distinguish Glocks from other pistols employing the virtually identical extractor-based load indicator design.  The AG wrote in her *motion to dismiss*, (JA194):

> "[Beside the difference in color and contrast between Gen3/4 Glock pistols' and other pistols' {extractor-based} load indicators], [t]he extent of protrusion, the shape, the size, and the exact placement of the load indicator device also appear from the exhibits to differ between Glocks [Exhibits 42, 43 (JA174-b, JA174-F)] and those purportedly 'virtually identical' firearms [Exhibits 39–41, JA167, JA170, JA174]."

The AG concludes "[t]he dealers therefore do not make a viable allegation that the regulation 'is so standardless that it authorizes or encourages seriously discriminatory enforcement.'"  Id.  Missing from the AG's conclusion and *all* of her pleadings is the *standard* with which those *other pistols'* load indicators comply.

Implicit in the AG's reasoning is the purported *difference* between the Glock load indicator design and the virtually identical load indicator designs on other pistols is the **what** that makes Glock load indicators allegedly noncompliant.  After all, Glocks' load indicators "differ[ ] in color and contrast [from] other pistols'

{similar extractor-based} load indicators…" ***What*** from that comparison establishes a standard from which Glocks ***deviate***? The AG's pleadings and oral argument before the District Court are silent on this alleged *standard* from which Glocks ***deviate***, as is the AG's appellee brief in this Court.

Further, the AG's attempt to distinguish Glocks' load indicator design from that virtually identical design used on other pistols compels the deduction that those *other pistols'* load indicator designs are REGULATION compliant. Not so fast!

> "[T]o the extent any handguns have load indicator devices that are *similar to the extractor indicator on Glock pistols*, those handguns may also be unmerchantable in Massachusetts." Appellee brief, p. 29, italicized emphasis.

Curiously, in her *appellee brief* the AG omitted *any* comparison between Gen3/4 Glock pistols' extractor-based load indicators and that same load indicator design on other pistols (JA167, JA170, JA174). Instead, the AG refers to exhibits of completely *different* load indicator designs "that use, for example, colored warnings, textual warnings, and pins that protrude conspicuously." Appellee brief, p. 26 (JA146-147, 151, and 162-163). Even having made that distinction between *non-comparable* load indicator designs, "[t]he Attorney General signals nothing about the compatibility of handguns with the regulations by 'not objecting' to them." Id., 28. To be clear:

- In her *motion to dismiss* the AG identified the alleged *differences* between Glock pistols' and other pistols' virtually identical ***extractor-based*** load indicator

design as the **what** that allegedly renders Glocks' load indicators REGULATION noncompliant.

- o But the AG declared in her Appellee brief "[T]o the extent any handguns have load indicator devices that are *similar to the extractor indicator on Glock pistols*, those handguns may also be unmerchantable in Massachusetts." Id., 29.

- In her *appellee brief* the AG compared Glock pistols' extractor-based load indicators with **non-extractor-based** load indicators of other pistols.

- o Yet despite the REGLATION being in place nearly 18 years "[t]he Attorney General signals nothing about the compatibility of handguns with the regulations by 'not objecting' to them." Id., 28.

It is impossible to ascertain **what**, if anything, complies. It is impossible for *any* "handgun-purveyor" of ordinary intelligence to *ever* have *any* degree of confidence that *any* pistol listed on the Firearms Bureaus' Approved Firearms Roster (JA55–JA70), and which pistol he reasonably believes complies with the "device which plainly indicates" compliance standard, will *not* expose him to a Chapter 93A enforcement action by the AG.

The standardless-ness of the load indicator definition is patent. It is **vague as applied** to Glock pistols because even the **what** in the alleged *difference* between Glock load indicators and similar extractor-based load indicators does not inform— provide any reference to—the standard *from which* Glocks' design *deviates*. Moreover, "those [other] handguns may also be unmerchantable in Massachusetts." The definition of load indicator is **facially vague** because despite being in place for

nearly 18 years "[t]he Attorney General signals nothing about the compatibility of handguns with the regulations by 'not objecting' to them."

The definition of load indicator is so vague and "so standardless that it authorizes or encourages seriously discriminatory enforcement" [United States v. Williams, 553 U.S. 285, 304 (2008)] as is clear in this case by the AG's summary prohibition of transacting Gen3/4 Glock pistols in Massachusetts.

## D. The AG Attributes to the DEALER-MANUFACTURERS Knowledge of "Facts" That Do Not Exist and Have Never Existed

Citing *out-of-context* text from the DEALER-MANUFACTURERS' inquiry letters, the AG asserts that "the dealer plaintiffs freely admit that they knew Section 16.05(3) prohibited the sale of [Gen3/4] Glock pistols." Appellee Brief, p. 17. She states that the DEALER-MANUFACTURERS gained that knowledge from her

> "response to those letters [in which she] confirmed that 'handguns presently manufactured by Glock, Inc. are not in compliance with the Massachusetts Handgun Sales Regulations, because they lack an effective load indicator or magazine safety disconnect.'" Id., 18.

The AG alleges that her response letters to the DEALER-MANUFACTURERS "eliminated any confusion they might have had about the applicability of Section 16.05(3) to the sale of those handguns" [Id., 19], concluding that the DEALER-MANUFACTURERS knew that *§16.05(3)* prohibits the sale of Gen3/4 Glock pistols and that that knowledge defeats their vagueness claim as a matter of law.

There is a gaping hole in the middle of this argument and in the *entire record* in this case:  the *never-established nonexistent "**fact**"* that Gen3/4 Glock pistols' load indicators *are* not REGULATION compliant!  What exists is the AG's *assertion* that her summary, arbitrary and evidence-less *proclamation* that Glock pistols are REGULATION noncompliant *is correct*—and immutable.  Indeed, the AG argues that

> "[t]he dealer plaintiffs protest that their actual knowledge [of the *nonexistent "**fact**"* that Gen3/4 Glock pistols' load indicators are not REGULATION compliant] cannot defeat their vagueness claim because the AGO cannot simply inform them that Glock pistols are noncompliant with Section 16.05(3)."  Appellee brief, p.19.

To this the AG retorts "But of course [she] can."  Id.  The AG is wrong.

First, what the AG alleges the DEALER-MANUFACTURERS argued is expressly *not* what they argued!  This is a straw man buildup that the APPELLANTS' Opposition to the AG's Motion to Dismiss makes clear.  JA214.  The DEALER-MANUFACTURERS argued that the AG informed them of her *proclamation* that that Gen3/4 Glock pistols are noncompliant—not that they *are* objectively verifiably noncompliant.  The AG asks this Court adopt that an agency's proclamation that "does not reflect the agency's fair and considered judgment on the matter in question" and that amounts to nothing more than a "'post hoc rationalizatio[n]' advanced [ ] to defend past agency action against attack,"[4] is enough to defeat a challenge to the *correctness of that proclamation* as long as the agency makes its proclamation known.  In other words, the AG asserts that once she announces her

---

[4]     Auer v. Robbins, 519 U. S. 452, 462 (1997).

proclamations, they are *correct* (not just presumptively correct), are the *law* and are unchallengeable: if she said so it must be true.

This is not hyperbole. Without reference to any authority, rule of law, legal doctrine or even logic, the AG proclaims:

> "Once the law enforcement agency has informed the regulated entity that its proposed conduct is proscribed by ***statute or regulation***, that entity has ***all the knowledge it needs*** to conform its conduct to the ***law***." Appellee brief, p. 20, emphasis in bolded italics.

But what if the "law enforcement agency" *misinformed* "the regulated entity that it's proposed conduct is proscribed by *statute or regulation*", e.g. made a mistake in informing the regulated entity about what is independently verifiable *in the statute or regulation* or what the regulated entity can determine for itself from applying a constitutionally sound compliance standard to its conduct?

The AG insists that that is beside the point. Her pronouncements are *correct* even if they fly in the face of reality *and* are unchallengeable to boot. Comparing Gen3/4 Glock pistols' load indicators against the "device which plainly indicates" compliance standard and the virtually identical load indicator design used on other tacitly approved pistols in Massachusetts, the DEALER-MANUFACTURERS reasonably believe that Gen3/4 Glock pistols' load indicators are REGULATION compliant. As "handgun-purveyors of ordinary intelligence they cannot understand ***what*** about Gen3/4 Glock pistols' load indicators would render them not compliant with the "device which plainly indicates" standard. But according to the AG, her

*application* of the uninterpretted compliance standard to Gen3/4 Glock pistols is correct and unchallengeable because

> "[o]nce [the AG] informed the [DEALER MANUFACTURERS] that [their] proposed [transaction of Gen3/4 Glock pistols] is proscribed by ... [the] *regulation*, [the DEALER-MANUFACTURERS] ha[d] **all the knowledge [they] need[ed]** to conform [their] conduct to the [*regulation*]." Appellee brief, p. 20, emphasis in bolded italics.

No room exists for disagreement about what is and is not compliant no matter how compelling the situation because, as the AG so publicly announces, **she _is_ the law**!

The AG clarified nothing in her letters to the DEALER-MANUFACTURERS other than that *she*—not an independently verifiable measure against an *objective compliance standard*—is the final arbiter of compliance. It is no wonder then that AG's letters are devoid of any *facts* regarding **what** (i.e. shape, size, location, color, etc.) about Gen3/4 Glock pistols' load indicators she determined is "not effective". It is no wonder why after hundreds of pages of briefing no one knows **what** is required to comply with the REGULATION. The AG will not even reveal that **what** to this Court, "for good and practical reasons". Appellee brief, p. 29. So much for "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." Hoffman, 455 U.S. at 498.

Finally, the AG declares that

> "[w]hether the dealer plaintiffs could bring a different claim [] challenging the merits of the AGO's determination as inconsistent with the terms of the regulation [] was not for the District Court to address as part of a vagueness challenge. Appellee brief, p. p.21.

That turns the DEALER-MANUFACTURERS' claim on its head: they could not and cannot bring any such claim because the REGULATION *itself* is fatally vague—it "simply has *no* core" [Smith v. Goguen, 415 U. S. 566, 578 (1974), original emphasis] from which to determine whether *any* load indicator implementation complies with the REGULATION. In other words, no one—including the AG herself—can determine whether *any* load indicator design complies with the REGULATION because (1) there is no standard of compliance; (2) Gen3/4 Glock pistols' load indicators are virtually identical to those of other pistols which the AG has implicitly approved but the AG nevertheless rejects Glocks; (3) *all* pistols have load indicators inherently built into their very design as slides or slide equivalents; (4) the AG may yet proclaim pistols with Glock-style extractor-based load indicators "unmerchantable" though she currently tacitly approves them (Appellee Brief, p. 29), and (5) the AG "signals nothing about the compatibility of [*any*] handguns with the regulations by 'not objecting' to them." Id., 28.

If there is still any question why "Glock pistol's extractor does not qualify as a load indicator … the answer is self-evident." Appellee brief, p. 26.


### E. The AG's Assertion that Persons of Ordinary Intelligence Would Understand that Glock Pistols Lack REGULATION Compliant Load Indicators is Specious

The AG argues that "courts are mindful that 'meticulous specificity' and 'mathematical certainty' are not required of regulations" [Appellee Brief, p. 21],

adding that "statutory definitions 'increase[] the clarity of the statute's terms.'"  Id.

But that is not the situation here.  The definition of "load indicator" is *itself* the

problem;  the words "device which plainly indicates" could not be further from

"meticulous specificity" or "mathematical certainty".  On the contrary, they evoke a

"wholly subjective judgment[] without statutory definition, narrowing context, or

settled legal meanings."  U.S. v. Williams, 533 U.S. 285, 306 (2008).

The AG devoted much space in her District Court submissions and in her

appellee brief proving that the individual words "device which plainly indicates" are

common throughout Massachusetts and Federal law.  She spent not a single word

explaining how they apply *in practice* to their object, semi-automatic pistols.  The

AG's submissions are conspicuously silent regarding

> "... any statutory or regulatory definitions of the words 'device',
> 'plainly' or 'indicate' as no such definitions exist anywhere in the
> REGULATION or its enabling statute, Chapter 93A...  The Court will
> search far and wide in the Massachusetts General Laws and in the Code
> of Massachusetts Regulation for any limiting construction for the[se]
> words ... as they are used alone or in any combination in the
> 'narrowing context' of firearms in general, semi-automatic firearms
> more particularly, and semi-automatic handguns specifically.  Nor will
> this Court find any regulatory or statutory definitions for these words
> used alone or in any combination."  Plaintiffs' Opposition to the AG's
> Motion to Dismiss (JA222-JA223).

The AG asserts that "[t]he *application* of the load indicator definition is

further clarified by [its public health and safety] purpose".  Appellee brief, p. 24,

italicized emphasis.  Missing from the AG's brief, however, is *how* the knowledge of

its public health and safety purpose—beyond its elemental purpose of indicating

that "a cartridge is the firing chamber within the handgun"—transmutes into real-world shapes, sizes, colors, angles, sounds, etc.

The AG's response letters to the APPELLANTS declared that Gen3/4 Glock pistols "lack an *effective* load indicator".  JA125–JA139, italicized emphasis. Nowhere in any of her District Court submissions, nor at oral argument, did the AG explain what she meant by "effective", which appears to be the operative disqualifier of Gen3/4 Glock pistols' load indicators.  The APPELLANTS argued this point vigorously in their Opposition to the AG's Motion to Dismiss.  JA224–JA227.

The AG appears to have cured that omission in her appellee brief:

> "In order to *effectively* deter accidental *handgun* discharges, a load indicator must *in fact* alert the handgun *user* that a cartridge is in the chamber."[5]  Appellee brief, p. 24–25, italicized emphasis.

Aside from having greatly increased the scope of the REGULATION to *handguns* (of which revolvers are an exempt subset per §16.05(4)), it is obviously *impossible* to prove or disprove the "*fact*" of having alerted someone *in the future*—the AG effectively requires that load indicators *guarantee* the future result of *having* alerted.  Explaining how this is to be accomplished the AG repeats that

---

[5]     Nowhere in 940 CMR §16, *et seq.* is the *user* identified as the intended audience of the load indicator.  JA286.  Indeed, a multitude of federal, state and local laws and regulations require bright distinctive markings on toy, look-alike and imitation firearms to prevent crime and police shootings in which toys are mistaken for real firearms.  *See* for example 15 U.S.C. §272;  15 U.S.C. §5001;  15 C.F.R. 1150;  California Penal Code §§20150-20180;  Dallas City Code Ord. No. 26761;  New York City Administrative Code §10-131.g.1;  Arkansas Code §20-27-2301, etc.  Is it unreasonable to expect that someone other than the user is the intended audience of the load indicator in light of the foregoing?  JA286.

"[A load indicator] must, therefore 'plainly' alert the user to the presence of the cartridge; a device that does not make obvious to the user when a handgun is loaded does not comply with Section 16.05(3)". Appellee brief, p. 25.

To summarize, the AG explains that the **what** [Williams, *supra*, at 306] that complies with the challenged words "device which plainly indicates" is a "device which plainly indicates" *and* guarantees that it will "alert the handgun user". Q.E.D.

The AG argues that the words "'plainly indicates' [] are similar to the phrase 'protrudes conspicuously,' which was [] upheld against a vagueness challenge." Appellee brief, p. 24. Read in context, it is understood why the AG omitted the text surrounding the words "protrudes conspicuously" from the referenced New York City Administrative Code §10-301(a)(2) (hereafter "NYCAC"):

"==[P]istol grip that== protrudes conspicuously ==**beneath the action of the weapon**==".

Among the "narrowing context[s]" [Williams, *supra*, at 306] for the challenged words "protrudes conspicuously" is that they modify "pistol grip". The AG explains that in the narrowing context of load indicator the challenged words "plainly indicates" modify the word "device" which is

"... 'a piece of equipment or a mechanism designed to serve a special purpose or perform a special function' ... [or a] 'a contrivance or an invention serving a particular purpose'". Appellee brief, p. 22.

The word "protrudes" in the challenged NYCAC can only mean "projects", "sticks out" or something similar; it cannot mean "indents", "wraps around" or "lies

flat against".  In our case the AG explains that in the narrowing context of load indicator, the word "indicates" means

> "... '[t]o show the way to or the direction of;  point out[;]  To serve as a sign, symptom, or token of; signify' ... 'to point out or point to with more or less exactness[;]  to be a sign, symptom, or index of'." Appellee brief, p. 22.

Though the word "conspicuously" in the challenged NYCAC can mean many things it is difficult to imagine what it *cannot* mean in the narrowing context of a pistol grip that "protrudes".  In this context "conspicuously" cannot refer to a color or sound no matter how bright or loud because a pistol grip cannot protrude whitely, redly, melodically or shrilly.  "Conspicuously" is likewise contextually limited to a finite range of a pistol grip's physical dimensions e.g. no smaller or larger than what a human hand can grasp within a range of natural grip angles.  In our case the AG explains that in the narrowing context of load indicator the word "plainly" means "... 'evident to the mind or senses: obvious' ... or 'Free from obstruction, open;  clear: in plain view[;]  Obvious to the mind;  evident'." Appellee brief, p. 22.

Individually, the words "device", "which", "plainly" and "indicates" are clear in-and-of themselves.  In the context of load indicators which they define and where they *establish a standard of compliance* they are as clear as mud.  JA315.

Substituting some of the AG's proffered synonyms clarifying ***what*** conforms to the "device which plainly indicates" compliance standard yields clunky results

(JA223).  Are the DEALER-MANUFACTURERS (or is anyone) closer to understanding from "a contrivance free from obstruction that serves as a symptom" the ***what*** that the AG proclaimed is noncompliant about Glock load indicators?  Is *any* Massachusetts "handgun-purveyor" of ordinary intelligence closer to determining for *himself* whether *any* pistol complies with the "apparatus that in a manner that makes it evident to the mind or senses points out with more or less exactness" compliance standard?

The challenged NYCAC provides *where* the pistol grip "protrudes conspicuously":  *beneath* the *action* of the weapon.  It does not "protrude conspicuously" on top or from the side of the weapon, nor fore or aft of the action.  In our case the AG explains that

- the load indicator is/can/should be located _____.
- Its size, shape, color, sound, brightness, etc. is/can/must be _____.


## F.  The AG is Wrong that the "Device Which Plainly Indicates" Compliance Standard Has a Plainly Legitimate Sweep

The AG alleges that "plaintiffs themselves admit that multiple handguns ... come equipped with a device that *plainly indicates* a cartridge is in the firing chamber."  Id., italicized emphasis.  It is unclear how the AG came to this conclusion from the pages she cites to in the Joint Appendix (or anyplace else).  Those pages are excerpts from owners manuals of pistols on the EOPSS Approved Firearms Roster in

which those pistols' *manufacturers* refer to whatever they call "load indicators". But there is *nothing whatsoever that even hints that any of the referenced pistols' load indicators are REGULATION compliant*—neither by the APPELLANTS nor the manufacturers of those pistols *nor the AG*. On the contrary, the AG expressly declares that she "signals nothing about the compatibility of handguns with the regulations by "not objecting" to them." Id., 28.

The AG makes a curious and rather grand proclamation: "[I]t is both *obvious* and *indisputable* that some *handguns* are not equipped with a load indicator that plainly indicates that a cartridge is in the firing chamber." Id., 36, italicized emphasis. First, none of the authorities the AG cited in support this proclamation actually supports it. Second, it is certainly *not* obvious that "some handguns are not equipped with a load indicator" because revolvers (handguns) are not subject to the REGULATION and their inclusion in this statement is meaningless, whereas *all*—not some—pistols are inherently equipped with a load indicator that plainly indicates whether a cartridge is in the firing chamber—the slide (or slide equivalent).

Responding to the APPELLANTS' Appellee brief arguments that the District Court's consideration and adoption in its dismissal memorandum of the AG's proffered **fact evidence** in the form of two cases—Pitonyak v. State, 253 S.W.3d 834 (Tex. App. 2008) and Smith ex rel. Smith v. Bryco Arms, 33 P.3d 638 (N.M. App. 2001)—was *patently* improper, the AG attempts to rescue the effect of those cases by promoting them as "matters of public record [which] are fair game in

adjudicating Rule 12(b)(6) motions."  The APPELLANTS do not dispute that those cases are matters of public record and that they are "fair game in adjudicating Rule 12(b)(6) motions."  But that is not the issue here!

The issue is whether in ruling on a Rule 12(b)(6) motion to dismiss the District Court can admit and consider as **fact evidence** in *this* case **_dicta_** **(expressly not _rulings_** or items of **_judicial notice_**) from <u>Pitonyak</u> or <u>Smith</u> *that has not been tested through discovery **in this case***.  The answer is unequivocally "no", unless the District Court converts the Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment.

> "[D]espite identifying the correct standard of review for a Rule 12(b)(6) motion (and its requirement that the court be limited to considering the complaint and its attachments), the district court side-stepped the standard, *relied on a document extraneous to the pleadings*, and decided Foley's claims on the merits.  That series of events, in our estimation, equates to converting a motion to dismiss into a motion for summary judgment."  <u>Foley v. Wells Fargo Bank, NA</u>, 772 F.3d 63, 73 (2014), italicized emphasis.

Irrespective, <u>In re Colonial Mortgage Bankers Corp.</u>, 324 F.3d 12 (1st Cir. 2003) upon which the AG relies to assert that **_dicta_** from other cases is admissible as **_fact evidence_** in *this case*—without being untested by discovery in *this case*—does *not* support the AG's proposition.  In <u>Colonial Mortgage</u> this Court stated that "reference to [matters of public record] does not convert a motion to dismiss into a motion for summary judgment" [<u>Id.,</u> 19] but the matter of "public record" to which the District Court in <u>Colonial Mortgage</u> referred to in its ruling on a motion to dismiss was a

*ruling* in an *earlier litigation between the same parties* for purposes of res judicata. The AG is plain wrong.

Finally, the AG argues that because the APPELLANTS "raised no objection … to the *District Court's consideration* of <u>Pitonyak</u> and <u>Smith's</u> discussion of the lack of load indicators" they forfeited the opportunity to raise this objection on appeal. Appellee brief, p. 37, fn. 30. The AG phrases this argument to avoid focusing on her own impropriety in introducing *fact evidence* poorly disguised as legal authority for the District Court's consideration. That the District Court *actually* indulged those cases and relied on them as *fact evidence* in support of its ruling on the AG's motion to dismiss is a separate issue; the District Court should never have done so because of the F.R.C.P. Rule 12(d) axiom of not considering matters outside the complaint and its attachments and was a clear abuse of discretion. The AG's argument here is that a ruling on a motion to dismiss should stand even if the District Court premised that ruling on obviously wrong law, nonexistent "facts" and clearly wrong procedure. Extending the AG's logic would allow to let stand a District Court's ruling that Gen3/4 Glock pistols' parental rights should be terminated from Gen1/2 Glock pistols because the AG introduced authorities that some Mr. Glock was a witness in a Probate Court proceeding in which Ms. Smith was seeking guardianship over her elderly father, Mr. Pitonyak, who is suffering from Alzheimer's disease.

///

## G.  The AG is Wrong that §16.05(3) is a "Purely Economic" Regulation That is Subject to a Less Strict Vagueness Test

The AG tries to take the "edge" off the REGULATION's constitutional effrontery by citing case authority that "courts demand more clarity from regulations that impose criminal penalties than from regulations, like Section 16.05(3), that impose civil sanctions".  Appellee Brief, p. 16.  Referring to the REGULATION's load indicator alternative design requirement as "a civil safety regulation that sets consumer protection standards", the AG argues that §16.05(3) is constitutional as applied to Gen3/4 Glock pistols because it is merely an "economic regulation [which] is subject to a less strict vagueness test."  Id.

But the AG "promulgated [the REGULATION] pursuant to the [Massachusetts] Consumer Protection Act, M.G.L. c. 93A, §2(c)."  Appellee Brief, pp. 4-5.  Violation of the REGULATION is *per se* a violation of Chapter 93A, for which "violators may be subject to treble damages and attorneys' fees and costs."  Appellee Brief, pp. 4-5.

> "Because the assessment of multiple damages [permitted by Chapter 93A] is premised on a defendant's wrongful conduct, and not the amount of harm suffered by a plaintiff, the multiple damages authorized by G. L. c. 93A 'are ***essentially punitive in nature***.'"  Kraft Power Corp. v. Merrill, 464 Mass. 145, 157 (2013) (emphasis in bolded italics, citations omitted).

The *punitive* nature of Chapter 93A damages brings them closer to criminal penalties which the AG acknowledges "demand more clarity" than regulations prescribing only civil sanctions.  "[T]he two primary objectives of *criminal*

punishment [are] retribution or deterrence." <u>Kansas v. Hendricks</u>, 521 U.S. 346, 361 (1997) (italicized emphasis). "[P]unitive damages … are aimed at deterrence and retribution." <u>State Farm Mut. Automobile Ins. Co. v. Campbell</u>, 538 U.S. 408, 416 (2003). "[P]unitive damages advance the interests of punishment and deterrence, which are also among the interests advanced by the *criminal* law…" <u>Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.</u>, 492 U.S. 257, 275 (1989) (italicized emphasis).

It is clear that the *per se* Chapter 93A damages to which violators of the REGULATION are subject are far from the mild "civil safety regulation", "economic regulation" and "civil sanctions" terms the AG uses to describe them.


### H.  Laws and Regulations Implicating Constitutionally Protected Conduct Trigger a Stricter Vagueness Test

Aside from the *nature* of the penalties (criminal *vs.* civil) to which the DEALER-MANUFACTURERS (and all "handgun-purveyors") are exposed, the AG completely ignores a separate *independent* reason for increased precision in the REGULATION's terms:  its *direct impact* on the CONSUMERS' *fundamental constitutional right* under the Second Amendment to acquire firearms "in common use". <u>District of Columbia v. Heller</u>, 554 U.S. 570, 625 (2008). That in-and-of-itself requires greater specificity in the REGULATION, to avoid unnecessarily causing "citizens to steer far wider of the unlawful zone … than if the boundaries of the

forbidden areas were clearly marked." <u>Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 496, fn. 6 (1982) (internal citations omitted).

> "In a facial challenge to the [ ] vagueness of a law ... assuming the enactment implicates no *constitutionally protected conduct*, [the court] should uphold the challenge only if the enactment is impermissibly vague in all of its applications." <u>Id.</u>, 495-496 (italicized emphasis).

Implicit in this dictum is that "[i]n a facial challenge to the [ ] vagueness of a law [that *does*] implicate[] *constitutionally protected conduct*, [the court] should [*not*] uphold the challenge *only* if the enactment is impermissibly vague in *all* of its applications." More simply, the "no set of circumstances []under which the [challenged enactment] would be valid" [<u>United States v. Salerno</u>, 481 U.S. 739, 745 (1987)] is *not* the standard against which the enactment is measured *if the implicated conduct is* **constitutionally protected**.

Thus, the AG's assertion that the APPELLANTS' facial claim cannot survive the <u>Salerno</u> "no set of circumstances" standard fails for three separate reasons. First, the <u>Salerno</u> test is inapplicable if "constitutionally protected conduct" is involved. <u>Hoffman Estates</u>, *supra*, at 495–496. The CONSUMERS' Second Amendment right to acquire firearms "in common use" [<u>Heller</u>, *supra*, at 625] is constitutionally protected conduct. Second, the APPELLANTS' facial vagueness challenge to the constitutionality of the "device which plainly indicates" load indicator compliance standard survives *per se* even if the <u>Salerno</u> "no set of circumstances" test is applicable because *all semi-automatic pistols*, including the Gen 3/4 Glock pistols

that are the subject of this lawsuit, have "load indicators" inherent in their design—the slide. JA221, JA277. Phrased in <u>Salerno</u> language, "Under 'no set of circumstances' can semi-automatic pistols *not* comply with the REGULATION's load indicator requirement." Third,

> "To the extent we have consistently articulated a clear standard for facial challenges, it is not the <u>Salerno</u> formulation, which has never been the decisive factor in any decision of this Court, including <u>Salerno</u> itself…" <u>City of Chicago v. Morales</u>, 527 U.S. 41, 54, fn. 22 (1999).[6]

Even if "there will be straightforward cases" in which the proper application of a vague law is clear, the <u>Salerno</u> "requirement of vagueness in all applications" is a "tautology: If we hold a statute to be vague, it is vague in all its applications (and never mind the reality)." <u>Johnson v. US</u>, No. 13-7120 (26 June 2015).

*///*

---

[6]     Breaking with her insistence throughout her District Court pleadings that the "no set of circumstances" test for facial challenges articulated in <u>U.S. v. Salerno</u>, 481 U.S. 739 (1987) applies to the DEALER-MANUFACTURERS' facial vagueness challenge, the AG mentions <u>Salerno</u> only once in her Appellee brief, and in a footnote (p. 34). There, the AG encourage this Court to ignore the quoted dictum from <u>City of Chicago v. Morales</u>, 527 U.S. 41 (1999) because "<u>Morales</u> was only decided by a three-Justice plurality." <u>Id.</u>     Interestingly, <u>URI Student Senate v. Town of Narragansett</u>, 631 F. 3d 1 (1st Cir. 2011) which the AG cites in support of her urging to overlook the dictum in <u>Morales</u> does not support jettisoning <u>Morales</u>. Moreover, <u>Morales</u> has been cited approvingly by the Supreme Court in <u>Castle Rock v. Gonzales</u>, 545 U.S. 748, 761 (2005), <u>Sykes v. U.S.</u>, 131 S. Ct. 2267, 2277 (2011), <u>City of Los Angeles v. Patel</u>, 135 S. Ct. 2443, 2449 (2015) and by this Court in <u>U.S. v. Anderson</u>, 745 F. 3d 593, 596 (1st Cir. 2014), among others.

# I. The AG Threatens Prohibiting Pistols She Currently Considers REGULATION Complaint Should the Unconstitutionally Vague Load Indicator Requirement be Invalidated

The AG argues that the DEALER-MANUFACTURERS' have no standing in this case because if they win, they and *many, many* **others** will actually lose. Should the "Court [] invalidate the load indicator portion of Section 16.05(3)" as the DEALER-MANUFACTURES ask, "the alternative method for satisfying Section 16.05(3) … a magazine safety disconnect [] would remain." Appellee brief, p. 39. Gen3/4 Glock pistols do not have magazine safety disconnects so they "would remain noncompliant with Section 16.05(3)." Id.

The AG scoffs that "any handguns that have an *effective* load indicator, but not a magazine safety disconnect, would become noncompliant with Section 16.05(3)" if the definition/compliance standard of load indicator were to be stricken for unconstitutional vagueness. Id. Thus, the AG warns that "[t]he dealer plaintiffs' effort to narrow the range of devices that would satisfy the "load indicator" definition … *risks reducing the number of handgun models that may be sold in Massachusetts*." Appellee brief, p. 27, fn. 23, italicized emphasis. "[I]t would make more handguns unmerchantable in Massachusetts." Id., 39.

First, invalidating the definition of load indicator for unconstitutional vagueness cannot make the DEALER-MANUFACTURERS' position *worse* regarding transacting Gen3/4 Glock pistols than they are in already—they cannot currently sell these pistols because of the AG's arbitrary prohibition.

Second, the AG argues that the DEALER-MANUFACTURERS' do not have standing because their claim lacks "redressability—that is, 'a likelihood that the requested relief will address the alleged injury.'" Appellee brief, p. 40. The AG identifies that injury as the DEALER-MANUFACTURERS' "inability to sell Glock pistols." Id., 39. This is wrong. The DEALER-MANUFACTURERS' alleged injury is their inability to determine from the incurably vague words "device which plainly indicates" whether *any* pistol complies with that definition and compliance standard of load indicator. The AG's discriminatory prohibition of Gen3/4 Glock pistols is an instance of the arbitrariness made possible by that unconstitutional vagueness. Lest there be any doubt about that the unlimited arbitrariness made possible by the REGULATION's unconstitutional vagueness is confined to Gen3/4 Glock pistols "[t]he Attorney General signals nothing about the compatibility of handguns with the regulations by 'not objecting' to them." Id., 28. Invalidating the definition/compliance standard of load indicator would surely address the DEALER-PLAINTIFFS' alleged injury of

> "... confus[ion] and [i]nab[ility] to proceed with purchases and/or transfers where we cannot confirm, or we receive conflicting information regarding the compliance of a given firearm." *Letter of Inquiry from DEALER-MANUFACTURER Concord Armory, LLC.* (JA108)

Further, assuming the AG would seek to salvage the load indicator alternative of §16.05(3) to "promote firearms safety, and assure consumers that handguns sold in Massachusetts [are] merchantable" [Apellee brief, p.4] the DEALER-

MANUFACTURERS would benefit from a constitutionally sound compliance standard pursuant to which they could distinguish between REGULATION complaint and noncompliant load indicators.

Third, and far more alarming, is the AG's thinly veiled threat that unless her unconstitutionally vague regulation is retained—the one she uses to exercise sole and absolute discretion to arbitrarily pick winners and losers, e.g. Gen3/4 Glock pistols—an enormous percentage of *other* pistols currently merchantable in Massachusetts will become *irredeemably* unmerchantable, *even if the AG considers those pistols' load indicators "effective"*. For all practical purposes the AG holds pistols she *currently* approves *hostage* to the threat of unmerchantability—and the corresponding increased burden on the Second Amendment—to dissuade invalidation of an *unconstitutional* regulation! This is not an overstatement. The AG intimates concern regarding the DEALER-MANUFACTURERS "folly" of potentially greatly reducing the number of merchantable pistols in Massachusetts. However, rather than reassure that invalidation of the load indicator definition-compliance standard would spur her to salvage that design alternative with a constitutionally sound compliance standard, the AG concludes simply that "any handguns that have an *effective* load indicator, but not a magazine safety disconnect, [will] become noncompliant with Section 16.05(3)." Why is the AG defending this lawsuit then? Would her purported intent to "reduce unintentional firearms deaths and injuries, promote firearms safety and assure consumers that handguns sold in Massachusetts

[are] merchantable" [Apellee brief, p.4] not be furthered by an overall reduction of firearms available in Massachusetts?  Why not ban all but one model of handgun and limit ownership to one handgun per individual?  JA290.

## J.    The AG's Appellee Brief Improperly Introduces Fact Evidence That is NOT in the District Court Record

Rule 10(a) of the Federal Rules of Appellate Procedure specifies the "composition of the record on appeal".  That record includes "(1) the original papers and exhibits filed in the district court;  (2) the transcript of proceedings, if any;  and (3) a certified copy of the docket entries prepared by the district clerk."  Nothing more is specified.

Evidence submitted for the first time on appeal is not part of the record and is stricken.  Rice v. Hall, 564 F.3d 523, 526 (1st Cir. 2009).  "The reason is obvious:  the procedures used on appellate review are not designed to vet new evidence or allow an effective evidentiary response to it."  In re Colonial Mortgage Bankers Corp., 186 F.3d 46, 49-50 (1st Cir. 1999), *cert. denied*, 528 U.S. 1139 (2000).  "[It is] a basic tenet of appellate jurisprudence;  namely, that parties may not unilaterally supplement the record on appeal with evidence not reviewed by the court below."  Tonry v. Sec. Experts, Inc., 20 F.3d 967, 974 (9th Cir. 1994).

Yet the AG's appellee brief is riddled with countless *new* allegations of *fact* referencing a variety of *factual* sources—in other words *evidence*—that are not in

the District Court record.  Indeed, the Appellee brief section entitled *The Attorney General's Handgun Sales Regulations* under the Statement of Facts (pp. 3–8) and much of the discussion regarding the Second Amendment is almost entirely composed of *new* factual allegations.  These include numerous references to a 1991 report by the U.S. General Accounting Office ("GAO");  a 1999 article in the JOURNAL OF PUBLIC HEALTH POLICY;  a 1996 article in the JOURNAL OF THE AMERICAN MEDICAL ASSOCIATION;  a 1996 article in the BOSTON GLOBE newspaper, a 1997 article in the BOSTON HERALD newspaper, and many more.

Judicial notice is likewise of limited use in this context because Rule 201 of the Federal Rules of Evidence requires that the proffered fact be one:

> "... that is not subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

While it is undisputed that matters of public knowledge may be judicially noticed for their *existence*, that is not the purpose for which the AG brings the foregoing sources.  On the contrary, the AG cites these sources for their evidentiary value.  For that purpose, they *are* subject to reasonable dispute.

///

///

## K. The AG is in the Impossible Position of Defending the Unconstitutional Vagueness of the Regulation as Substantially Related to the Government's Important Interest in Public Safety

The AG continues to conflate the purported consumer safety *purpose* of the "load indicator" alternative design requirement with the constitutionality of its *implementation* to argue that the "load indicator" alternative design requirement is closely related to an important government purpose. The AG thereby seeks to overcome the heightened scrutiny analysis of the *vagueness* of the REGULATION by edging in the important government purpose of its purported public safety aspects *divorced from unconstitutional vagueness*. Amici do not bother to conflate these issues and concentrate entirely on the never-challenged relationship between §16.05(3) and its purported public safety purpose.[7]

But this is expressly ***not*** the APPELLANTS' contention as they have continuously averred throughout the course of this lawsuit. APPELLANTS take no position one way or another regarding any purported connection between the "load indicator" alternative design requirement and its ostensible effect on public safety. Their *only* concern here is the impact of the unconstitutionally vague *definition* of

---

[7]     Amicus Brady Center to Prevent Gun Violence submitted an amicus brief (JA252–JA272) in the District Court action to which the APPELLANTS responded (JA283–JA296). Since Brady Center's brief before this Court is largely similar to its District Court submission, and amicus Law Center to Prevent Gun Violence essentially argues the same points as the Brady Center, APPELLANTS respectfully refer this Court to their Response (JA283–JA296) to the Brady Center's amicus brief in the District Court for their response to both amici herein.

"load indicator" on the DEALER-MANUFACTURERS' sales and correspondingly the CONSUMERS' purchases of firearms in common use. The AG's attempts to veer this lawsuit away from this core issue was so pronounced in the District Court action that the APPELLANTS devoted an entire section of their Response Brief to that sole issue:  The AG Hijacks this Lawsuit to Argue Her Own Second Amendment Agenda. (JA278 – JA280).

The AG and amici argue that the allegedly "*de minimis*" impact of the [unconstitutional vagueness in] the REGULATION on the CONSUMERS' ability to acquire Gen3/4 Glock pistols does not burden the Second Amendment.  This perspective was specifically proscribed by the Supreme Court in District of Columbia v. Heller, 554 U.S. 570 (2008).  Indeed, the discrete variable Heller unambiguously excluded from the burden on constitutional rights analysis in general—and the Second Amendment in particular—is "proportion[ality]" between the offending law or regulation (and/or its enforcement) and its result or impact. Id., 629.

Less than a year ago this Court explained in Powell v. Tompkins, 783 F.3d 332 (1st Cir. 2015):

> "Broadly speaking, some courts first consider whether the challenged law imposes a burden on conduct that falls within the scope of the Second Amendment's guarantee as historically understood, and if so, courts next determine the appropriate form of judicial scrutiny to apply… " Id., 348 fn. 9 (multiple citations omitted.)

Applying the first prong of this framework to the facts of this case immediately eliminates the AG's assertion that the purported "*de minimis*" impact of the unconstitutional vagueness in the REGULATION does not violate the Second Amendment: once conduct protected by the Second Amendment is impacted, heightened scrutiny applies. The AG finds herself in the strange position defending the *unconstitutional vagueness* of the "device which plainly indicates" definitional compliance standard as "substantially related to the Government's important interest in public safety. Appellee brief, p. 48.

## III. CONCLUSION

If it is impossible to reasonably discern what does and does not comply with the REGULATION, it begets the question of what is its purpose. The AG candidly pronounced that to avoid possible sanction by her (the *current* AG) "handgun-purveyors" must obtain her blessing over *every* pistol make and model in Massachusetts because "the Commonwealth never said that the non-Glocks were okay…" Under the circumstances, the REGULATION would better have read: "Massachusetts handgun-purveyors may only sell or transfer those pistol makes and models that the AG in her sole, absolute and unchallengeable discretion permits to be sold or transferred, which permission she or any future AG may revoke for any reason at any time, without warning or explanation."

The REGULATION is blatantly facially vague, and therefore as-applied to Gen3/4 Glock pistols. APPELLANTS respectfully ask that this Court reverse the District Court's judgment of dismissal and strike the load indicator provision of §16.05(3).

Respectfully submitted,

Dated: 23 February 2016.

**ROBERT DRAPER; ARIEL WEISBERG; DONNA MAJOR; ERIC NOTKIN; ROBERT BOUDRIE; BRENT CARLTON; CONCORD ARMORY, LLC; PRECISION POINT FIREARMS, LLC, and SECOND AMENDMENT FOUNDATION, INC.**

By and through their attorney of record

**/s/ Alexander A. Flig**

Alexander A. Flig, Esq
1st Circuit No. 1169830
BBO No. 669132
490 Chapman Street, Suite 201
Canton, Massachusetts 02021-2039
Telephone:     (781) 352-7260
Facsimile:      (781) 583-5080
E-Mail:      alex@fliglaw.com

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

## Type-Volume Limitation, Typeface Requirements
## and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

| X | This brief contains 8,996 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). |
|---|---|
|   | This brief uses a monospaced typeface and contains lines 800 of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). |

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

| X | This brief has been prepared in a proportionally spaced typeface using Cambria font, size 13 (the equivalent of Times New Roman, size 14, but with better screen readability). |
|---|---|
|   | This brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style]. |

Dated:  23 February 2016

**/s/ Alexander A. Flig**
_____
Attorney for Plaintiffs – Appellants

# CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing **APPELLANTS' REPLY BRIEF TO BRIEFS OF APPELLEE AND AMICI** with the Clerk of the Court using the CM/ECF system which will send notification of this filing to the following registered participants in this matter:

| Appellee's Counsel | Amicus' Counsel<br>Brady Center to Prevent Gun Violence |
|---|---|
| **William Porter, Esq.**<br><br>**Attorney General of Massachusetts**<br>1 Ashburton Place<br>Boston, Massachusetts 02108<br>bill.porter@state.ma.us<br><br>**Julia Eleanor Kobick**<br><br>**Attorney General of Massachusetts**<br>1 International Place, 22nd Floor<br>Boston, Massachusetts 02110-0000<br>julia.kobick@state.ma.us | **Kimberly A. Mottley, Esq.**<br>**John E. Roberts, Esq.**<br>**Laura Stafford, Esq.**<br><br>**Proskauer Rose, LLP**<br>1 International Place, 22nd Floor<br>Boston, Massachusetts 02110-0000<br>kmottley@proskauer.com<br>jroberts@proskauer.com<br>lstafford@proskauer.com |
|  | **Amicus' Counsel**<br>**Law Center to Prevent Gun Violence** |
|  | **W. Daniel Deane, Esq.**<br><br>**Nixon Peabody, LLP**<br>900 Elm Street<br>Manchester, New Hampshire 03101<br>ddeane@nixonpeabody.com<br><br>**David Henry Tennant, Esq.**<br><br>**Nixon Peabody, LLP**<br>437 Madison Avenue<br>New York, NY 10022-7039<br>dtennant@nixonpeabody.com |

Dated:  23 February 2016

**Counsel for Plaintiffs - Appellants**

**/s/ Alexander A. Flig**

Alexander A. Flig, Esq
1st Circuit No. 1169830
BBO No. 669132
490 Chapman Street, Suite 201
Canton, Massachusetts 02021-2039
Telephone:    (781) 352-7260
Facsimile:     (781) 583-5080
E-Mail:      alex@fliglaw.com