# UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

Case No. 15-1429

---

**ROBERT DRAPER; ARIEL WEISBERG; DONNA MAJOR; ERIC NOTKIN; ROBERT BOUDRIE; BRENT CARLTON; CONCORD ARMORY, LLC; PRECISION POINT FIREARMS, LLC; SECOND AMENDMENT FOUNDATION, INC.**

*Plaintiffs – Appellants*

**COMMONWEALTH SECOND AMENDMENT, INC.**

*Plaintiff*

v.

**MAURA HEALEY, in her capacity as
The Attorney General of the Commonwealth of Massachusetts**

*Defendant – Appellee*

---

ON APPEAL FROM A JUDGMENT OF
THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
Civil Action No. 1:14-CV-12471-NMG

## APPELLANTS' PETITION FOR PANEL REHEARING OR REHEARING *EN BANC*

**Alexander Aron Flig**
Law Office of Alexander A. Flig
1st Circuit No. 1169830
BBO No. 669132
490 Chapman Street, Suite 201
Canton, Massachusetts 02021
(781) 352-7260

# WHY THIS PETITION FOR HEARING OR REHEARING *EN BANC* SHOULD BE GRANTED

The appellants herein, pursuant to Rules 35 and 40 of the Federal Rules of Appellate Procedure, respectfully request a hearing or rehearing of their appeal *en banc* to bring to the attention of the panel serious error in its Opinion. <span style="color:red">It is imperative to bear in mind while reviewing this petition that this lawsuit was dismissed *at the pleading stage*, *before* facts were developed, and that the District Court's 18 page dismissal memorandum contains *no findings of fact whatsoever*.</span>

Abundant good cause exists to grant this petition because (1) the panel's decision *conflicts with Supreme Court precedent*; (2) the panel *assumed facts not in the record* and based its decision thereon; (3) the panel made fundamental errors of law and procedure, including *exceeding its own jurisdiction* and (4) the proceeding *involves questions of exceptional importance with profoundly wide-ranging negative effects on fundamental Constitutional protections*. Specifically:

A. Without reference to *any* facts or *any* legal authorities, the panel found no violation of the appellants dealer-manufacturers' (hereafter "DEALERS") Fourteenth Amendment right to *procedural* due process—whilst the appellee Massachusetts Attorney General (hereafter "AG") *admitted* that **no procedure or process exists** for determining whether *any* implementation of load indicator complies with 940 C.M.R. 16.05(3).

B. The panel wrongly attributed to the DEALERS an *argumentum ad absurdum*— that they seek "in effect … a graphic plan or blueprint … [or] how-to guide…" ***All*** of the appellants' pleadings and briefs argue that due process requires

"*sufficient* clarity" to "*reasonably* ascertain" how to comply; at oral argument the DEALERS *again* **expressly repudiated** the granularity of design specificity misattributed to them by panel. Totally *ignoring* the **DEALERS'** *actual* position, the panel nevertheless ruled against a **straw man** of its own making.

C. The panel*'s* finding that "the phrase 'plainly indicates' offers just as much notice as others we have upheld against vagueness challenges" is unsupported by *any* of the authorities the panel cites and is plainly wrong. *All* of the panel's cited authorities challenged one or two allegedly vague terms which were clarified by their contexts. But besides *completely ignoring* the appellants' inclusion of the word "device" within the phrase "device which plainly indicates" (*three* consecutive vague terms), just as did the District Court, the panel made *no analysis* **whatsoever** regarding *how* the challenged words operate *in context*.

D. The panel *exceeded its jurisdiction* by making an **original** *finding of* **fact** regarding the *appearance* of Gen3/4 Glock pistols' load indicators—and from *non-evidence* at that—the District Court *did* **not** *make* **any** *findings of* **fact** *at all*. Worse, the panel's *legal conclusion* that the appellee Attorney General (hereafter "AG") was justified in rejecting Gen3/4 Glock pistols' load indicators was based on the panel's *extra-jurisdictional* finding of *fact*.

E. The panel *exceeded its jurisdiction* by **rewriting** the REGULATION's challenged definition of load indicator to *substantially* **expand its scope** from "a device which plainly indicates that *a cartridge is within the firing chamber*…" to a "readily perceptible signal that a *loaded gun is loaded*".

F. The panel's denial of associational standing to appellant Second Amendment Foundation (hereafter "SAF") through the standing of its member(s) conflicts with abundant Supreme Court precedent regarding the level of fact specificity required at the *pleading stage* and *ignores the procedural history of this case*.

G. The panel's purported confusion of "what a 'derivative' Second Amendment claim might be" ignores the appellants' extensive briefing on what is a self-evident reality: opposite every sale is a purchase and, correspondingly, opposite every *non*-sale is a *non*-purchase; the DEALERS' non-sale of firearms in common use corresponds to the consumer appellants non-purchase of firearms in common use.

In nearly every respect the panel treated this appeal as a *trial on the merits* rather than as a *review* of the District Court's dismissal. It made a finding of *fact* on *non*-evidence while denying the appellants so much as an *opportunity* to present *actual* evidence since their lawsuit was dismissed at the *pleading stage*). The panel, in effect, denied the appellants procedural due process. Due process **by this Court** compels a hearing or rehearing of their appeal *en banc* to *actually* consider the matters that *are* at issue in this appeal, rather than those issues which are *not*.

### A. The Panel's Finding of no Violation of Due Process Where *No Process of <u>ANY</u>* Kind Exists to Determine or Confirm Regulatory Compliance Defies Reason

"[The] Due Process Clause requires compliance with **fair procedures** when the government deprives an individual of certain 'liberty' or 'property' interests." 135 S.Ct. 2128, 2142 (2015)(citations omitted, emphasized). "The threshold question in any claim for denial of procedural due process is whether plaintiffs were deprived of a liberty or property interest protected by the United States Constitution." Aponte-Rosario v. Acevedo-Vilá, 617 F. 3d 1, 9 (1st Cir.2010)(citations

omitted).  The right to engage in a lawful trade or business is among the individual freedoms secured by the Constitution.  Schware v. Board of Bar Examiners, 353 U.S. 232, 238-239 (1957).  [Appellants' Brief, p. 41.]  The appellants established—and neither the District Court not the panel denied—that a constitutionally protected interest was implicated by the DEALERS' uncertainty in 940 C.M.R. 16.05(3).

"If a protected interest is found, we must then determine what ***process*** was due." Aponte-Rosario, 617 F. 3d at 9 (emphasized).  The appellants' various briefs described *in detail* their attempts to procure from the AG *how*—the *process* by which—she *proclaimed* Gen3/4 Glock pistols' load indicators regulation noncompliant *so that the DEALERS could **make** them compliant.*  Avoiding the issue altogether the AG dismissively responded that Gen3/4 Glock pistols "lack an effective load indicator" and redirected the appellants to "the manufacturer, who should be able to provide you with that information."  [Appellants' Brief, p. 8.]  The panel confronted the AG with this issue at oral argument:

- **Judge Kayatta (Transcript at 18:05)**:  And is there a procedure for finding out whether a particular proposed application is satisfactory or not?
  - **Assistant AG ("AAG") (18:13)**:  The [DEALERS] in this case took advantage of a procedure which is they wrote a letter to the Attorney General…

It is inconceivable that the panel found *as a matter of law* that a regulated party writing to the AG *on its own initiative* for *what* complies or *how* to comply with her regulation (a "procedure" ***completely missing*** in any Massachusetts law, regulation or rule) constitutes "fair" and constitutionally adequate *procedural* due process.

- **Judge Thompson (21:18)**:  So the assumption should be that if a gun is for sale then the [AG] has certified it, that it is capable of being sold here?

    - **AAG (21:29)**:  So it's *not* the Attorney General that does the certification.  The Attorney General receives certifications from ... gun manufacturers, and then she may object...[1]

If the AG "objects", what ***facts*** does the panel have about the *procedure* to cure the AG's objection warranting the panel's *conclusion of law* that no violation of the DEALERS' Fourteenth Amendment right to procedural due process occurred?

- **Judge Thompson (22:23)**:  "I'm still confused on the first procedure.  Should we assume that if a particular gun is sold here that it has passed muster by the [AG]?

    - **AAG (21:29)**:  No.  I don't think that you should make that assumption.

Surely if the panel, a distinguished group of jurists eminently versed in jurisprudence is confused by ***what is*** the AG's procedure for *proclaiming* compliance or noncompliance with 940 C.M.R. 16.05(3), then something must be awry.  It is:

   - **AAG (22:39)**:  Um … uh … part of … the certification process … um … well. There are different models of pistols that come out over time, and I, and ***I don't know if the Attorney General goes through the certification process as new models come out***.  Um, so it ***could be*** that a, a new model will come out, and the Attorney General wouldn't receive the certification from the manufacturer, and ***perhaps*** the load indicator—the device that's claimed to be a load indicator—has been changed.

---

[1]    Yet *again*, contrary to the AG's *false* assertion that there is a "certification process" for compliance with 940 C.M.R. 16.**05**(3) [transcript at 20:13 and AG's 22 March 2016 F.R.C.P. Rule 28(j) response letter] ***there is no such process anywhere in the regulation***, in Massachusetts law nor in any rules.  The certification process to which the AG *deflects* the Court's attention, 940 C.M.R. 16.**04**(3), ***does not apply to load indicators***.  A copy of 940 C.M.R. 16. *et seq.*, published on the AG's website is attached to this petition as a matter of judicial notice.

- o **AAG (21:44)**: Glock attempted to say that there's a load indicator on their Generation 3 and 4 pistols. The Attorney General disagreed and, and then because there is some disagreement on that, the Attorney General published a notice to inform all dealers that Glock did not comply with the regulation.

So exactly what ***procedure*** did the panel glean regarding *procedure* used by the AG to "disagree" with Glock that its Gen3/4 load indicators comply with the regulation? What did the panel learn regarding the ***procedure*** the AG afforded Glock to *recertify* its Gen3/4 load indicators ***before*** she published her notice "to inform all dealers that Glock did not comply with the regulation." Has the panel seen this notice?

- **Justice Souter (23:11)**: So the dealer, dealer can go ahead and take his chances and sell that gun, and, and if the Attorney General subsequently finds out about it and says this doesn't pass muster an enforcement action can be brought…

  - o **AAG (23:23)**: That's right. By not objecting to specific models the Attorney General doesn't signify that they can be sold in Massachusetts. If a model is sold, as Justice Souter says, the dealer is taking [a] chance…

Is the panel satisfied that it knows ***what is*** the AG's certification process? It is incredible that the panel concluded *as a matter of law* there was/is no violation of the DEALERS' right to due process based on this scant conflicting record and regulatory certification process confirmed by the AG as "take his chances and sell that gun". All of this should have ***definitively*** convinced the panel that there is a genuine ***dispute of material fact*** regarding the *process/procedure* employed by the AG in evaluating and certifying load indicators. But again, this case was ***dismissed at the pleading stage***, without ***any findings of fact*** and ***before*** the appellants had the ***opportunity*** to conduct discovery and ***present evidence*** to the District Court.

### B. The Panel Ruled Against a Straw Man Claim it Wrongly Attributed to the DEALERS Instead of Ruling on the DEALERS' Actual Argument

The DEALERS' Fourteenth Amendment due process claim, copied verbatim from their *Complaint* (p. 20-21 ¶68 and emphasized) is: "[T]he DEALERS cannot determine with any ***reasonable*** certainty whether Gen3 and/or Gen4 Glock pistols comply with the REGULATION." They *repeated* (several times) in their *Opposition* to the AG's Motion to Dismiss the nature of their due process claim, e.g. (at p. 13) "the DEALERS cannot [ ] determine [ ] with any ***reasonable degree*** of certainty..." In the appellants' Introduction to their Opposition at p. 1 they state, in a separate bolded and italicized paragraph, that the "single question at issue in this lawsuit [is whether the definition of load indicator] provides [ ] firearms dealers ***reasonable*** notice of what is required to comply..." At p. 3 of their *Sur-Reply* memorandum (to the AG's Reply to their Opposition to the AG's Motion to Dismiss) the appellants yet again argued (citing FCC v. Fox Television Stations, Inc., 132 S. Ct. 2307 (2012)) that "due process [ ] requires that statutes and regulations be ***sufficiently*** clear and precise so that ... [those] subject to them can ***reasonably*** ascertain what conduct is required..."

Inexplicably, however, ***the panel injected and <u>substituted</u> the DEALERS' <u>actual</u> argument*** that due process requires "sufficient cl[arity] ... [to] ... reasonably ascertain [how to comply]", with the panel's own *argumentum ad absurdum*—that the DEALERS "argue, in effect, that fair notice requires the Commonwealth to provide something approaching ... a graphic plan or blueprint ... [a] how-to guide..."

Opinion, p. 7.  None of the appellants' pleadings as much as *hint* any such claim.  The panel's opinion is even more puzzling in light of the appellants' confirmation of their ***explicit repudiation*** of that very *ad ridiculum* straw man at the oral hearing:

- **Justice Souter (9:38)**:  Are you saying in effect that the only way the Attorney General can enforce this or reach the objective of this regulation is to come up, in effect, with her own blueprint about how the gun should be designed.

    - **Appellants' Counsel (9:53)**:  ***Certainly not***, Your Honor.  What I'm saying is that there should be ***sufficient specificity*** in the REGULATION to provide manufacturers and dealers ***enough information*** to actually know what may or may not comply.

- **Justice Souter (11:43)**:  When you get to how the indication is to be done you're getting in effect into a specification of the details of the design of the pistol, and your argument seems to be that without a specification of the details of the design a requirement of "plain indication" is vague.

    - **Appellants' Counsel (12:05)**:  That's correct, Your Honor, but I think you're taking it a step too far, and that is asking for specificity.  ***We're not asking for specificity***;  we're asking for ***guidance***.

Even more troubling is that the panel's *conclusion of law* that it attributes to the DEALERS ***completely ignores*** and is not based on their *actual* argument (that "due process requires sufficient cl[arity] … [to] … reasonably ascertain [how to comply]"), but knocks down the *panel's* own straw man—"But if due process demanded any such how-to guide, swaths of the United States Code, to say nothing of state statute books, would be vulnerable."  Opinion, p. 7.  The panel's ruling based on its manifest misattribution of its own argument for that of the DEALERS is itself a deprivation of the appellants' due process and must be reviewed.

### C. The Panel Exceeded its Jurisdiction by Making an *Original* Finding of *Fact* Instead of Reviewing the District Court's Finding [of Which There are None] for Clear Error

"[A] a court of appeals 'must not … set aside' a district court's '[f]indings of fact unless they are clearly erroneous.'" Teva Pharmaceuticals USA v. Sandoz, Inc., 135 S. Ct. 831, 836-837 (2015). "[W]e have said that … appellate courts must constantly have in mind that **their function is not to decide factual issues** *de novo*." Id., (quotations marks & citations omitted, original italics, emphasis in bold). But in this case the panel did not *review* the District Court's findings of fact for clear error, nor could it since the District Court did *not* make *any* finding of fact in granting the AG's Rule 12 motion to dismiss. Nor did the panel supplant the District Court's factual findings (since it made none) by "decid[ing] factual issues *de novo*". Instead, the panel acted as a *factfinder* by making, in the first instance, the ***original*** finding that "far from being 'plain,' [the differences of Gen3/4 Glock pistols' load indicators in the 'loaded' and 'unloaded' positions] are discernable only to the careful and discriminating eye." Panel Opinion, p.6.

"[W]e are a court of review, not of first view…" Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2131 (2014)(citations omitted). "Our (Circuit Court's) role, of course, is not that of factfinder—we are not to weigh the evidence or make credibility judgments." Connell v. Bank of Boston, 924 F. 2d 1169, 1178 (1st Cir. 1991). But that is precisely what the panel did with its ***factual finding*** based on a review of *photographs* of Gen3/4 Glock pistols' load indicators. Panel Opinion, p.

6. The panel's finding that "differences of Gen3/4 Glock pistols' load indicators in the 'loaded' and 'unloaded' positions] are discernable only to the careful and discriminating eye" based on scant *documentary* evidence (excerpts from operators manuals submitted for another purpose) rather than on actual firearms is *itself* a deprivation of the appellants' right to due process; their lawsuit was dismissed at the *pleading stage* before they even had the *opportunity* to develop evidence.

### D. The Panel Exceeded its Jurisdiction by *Rewriting* and *Expanding* the Applicability of the Challenged Load Indicator Definition

The panel summarily dismissed the appellants' vagueness challenges *without actually applying* the challenged language to Gen3/4 Glock pistols—or any other pistols.[2] Instead, the panel concluded that "[T]his definition [of load indicator] provides anyone of ordinary intelligence fair notice that what is required is a readily perceptible signal that a loaded gun is loaded."

But the panels' interpretation **doubles the scope** of the regulation! Massachusetts General Laws c.269 §10 enumerates crimes perpetrated with a "loaded or unloaded" firearm and punishments therefor. Subsection §10(n) provides that "… 'loaded' shall mean that ammunition is *contained in the weapon* **or** *within a feeding device* **attached thereto**." Similarly, M.G.L. c.269 §12D provides

---

[2] Not could it have done so even if it wanted because the case was dismissed *before* evidence (e.g. Gen3/4 Glock pistols and other pistols) could be presented to the District Court. Indeed, the District Court made *no findings of fact whatsoever*.

that a "'loaded shotgun or loaded rifle' shall mean any shotgun or rifle having ammunition *in either the magazine **or** chamber* thereof…"

The original definition of load indicator requires that it indicate that a cartridge is "within the *firing chamber* of the handgun". The panel's interpretation of "device which plainly indicates" to mean a "signal that a loaded gun is loaded", however, requires that it also indicate that ammunition is contained "**within a feeding device attached thereto**." Was the panel aware that its uninformed interpretation—without reference to any law, regulation, trade or industry practice, term of art, etc.—requires that a load indicator indicate that a cartridge is "within a feeding device attached [to the handgun]" *even if there is no cartridge within the* **firing chamber** of the handgun"? This type of bizarre consequence is the result of the dismissal of a lawsuit without giving the appellants "their day in court". For this interpretation alone the panels Opinion should be reversed.

> "[O]ur constitutional mandate and institutional competence are limited [so] we restrain ourselves from 'rewrit[ing] state law to conform it to constitutional requirements' even as we strive to salvage it." <u>Ayotte v. Planned Parenthood of Northern New Eng.</u>, 546 US 320, 329 (2006) (internal citation omitted)

### E. The Panel's Purported Lack of Clarity Regarding What the CONSUMERS' "'Derivative' Second Amendment Claim Might Be" Derides the Seriousness of the Issues on Appeal

Referring to the "[CONSUMERS'] Second Amendment claim, which they stipulate is 'derivative' of the [DEALERS'] claim of a due process violation", the panel

states that "It is not clear what a 'derivative' Second Amendment claim might be". This is difficult to understand considering the *plain meaning* of the adjective "derivative" (especially in the context of the appellants' briefs), the appellants' clear explanations of exactly what they meant by a "derivative" Second Amendment claim based on the DEALERS' due process claim, and *this* Circuit's own [recent] opinions.

Ironically, while finding the words "<u>device</u> which <u>plainly</u> <u>indicates</u>" provide "anyone of ordinary intelligence fair notice" [Opinion, p. 6] of the ranges of sizes, colors, shapes, locations, textures, sounds, etc. that a "load indicator" must be—but without *actually* **applying** that standard to Gen3/4 Glock pistols or **any** other pistols—the panel found difficulty with the word "derivative". The adjective "derivative" is plainly defined by [Merriam-Webster](Merriam-Webster) dictionary as "something that comes from something else"; by the [Oxford English Dictionary](Oxford English Dictionary) as "[o]riginating from, based on, or influenced by", and the [MacMillan Dictionary](MacMillan Dictionary) as "something that has developed or been obtained from something else".

The appellants' extensive briefing on what they mean(t) in describing their Second Amendment claim as "derivative" of the DEALERS' Fourteenth Amendment due process claim could not have been any clearer: The CONSUMERS could not acquire Gen3/4 Glock pistols (firearms in common use) because the DEALERS declined to sell those pistols citing their rational fear of an AG enforcement action should she capriciously disagree with their [the DEALERS, the ones who are subject to 940 C.M.R. 16.05(3)] reasoned expert opinion that Gen3/4 Glock pistols *do*

comply with the REGULATION. [Appellants' Brief, p. 7, 18 and 66.] After all,

- **Justice Souter (23:11)**: So the dealer, dealer can go ahead and take his chances and sell that gun, and, and if the Attorney General subsequently finds out about it and says this doesn't pass muster an enforcement action can be brought…
  - **AAG (23:23)**: That's right. By not objecting to specific models the Attorney General doesn't signify that they can be sold in Massachusetts. If a model is sold, as Justice Souter says, the dealer is taking [a] chance…

Finally, the panel's confusion regarding the CONSUMERS' use of the adjective "derivative" to explain how their Second Amendment claim "is entirely derivative of, and dependent on, the DEALERS' Fourteenth Amendment claim" [Appellants' Brief, p. 14, 18, 53 and 54.] is itself confusing considering *this* Circuit's recent opinions.

> "A relative's Article 1802 claim is ***derivative*** of the principal plaintiff's claim in that it is premised on some harm to the principal plaintiff, and 'if the principal plaintiff's claim fails, so too does the relative's derivative claim.'" Pagán-Colón v. Walgreens of San Patricio, 697 F. 3d 1, 16 (1st Cir.2012). [Emphasis in bolded italics, citations omitted.]

"[S]uch a cause of action is ***wholly derivative and, thus, its viability is contingent upon*** the viability of the underlying employment discrimination claim." Cabán-Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 12-13 (1st Cir.2007). [Emphasis.]

## CONCLUSION

"In deciding whether the district court properly dismissed a claim, we ask whether the complaint 'state[s] a claim to relief that is plausible on its face,' accepting the plaintiff's factual allegations and drawing all reasonable inferences in

the plaintiff's favor." Debnam v. FedEx Home Delivery, 766 F.3d 93, 96 (1st Cir.2014)(citations omitted). "In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir.2013) (citations omitted). The complaint should not be dismissed if it contains "enough fact to raise a reasonable expectation that discovery will reveal evidence of the [allegation]" (Bell Atl. Corp. v. Twombly, 550 U.S. 544, 566 (2007) (emphasis in italics).

The panel's wholly unsupported conclusions are a perfect example of the injustice that can result from ignoring the foregoing axiomatic motion to dismiss rules. If there is anything to be gleaned from this petition, it is that the danger of dismissing a lawsuit before a plaintiff has had the opportunity to develop facts and evidence (again, assuming his complaint passes the minimum requirements specified above) can lead to manifest injustice.

The appellants respectfully ask that their appeal be reheard or hear *en banc* to correct the very serious errors committed by the panel.

///

///

///

Respectfully submitted,

Dated: 1 July 2016

**ROBERT DRAPER; ARIEL WEISBERG; DONNA MAJOR; ERIC NOTKIN; ROBERT BOUDRIE; BRENT CARLTON; CONCORD ARMORY, LLC; PRECISION POINT FIREARMS, LLC, and SECOND AMENDMENT FOUNDATION, INC.**

By and through their attorney of record

**/s/ Alexander A. Flig**

Alexander A. Flig, Esq
1st Circuit No. 1169830
BBO No. 669132
490 Chapman Street, Suite 201
Canton, Massachusetts 02021-2039
Telephone: (781) 352-7260
Facsimile: (781) 583-5080
E-Mail: alex@fliglaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing **ASSENTED-TO MOTION BY APPELLANTS TO EXTEND TIME FOR FILING BRIEF; SUPPORTING AFFIRMATION** with the Clerk of the Court using the CM/ECF system which will send notification of this filing to the following registered participants in this matter:

| Appellee's Counsel | Amicus' Counsel |
|---|---|
| **William Porter, Esq.**<br>**Attorney General of Massachusetts**<br>1 Ashburton Place<br>Boston, Massachusetts 02108<br>bill.porter@state.ma.us | **L. Scott Harshbarger, Esq.**<br>**Proskauer Rose, LLP**<br>1 International Place, 22nd Floor<br>Boston, Massachusetts 02110-0000<br>sharshbarger@proskauer.com |
| **Julia Eleanor Kobick**<br>**Attorney General of Massachusetts**<br>1 International Place, 22nd Floor<br>Boston, Massachusetts 02110-0000<br>julia.kobick@state.ma.us | **John E. Roberts, Esq.**<br>**Proskauer Rose, LLP**<br>1 International Place, 22nd Floor<br>Boston, Massachusetts 02110-0000<br>jroberts@proskauer.com |

Dated: 29 October 2015

**Counsel for Plaintiffs - Appellants**

**/s/ Alexander A. Flig**

Alexander A. Flig, Esq
1st Circuit No. 1169830
BBO No. 669132
490 Chapman Street, Suite 201
Canton, Massachusetts 02021-2039
Telephone: (781) 352-7260
Facsimile: (781) 583-5080
E-Mail: alex@fliglaw.com