# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

## Case No. 15-1429

---

**ROBERT DRAPER;  ARIEL WEISBERG;  DONNA MAJOR;  ERIC NOTKIN;
ROBERT BOUDRIE;  BRENT CARLTON;  CONCORD ARMORY, LLC;  PRECISION
POINT FIREARMS, LLC;  SECOND AMENDMENT FOUNDATION, INC.**

*Plaintiffs – Appellants*

**COMMONWEALTH SECOND AMENDMENT, INC.**

*Plaintiff*

**v.**

**MAURA HEALEY, in her capacity as
The Attorney General of the Commonwealth of Massachusetts**

*Defendant – Appellee*

---

ON APPEAL FROM A JUDGMENT OF
THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
Civil Action No. 1:14-CV-12471-NMG

## APPELLANTS' PETITION FOR
## PANEL REHEARING OR HEARING *EN BANC*

**Alexander Aron Flig**
Law Office of Alexander A. Flig
1st Circuit No. 1169830
BBO No. 669132
490 Chapman Street, Suite 201
Canton, Massachusetts 02021
(781) 352-7029

# TABLE OF AUTHORITIES

## <u>Cases</u>

<u>Aponte-Rosario v. Acevedo-Vilá</u>
   617 F. 3d 1, 9 (1st Cir.2010) ............................................................................ 3

<u>Bell Atl. Corp. v. Twombly</u>
   550 U.S. 544, 566 (2007)............................................................................... 17

<u>Cabán-Hernández v. Philip Morris USA, Inc.</u>
   486 F.3d 1, 12-13 (1st Cir.2007)................................................................... 16

<u>Connell v. Bank of Boston</u>
   924 F. 2d 1169, 1178 (1st Cir. 1991) ........................................................... 11

<u>FCC v. Fox Television Stations, Inc.</u>
   132 S. Ct. 2307 (2012)..................................................................................... 9

<u>Kerry v. Din</u>
   135 S.Ct. 2128, 2142, 576 U.S. ___, (2015) .................................................. 8

<u>Pagán-Colón v. Walgreens of San Patricio</u>
   697 F. 3d 1, 16 (1st Cir.2012)....................................................................... 16

<u>Schware v. Board of Bar Examiners</u>
   353 U.S. 232, 238-239 (1957)......................................................................... 3

<u>Teva Pharmaceuticals USA v. Sandoz, Inc.</u>
   135 S. Ct. 831, 836-837 (2015) .............................................................. 10, 11

<u>U.S. v. Williams</u>
   553 U.S. 285, 306 (2008)................................................................................. 7

<u>US v. Zhen Zhou Wu</u>
   711 F. 3d 1 (1st Cir. 2013) .............................................................................. 8

## **Statutes**

Massachusetts General Laws c.269 §10........................................................................... 12

Massachusetts General Laws c.269 §12D ........................................................................ 12

## **Rules**

F.R.C.P. Rule 28(j)......................................................................................................................5

F.R.C.P. Rule 40 ..........................................................................................................................1

F.R.C.P. Rule 35 ..........................................................................................................................1

## **Regulations**

940 C.M.R. 16. *et seq.*..............................................................................................................5

940 C.M.R. 16.04(3)..................................................................................................................5

940 C.M.R. 16.05(3)........................................................................................................1, 3, 5, 6

## WHY THIS PETITION FOR HEARING OR
## REHEARING *EN BANC* SHOULD BE GRANTED

The appellants herein, pursuant to Rules 35 and 40 of the Federal Rules of Appellate Procedure, respectfully request a panel rehearing or hearing of their appeal *en banc* to bring to the attention of the panel very serious errors in its Opinion. It is imperative to bear in mind while reviewing this petition that this lawsuit was dismissed *at the pleading stage*, before any facts *beyond those pleaded in the complaint* were developed, and accordingly, the District Court's 18-page dismissal memorandum contains no findings of fact *at all*.

Abundant good cause exists to grant this petition because (1) the panel's decision *conflicts with Supreme Court precedent*; (2) the panel *assumed facts not in the record* and based its decision thereon; (3) the panel made fundamental errors of law and procedure, including *exceeding its own jurisdiction* and (4) the proceeding *involves questions of exceptional importance with profoundly wide-ranging negative effects on fundamental Constitutional protections*. Specifically:

A. Without reference to *any* facts or *any* legal authorities, the panel found no violation of the appellants' dealer-manufacturers' (hereafter "DEALERS") right to due process—whilst the appellee Massachusetts Attorney General (hereafter "AG") *admitted* that **no procedure or process exists** for determining whether *any* implementation of load indicator complies with 940 C.M.R. 16.05(3).

B. The panel wrongly attributed to the DEALERS an *argumentum ad absurdum*— that they seek "in effect … a graphic plan or blueprint … [or] how-to guide…" But *all* of the appellants' pleadings argued that due process requires "*sufficient* clarity" to "*reasonably* ascertain" how to comply. At oral argument the

DEALERS *again expressly repudiated* the granularity of design specificity misattributed to them by panel.   *Totally ignoring* the DEALERS' *actual* argument, the panel ruled against a *straw man of its own making*.

C.  Beside *completely ignoring* the appellants' inclusion of the word "device" among the challenged words in the phrase "<u>device</u> which <u>plainly</u> <u>indicates</u>", the panel's finding that the phrase "offers just as much notice as others we have upheld against vagueness challenges" is unsupported by *any* of the panel's cited authorities and is plainly wrong.  *All* of panel's cited authorities involved one or two allegedly vague terms which were clarified by their *contexts*.  But the panel made *no analysis whatsoever* regarding how the *three* words challenged by the appellants in this case operate *in context* and, more importantly, in **practice**.

D.  Disregarding the *limits of its jurisdiction* as a court of *review* and not as a trier of fact, the panel made a *finding of fact* in the first instance (and from *non-evidence* at that) regarding the *appearance* of Gen3/4 Glock pistols' load indicators. Worse, the panel based its *legal conclusion* that the appellee Massachusetts Attorney General (hereafter "AG") was justified in rejecting Gen3/4 Glock pistols' load indicators on that very *extra-jurisdictional* finding of *fact*.

E.  The panel *exceeded its jurisdiction* by **rewriting** the REGULATION's challenged definition of load indicator to **double its scope** from indicating that "a cartridge *is within the firing chamber*..." to a indicating that a "*loaded gun is loaded*". Massachusetts law explicitly includes within its definition of "loaded" the state of a firearm when a cartridge in **not** "*within the firing chamber...*"

F.  The panel's denial of associational standing to appellant Second Amendment Foundation (hereafter "SAF") through the standing of its member(s) conflicts with abundant Supreme Court precedent regarding the level of fact specificity required at the *pleading stage* and *ignores the procedural history of this case*.

G.  The panel's confusion regarding "what a "'derivative' Second Amendment claim might be" with respect to the "[DEALERS'] claim of a due process violation" ignores the "plain" meaning of the word "derivative" and the appellants' extensive briefing on what is a self-evident reality:  opposite every sale is a purchase and, correspondingly, opposite every *non*-sale is a *non*-purchase.

Finally the panel's difficulty with "what a 'derivative' Second Amendment claim might be" conflicts with this Circuit's own decisions on this *exact* issue.

As will soon be *glaringly* obvious, due process **by this Circuit Court** compels a panel rehearing or hearing of this appeal *en banc* to consider the *actual* issues in this appeal rather than those which are *not*.

### A. The Panel's Finding of no Violation of Due Process Where *No Process of <u>ANY</u>* Kind Exists to Determine or Confirm Regulatory Compliance Defies Reason

"The threshold question in any claim for denial of procedural due process is whether plaintiffs were deprived of a liberty or property interest protected by the United States Constitution." <u>Aponte-Rosario v. Acevedo-Vilá</u>, 617 F. 3d 1, 9 (1st Cir.2010)(citations omitted). The right to engage in a lawful trade or business is among the individual freedoms secured by the Constitution. <u>Schware v. Board of Bar Examiners</u>, 353 U.S. 232, 238-239 (1957). [Appellants' Brief, p. 41.] Neither the District Court nor this panel denied that the appellants pleaded *sufficient facts* to establish that a constitutionally protected interest was implicated by the DEALERS' uncertainty regarding compliance with 940 C.M.R. 16.05(3).

"If a protected interest is found, we must then determine what ***process*** was due." <u>Aponte-Rosario</u>, 617 F. 3d at 9 (emphasized). What in the voluminous record of this case did the panel learn about the *process(es)/procedure(s)* used by the AG to determine compliance with §16.05(3)? Nothing? The uber-conspicuous ***absence***

from the record of this *judicially noticeable* proverbial stake through the heart of the DEALERS' due process claims should have immediately compelled the remand this case for trial on the merits because this is an issue of disputed *fact*.

The panel inquired about the AG's procedure for determining compliance with §16.05(3) at oral hearing:

- **Judge Kayatta (Transcript at 18:05)**:  And is there a procedure for finding out whether a particular proposed application is satisfactory or not?

  - **Assistant AG ("AAG") (18:13)**:  The [DEALERS] in this case took advantage of a procedure which is they wrote a letter to the Attorney General…

The appellants' pleadings detailed their attempts to procure from the AG *how*—the **process** *by which*—she *proclaimed* Gen3/4 Glock pistols' load indicators regulation noncompliant *so that the DEALERS could* **make** *them compliant*.  The AG responded with the non-response that Gen3/4 Glock pistols "lack an effective load indicator" and redirected the appellants to "the manufacturer, who should be able to provide you with that information."  [Appellants' Brief, p. 8.]  Nothing more.  Period.

Does the panel *really* hold that **_because of_** *the* **complete _absence_ of any process or procedure** *in any Massachusetts law, regulation or rule* a regulated party *writing* to the AG *on its own initiative* constitutes *fair* and constitutionally adequate due *process?*  It is inconceivable that the panel would find that the AG's redirection of the DEALERS to a *non-deputized*, *non-agent*, *non-regulated private* entity to determine regulatory compliance is due *process*.  What are the authorities for this?

- **<u>Judge Thompson (21:18)</u>**:  So the assumption should be that if a gun is for sale then the [AG] has certified it, that it is capable of being sold here?

  o **<u>AAG (21:29)</u>**:  So it's *not* the Attorney General that does the certification.  The Attorney General receives *certifications from … gun manufacturers*, and then she may object…[1]

The foregoing "procedure"—found *nowhere* in any law, regulation or rule, which the panel sanctioned as "***fair procedures***" (<u>Kerry v. Din</u>, *supra*)—announces a new rule to establish regulatory compliance:  *a regulated party certifies compliance*.  But it makes no sense under this rule for the AG to have the power to object because "it's ***not*** the [AG] that does the certif[ying]".  What happens if the AG *does* object?  Of what ***facts*** is the panel aware about *how* a regulated party may cure the object of the AG's objection if "it's ***not*** the [AG] that does the certif[ying]"?  The answer is here:

- **<u>Justice Souter (23:11)</u>**:  So the dealer, dealer can go ahead and take his chances and sell that gun, and, and if the Attorney General subsequently finds out about it and says this doesn't pass muster an enforcement action can be brought…

  o **<u>AAG (23:23)</u>**:  That's right.  By not objecting to specific models the Attorney General doesn't signify that they can be sold in Massachusetts.  If a model is sold, as Justice Souter says, the dealer is taking [a] chance…

To summarize, the procedure for determining compliance with §16.05(3) is:

---

[1]      Yet *again*, contrary to the AG's *false* assertion that there is a "certification process" for compliance with 940 C.M.R. 16.**<u>05</u>**(3) [transcript 20:13; AG's 22 March 2016 F.R.C.P. Rule 28(j) response letter] ***there is no such process <u>anywhere</u> in the regulation***, in Massachusetts law, nor in any rules of any agency.  The certification process to which the AG ***deflects*** the Court's attention, 940 C.M.R. 16.**<u>04</u>**(3), ***does NOT apply to load indicators***.  A copy of 940 C.M.R. 16. *et seq*., published on the AG's website is attached to this petition as a matter of judicial notice.

- a regulated party (firearms dealer) follows some *unspecified, unwritten*, *non-existent* law, regulation or rule—*all* of which are judicially noticeable but *none* of which has been identified by the AG—

- to "certify" (whatever that means, but for the sake of this discussion is assumed to mean "aver") that a specific pistol model complies with §16.05(3)—

- subject to the AG's objection, even though "it's ***not*** the [AG] that does the certif[ying]"—

- but "[b]y *not* objecting to [that] specific model [ ] the [AG] doesn't signify that [it] can be sold in Massachusetts"—

- so "as Justice Souter says, the dealer is taking the chance" by selling that gun and if the AG then *says* it is not compliant "an enforcement action can be brought"—

- and for which there is no law, regulation or rule for *re*-certification.

Does the panel *really* hold this twisted jumble of the AG's unverified "facts"

proffered as a regulatory compliance standard and procedure is due process?

- **Judge Thompson (22:23)**:  "I'm still confused on the first procedure.  Should we assume that if a particular gun is sold here that it has passed muster by the [AG]?

  o **AAG (21:29)**: *No*.  I don't think that you should make that assumption.

Surely if the *panel*, a distinguished group of jurists eminently versed in law

and procedure is confused by ***what is*** the AG's *procedure* for *proclaiming*

noncompliance with §16.05(3)—while insisting the *regulated party*, ***not*** the AG,

certifies compliance—then something must be awry.  It is:

  o **AAG (22:39)**:  Um … uh … part of … the certification process … um … well. There are different models of pistols that come out over time, and I, and *I don't know if the Attorney General goes through the certification process as new models come out*.

So again, what **facts** did the panel learn about the **how** (the *procedure* by which) the AG determines compliance with §16.05(3)? What **facts** did the panel learn about **what** the AG found objectionable about Gen3/4 Glock load indicators?

- o <u>**AAG (22:39)**</u>: <span style="color:red">**We don't make those certifications publicly available**</span>…

—even to the court? Why not? Why the secrecy? Should the AG's certifications not at least be available to those who are *subject to* the regulation!? It is incredible that such damning testimony by the AG did not immediately prompt the panel's remand of this case for trial in the District Court, at least to resolve disputed issues of **fact**.

With the AG's purported "certification" framework for §16.05(3) compliance in mind, here is *how* the AG determined that Gen3/4 Glock pistols are noncompliant:

- o <u>**AAG (21:44)**</u>: Glock attempted to say that there's a load indicator on their Generation 3 and 4 pistols. The Attorney General <span style="color:red">disagreed</span> and, and then because <span style="color:red">there is some disagreement on that</span>, the Attorney General <span style="color:red">published a notice to inform all dealers that Glock did not comply</span> with the regulation.

What **facts** does the panel know about the object of the AG's "disagreement"? "What renders a statute vague is not the *possibility* that it will *sometimes* be difficult to determine **whether** *the incriminating fact it establishes has been proved*; but rather the *indeterminacy of precisely* **what that fact is**." <u>U.S. v. Williams</u>, 553 U.S. 285, 306 (2008), emphasis in bolded italics. What **facts** does the panel have about the most basic question: **what** was examined? –*who* examined that **what**? –what *measuring instruments* and **factual** analysis were used by the examiner(s)? –*when* were the pistols examined? –*which of the* **57 (FIFTY SEVEN)** *Gen3/4 Glock pistol*

*models* on the EOPSS **_Approved Weapons Roster_** were examined? –*why* did the AG issue her "notice to inform all dealers that Glock did not comply with the regulation" if "We don't make those certifications publicly available…"

"[The] Due Process Clause requires compliance with **_fair procedures_** when the government deprives an individual of certain 'liberty' or 'property' interests." Kerry v. Din, 135 S.Ct. 2128, 2142, 576 U.S. __, (2015)(citations omitted, emphasized). It is impossible that the AG's tap dancing around *unverified* and *self-contradicting* "facts" spun out of whole cloth (this lawsuit was dismissed at the pleading stage, after all) about some unknown—*nonexistent*—certification "process" is "fair procedures". The panel should have condemned the AG's unabashed admission "the dealer is taking [a] chance … by sell[ing] that gun" as a deprivation of due process *per se*. The panel's own cited authority compels that result:

> "The 'void for vagueness doctrine' addresses at least two discrete due process concerns: 'first, … regulated parties should know *what* is required of them so they may act accordingly; second, precision and guidance are *necessary* so that those enforcing the law do not act in an arbitrary or discriminatory way.'" US v. Zhen Zhou Wu, 711 F. 3d 1 (1st Cir. 2013)(citations omitted, emphasis).

## B. The Panel Ruled Against a Straw Man Claim it Wrongly Attributed to the DEALERS Instead of Ruling on the DEALERS' *Actual* Argument

The DEALERS' Fourteenth Amendment due process claim, copied verbatim from their *Complaint* is (p. 20-21 ¶68 and emphasized): "[T]he DEALERS cannot determine with any **_reasonable_** certainty whether Gen3 and/or Gen4 Glock pistols

comply with the REGULATION."  They *repeated* (several times) in their *Opposition* to the AG's Motion to Dismiss the nature of their due process claim, e.g. (at p. 13) "the DEALERS cannot [ ] determine [ ] with any **reasonable degree** of certainty…"  In the appellants' <u>Introduction</u> to that Opposition (p. 1) they stated—in a separate bolded and italicized paragraph—that the "single question at issue in this lawsuit [is whether the definition of load indicator] provides [ ] firearms dealers **reasonable** notice of what is required to comply…"  In their *Sur-Reply* memorandum (to the AG's Reply to their Opposition to the AG's Motion to Dismiss, p. 3) the appellants *again* argued (citing <u>FCC v. Fox Television Stations, Inc.</u>, 132 S. Ct. 2307 (2012)) that "due process [ ] requires that statutes and regulations be **sufficiently** clear and precise so that … [those] subject to them can **reasonably** ascertain what conduct is required…"

Inexplicably, however, the panel **injected and <u>substituted</u> the DEALERS'** **<u>actual</u> argument** that due process requires "sufficient cl[arity] … [to] … reasonably ascertain [how to comply]", with the panel's own *argumentum ad absurdum*—that the DEALERS "argue, in effect, that fair notice requires the Commonwealth to provide something approaching … a graphic plan or blueprint … [a] how-to guide…" Opinion, p. 7.  *None* of the appellants' pleadings as much as hint any such claim.  The panel's opinion is even more puzzling in light of the appellants' confirmation of their **explicit repudiation** of that very *ad ridiculum* straw man attribution at oral hearing:

- **<u>Justice Souter (9:38)</u>**:  Are you saying … the Attorney General … [should] … come up … with her own blueprint about how the gun should be designed.

o **Appellants' Counsel (9:53)**: *Certainly not*, Your Honor. What I'm saying is that there should be *sufficient specificity* in the REGULATION to provide manufacturers and dealers *enough information* to ... comply.

- **Justice Souter (11:43)**: [Y]ou're getting ... into a specification of the details of the design ... and your argument seems to be that without a specification of the details of the design ... "plain indication" is vague.

o **Appellants' Counsel (12:05)**: That's correct, Your Honor, but I think you're taking it a step too far, and that is asking for specificity. *We're not asking for specificity*; we're asking for *guidance*.

Even more troubling is that the panel's *conclusion of law* on an argument it attributes to the DEALERS *ignores* and is *not based on* their *actual* argument (that "due process requires sufficient cl[arity] ... [to] ... reasonably ascertain [how to comply]"). Instead, the panel knocks down its *own* straw man—"But if due process demanded any such how-to guide, swaths of the United States Code, to say nothing of state statute books, would be vulnerable." Opinion, p. 7. The panel's ruling on its manifest substitution of its *own* argument for that of the DEALERS and knocking that down that *straw man* is *itself* a deprivation of the appellants' due process.

## C. The Panel Exceeded its Jurisdiction by Making an *Original* Finding of *Fact* Instead of Reviewing the District Court's Finding(s) [of Which There are None] for Clear Error

"[A] court of appeals 'must not ... set aside' a district court's '[f]indings of fact unless they are clearly erroneous.'" <u>Teva Pharmaceuticals USA v. Sandoz, Inc.</u>, 135 S. Ct. 831, 836-837 (2015). What then should a court of appeals do if a district court does *not* make any findings of fact, as in this case? "[W]e have said that ... appellate

courts must constantly have in mind that **their function is not to decide factual issues** *de novo*." Id., (quotations marks & citations omitted, original italics).

The panel did not follow this appellate axiom by the Supreme Court. It did not *review* the District Court's findings of fact for clear error, nor could it, since the District Court did *not* make *any* finding of fact in dismissing this case. Nor did the panel *supplant* the District Court's factual findings (since there were none) by "decid[ing] factual issues *de novo*". Instead, the panel *ignored its own precedent*— "Our role, of course, is not that of factfinder—we are not to weigh the evidence or make credibility judgments." Connell v. Bank of Boston, 924 F. 2d 1169, 1178 (1st Cir. 1991)—and did just that by finding *in the first instance* that "far from being 'plain,' [the differences of Gen3/4 Glock pistols' load indicators in the 'loaded' and 'unloaded' positions] are discernable only to the careful and discriminating eye." Opinion, p. 6. Worse, the panel made this *factual finding* from scant *documentary* evidence (excerpts from operators manuals submitted as exhibits for a different purpose) rather than on *actual firearms*. Would the panel not have found violation of Federal Rule of Evidence 1002 Requirement of the Original a.k.a. "Best Evidence Rule" had the District Court made the same factual finding on this "evidence"?

"When a court of appeals raises a procedural impediment to disposition on the merits, and disposes of the case on that ground, the district court's labor is discounted and the appellate court acts not as a court of review but as one of first view." Wood v. Milyard, 132 S. Ct. 1826, 1834 (2012). The panel's finding of fact in

this case is inconsistent even with Justice Souter's view of the issue. "In holding the District Court's finding to be clearly erroneous, the majority is thus ruling on a matter **in the first instance** *in derogation of this Court's proper role as a court of* ***review***." Lackawanna County District Attorney v. Coss, 532 U.S. 394, 409-410 (2001)(Souter, D.H., dissenting). In Justice Souter's words, "[t]he only responsible course for the [Circuit Court] would be to remand to the [District Court], which could determine whether" Gen3/4 Glock pistols' load indicators comply with the "device which plainly indicates" regulatory standard, or if that standard itself withstands constitutional scrutiny *based on a fact-developed record.* Id.

### D. The Panel Exceeded its Jurisdiction and Legislated from the Bench by *Rewriting* and *Expanding* the Applicability of the Challenged Load Indicator Definition

The panel concluded, *without considering a single* **fact** (nor could it since the lawsuit was dismissed at the pleading stage) that the definition of load indicator "provides anyone of ordinary intelligence fair notice that what is required is a readily perceptible signal that a loaded gun is loaded." The panels' fact-less and uninformed "interpretation" **rewrote** and **doubled the scope** of the regulation!

"... '[L]oaded' shall mean that ammunition is *contained in the weapon* **or** *within a feeding device* **attached thereto**." M.G.L. c.269 §10(n)). Consistently, a "'loaded shotgun or loaded rifle' shall mean any shotgun or rifle having ammunition *in either the magazine* **or** *chamber* thereof..." M.G.L. c.269 §12D.

The regulation requires a load indicator to show that a cartridge is "*within the firing chamber* of the handgun".  The panel's *rewrite* of that definition requires it to **also** show the presence of ammunition "within a ***feeding device*** attached thereto" *even if the firing chamber is* **empty**—under Massachusetts law a firearm is "loaded" even *without* a cartridge in the firing chamber.  This bizarre result follows naturally from dismissing a *fact*-driven issue as a matter of *law*, without citing facts, or any law, regulation, trade/industry practice, term of art, etc. for that matter.  So much for following Supreme Court precedent prohibiting "…substitute[ing] the judicial for the legislative department of the government … to devise a judicial remedy that … entail[s] quintessentially legislative work."  Whole Woman's Health v. Hellerstedt, Comm'r., Texas Dept. of State Health Services, No. 15-274, (27 June 2016).

### E. The Panel Based its Denial of Associational Standing to Appellant Second Amendment Foundation ("SAF") on a Pleading Standard Unknown in the Federal Courts

The panel held that SAF lacks standing" because it did not "identify which of its own members may have been injured by the regulation."  Opinion, p. 4-5.  Relying on Summers v. Earth Island Inst., 555 U.S. 488 (2009) the panel states that "to assert associational standing on behalf of its members … the association must 'identify a member who ha[s] suffered the requisite harm.'"  Opinion, p. 4 (citations omitted).

But the panel disregarded entirely that the Summers affected-group-member-identification requirement applies to Rule 56 *motions for summary judgment*, ***NOT*** Rule 12 *motions to dismiss*.  [Appellants' Brief, p. 23-24.]  This is not argument;  this

is the Supreme Court's holding.  Conversely, the *panel's* authority for demanding that SAF identify its affected group member(s) *at the pleading stage* to establish associational standing "is a mystery the *panel* leaves unresolved".  The *panel's own* authority for rejecting SAF's associational standing does not reject it;  it *compels* it:[2]

> "[W]here standing is at issue, *heightened* specificity is obligatory at the pleading stage. ...  The complainant must set forth *reasonably* definite factual allegations, either direct or *inferential*, regarding each material element needed to sustain standing."  (United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992)(italicized emphasis).

The detailed facts in SAF's affidavit about its affected members left *nothing* to plead beyond *actually identifying* them.  The panel's demand that SAF identify those members *at the pleading stage* substituted "specificity" for "heightened specificity", "definite" for "reasonably definite" and jettisoned "inferential" from this Circuit's own holding in AVX.  The panel effectively created a pleading standard unknown in civil procedure:  that SAF must plead *established* facts in its *complaint* from the start.

Finally, the panel ignored the obvious reason why SAF did not identify which of its members were affected by the regulation:  the District Court dismissed this lawsuit without any opportunity to amend the complaint.

---

[2]    More intriguing is why the panel ignored *its own far more recent* decisions regarding the detail of fact pleading necessary to establish standing.  "When reviewing a *pre-discovery* grant of a motion to dismiss for lack of standing, 'we *accept as true* all well-pleaded fact[s] ... and *indulge all reasonable inferences*' in the *plaintiff's favor*."  Kerin v. Titeflex Corp., 770 F. 3d 978, 981 (1st Cir. 2014) (citations omitted, emphasized in italics).  "[W]here ... standing is at issue we may consider further *particularized allegations of fact* deemed supportive of [plaintiffs'] standing, such as those contained within an affidavit."  Wilson v. HSBC Mortg. Services, Inc., 744 F.3d 1, 7 (1st Cir. 2014) (citations omitted).

### F. The Panel's Purported Lack of Clarity Regarding What the CONSUMERS' "'Derivative' Second Amendment Claim Might Be" Derides the Seriousness of the Issues on Appeal

The panel avers that "[i]t is not clear what [the CONSUMERS'] 'derivative' Second Amendment claim might be" in relation to the DEALERS' "claim of a due process violation".  Ironically, the panel had difficulty with the word "derivative"— *plainly defined* by Merriam-Webster's Collegiate Dictionary, 11th Edition as "something that comes from something else"—while finding that a "<u>device</u> which <u>plainly</u> <u>indicates</u>" provides "*anyone* of ordinary intelligence fair notice" [Opinion, p. 6] of the ranges of sizes, colors, shapes, locations, textures, sounds, etc. that a load indicator must be.  The standard must be so clear that the panel did not *actually apply* it to Gen3/4 Glock pistols, or *any* other pistols for that matter.

The appellants' extensive briefing on how their Second Amendment claim is "derivative" of the DEALERS' Fourteenth Amendment due process claim could not be clearer:  Citing fear of AG enforcement actions should she disagree with the DEALERS that Gen3/4 Glock pistols' (firearms in common use) load indicators comply with the REGULATION, the DEALERS declined to sell those pistols to the CONSUMERS, who, as a result, could not buy them.  [Appellants' Brief, p. 7, 18 and 66.]  After all,

- o **<u>AAG (21:44)</u>**:  Glock attempted to say that there's a load indicator on their Generation 3 and 4 pistols.  The Attorney General <span style="color:red">disagreed</span> and … <span style="color:red">published a notice to inform all dealers that Glock did not comply</span> with the regulation.

***BUT:***

- o **AAG (23:23)**:  By not objecting to specific models the Attorney General doesn't signify that they can be sold in Massachusetts.  If a model is sold, as Justice Souter says, the dealer is taking [a] chance…

Finally, the panel's confusion regarding the CONSUMERS' use of the adjective "derivative" to explain how their Second Amendment claim "is entirely derivative of, and dependent on, the DEALERS' Fourteenth Amendment claim" [Appellants' Brief, p. 14, 18, 53 and 54.] is itself confusing considering *this* Circuit's recent opinions.

> "A relative's Article 1802 claim is ***derivative*** of the principal plaintiff's claim in that it is premised on some harm to the principal plaintiff, and 'if the principal plaintiff's claim fails, so too does the relative's derivative claim.'" Pagán-Colón v. Walgreens of San Patricio, 697 F. 3d 1, 16 (1st Cir.2012).  [Emphasis in bolded italics, citations omitted.]

"[S]uch a cause of action is ***wholly derivative and, thus, its viability is contingent upon*** the viability of the underlying employment discrimination claim."  Cabán-Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 12-13 (1st Cir.2007).  [Emphasis.]

## CONCLUSION

"In deciding whether the district court properly dismissed a claim, we ask whether the complaint 'state[s] a claim to relief that is plausible on its face,' accepting the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor."  Debnam v. FedEx Home Delivery, 766 F.3d 93, 96 (1st Cir.2014)(citations omitted).  The complaint should not be dismissed if it contains "enough fact to raise a reasonable expectation that discovery will reveal evidence of

the [allegation]" (<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 566 (2007) (emphasis).

 The panel's conclusions, unsupported by the dearth of facts or even its own authorities, are a perfect example of the manifest injustice that can result from ignoring the axiomatic motion to dismiss principle of "accepting the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor." The panel gave short shrift to the appellants' appeal, mishandling it substantively and procedurally in nearly every respect.  The panel treated this appeal not as a *review of the District Court's* rulings but as a *trial on the merits* under the guise of *de novo* review.  It made a finding of *fact* on **non-evidence** while denying the appellants so much as an *opportunity* to present **actual evidence** or rebut the appellee AG's evidence—after all, the District Court dismissed this lawsuit at the *pleading stage* based purely on conclusions of *law*.  It cannot be that at the end of the day the Supreme Court's precedent that "[w]hat renders a statute vague is not the *possibility* that it will *sometimes* be difficult to determine **whether** *the incriminating fact it establishes has been proved*;  but rather the *indeterminacy of precisely* **what that fact is**" [<u>U.S. v. Williams</u>, 553 U.S. 285, 306 (2008)] boils down in this case to "<span style="color:red">the dealer is taking [a] chance ... by sell[ing] that gun</span>" [<u>Justice Souter (23:11)</u>] and:

- **Justice Souter (4:46)**:  Why then, is there a vagueness argument?  Employ your people [DEALERS] to come up with ***<span style="color:red">something</span>***.

 The appellants respectfully ask that their appeal be reheard or hear *en banc* to correct the very serious errors committed by the panel.

Respectfully submitted,

Dated:  7 July 2016

**ROBERT DRAPER;  ARIEL WEISBERG;
DONNA MAJOR;  ERIC NOTKIN;
ROBERT BOUDRIE;  BRENT CARLTON;
CONCORD ARMORY, LLC;  PRECISION
POINT FIREARMS, LLC, and SECOND
AMENDMENT FOUNDATION, INC.**

By and through their attorney of record

**/s/ Alexander A. Flig**

Alexander A. Flig, Esq
1st Circuit No. 1169830
BBO No. 669132
490 Chapman Street, Suite 201
Canton, Massachusetts 02021-2039
Telephone:    (781) 352-7260
Facsimile:    (781) 583-5080
E-Mail:    alex@fliglaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing **APPELLANTS' PETITION FOR PANEL REHEARING OR HEARING EN BANC** with the Clerk of the Court using the CM/ECF system which will send notification of this filing to the following registered participants in this matter:

| Appellee's Counsel | Amicus' Counsel |
|---|---|
| **William Porter, Esq.**<br>**Attorney General of Massachusetts**<br>1 Ashburton Place<br>Boston, Massachusetts 02108<br>bill.porter@state.ma.us | **L. Scott Harshbarger, Esq.**<br>**Proskauer Rose, LLP**<br>1 International Place, 22nd Floor<br>Boston, Massachusetts 02110-0000<br>sharshbarger@proskauer.com |
| **Julia Eleanor Kobick**<br>**Attorney General of Massachusetts**<br>1 International Place, 22nd Floor<br>Boston, Massachusetts 02110-0000<br>julia.kobick@state.ma.us | **John E. Roberts, Esq.**<br>**Proskauer Rose, LLP**<br>1 International Place, 22nd Floor<br>Boston, Massachusetts 02110-0000<br>jroberts@proskauer.com |

Dated:  7 July 2016

**Counsel for Plaintiffs - Appellants**

**/s/ Alexander A. Flig**

Alexander A. Flig, Esq
1st Circuit No. 1169830
BBO No. 669132
490 Chapman Street, Suite 201
Canton, Massachusetts 02021-2039
Telephone:    (781) 352-7260
Facsimile:     (781) 583-5080
E-Mail:      alex@fliglaw.com